IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE LUKIS and ROBERT FISCHER, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:19-cv-04892 |
| | ) |
| INSTANT CHECKMATE, LLC, | ) ) |
| Defendant. | ) ) |

**DEFENDANT INSTANT CHECKMATE'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, DISMISS LUKIS'
CLAIMS FOR *FORUM NON CONVENIENS* OR, IN THE ALTERNATIVE,
TRANSFER TO ANOTHER VENUE AND STAY OR DISMISS FISCHER'S CLAIM**

Defendant Instant Checkmate, LLC ("Instant Checkmate"), by counsel, hereby submits this Memorandum of Law in Support of its Motion to Compel Arbitration, Stay or Dismiss Fischer. Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, Instant Checkmate moves to compel arbitration of Plaintiffs' claims for alleged violation of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq*. As explained below, each Plaintiff visited Instant Checkmate's website, agreed to the website terms of use, and thereby agreed to arbitrate any claims against Instant Checkmate. Because Plaintiff Lukis agreed to arbitrate her claim in San Diego California, this Court should dismiss her claim on *forum non conveniens* grounds pursuant to 28 U.S.C. § 1404(a) or, in the alternative, transfer her claim to the Southern District of California. Because Plaintiff Fischer agreed to arbitrate in Illinois, this Court should stay his claim pending arbitration or, in the alternative, his claim should be dismissed without prejudice.

**BACKGROUND**

Instant Checkmate operates the people search and public records website www.instantcheckmate.com, which enables users to purchase reports containing information

1

about people. ECF No. 1-1, at ¶¶ 3, 6-7. Upon accessing Instant Checkmate's website, users can enter a first and last name and conduct a free search for persons who share that name. ECF No. 1-1, at ¶ 8. Instant Checkmate then displays a list of search results, which provide a limited, free preview of Instant Checkmate's reports for persons with the same or similar name. ECF No. 1-1, at ¶ 9. A user who elects to proceed and conduct a more comprehensive search must affirmatively accept Instant Checkmate's Terms of Use at least once, thereby consenting to arbitrate all claims against Instant Checkmate. *See* Declaration of Andrew Johnson ("Johnson Decl.") ¶ 6. As explained below, it appears that Plaintiff Lukis and Plaintiff Fischer did just this, including with Plaintiff Lukis becoming an Instant Checkmate subscriber.

*Stephanie Lukis*

On August 25, 2014, a person identifying themselves as Stephanie Lukis and using the email address autumnsilver@gmail.com visited Instant Checkmate's website and proceeded through to the check-out page which included the content shown below:

> ☐ I agree to the Instant Checkmate Terms of Use, Limited License, and Privacy Policy. By clicking "View My Report," you are providing your electronic signature authorizing Instant Checkmate to charge your card as described, until you cancel.
>
> ☐ I understand and agree that Instant Checkmate is not a "consumer reporting agency," as defined in the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) ("FCRA") and does not provide "consumer reports," as defined in FCRA. I understand and represent that I am not purchasing and will not use Instant Checkmate's products or services for any purpose in connection with determining a person's eligibility for credit, insurance, employment or for any other eligibility determination subject to FCRA.
>
> **VIEW MY REPORT ▶**

*Id.*, ¶ 8.  This person checked the box confirming agreement to Instant Checkmate's Terms of Use and then became an Instant Checkmate subscriber.  *Id*., ¶ 9.   Instant Checkmate's Terms of Use then included the following mandatory arbitration provision:

### 11)   Arbitration

a) YOU UNDERSTAND AND AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND INSTANT CHECKMATE, ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES, INCLUDING, WITHOUT LIMITATION, TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION, AND THE ISSUE OF ARBITRABILITY, SHALL BE RESOLVED BY THE FINAL AND BINDING ARBITRATION PROCEDURES SET BELOW. THE PARTIES ACKNOWLEDGE AND AGREE THAT ANY SUCH CLAIMS SHALL BE BROUGHT SOLELY IN THE PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE PROCEEDING, OR PRIVATE ATTORNEY GENERAL CAPACITY. THE PARTIES FURTHER AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL. ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT. JUDGMENT UPON ANY AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED BY A NEVADA STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF. THIS ARBITRATION CONTRACT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND ITS INTERPRETATION, APPLICATION, ENFORCEMENT AND PROCEEDINGS HEREUNDER SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA").

**The following procedures shall apply:**

i) Any party that intends to make a claim shall first notify the opposing party in writing of such intention and shall describe in such notice, with reasonable particularity, the nature and basis of such claim, and the total amount of the claim. Within thirty (30) days of receipt of such notice, the party receiving notice of a claim shall provide a written response which, with reasonable particularity, sets forth its position concerning the claim. If the parties are unable to resolve the dispute arising from the claim by good faith negotiations to be conducted within the thirty (30)-day period following the written response, either of them may initiate binding arbitration pursuant to the terms and conditions set forth below.

ii) In the event a party elects to proceed with binding arbitration, it shall provide written notice thereof to the other party by registered or certified mail. The arbitration shall be conducted by Judicate West, and shall be conducted using the then current Judicate West commercial rules and regulations (except as varied by this agreement). The arbitration shall take place in San Diego, CA, but may proceed telephonically in the event the total amount of the claim does not exceed $2,500 U.S. dollars (if the claimant so chooses).

iii) Separate and apart from the agreement to arbitrate set forth above, the parties hereby independently waive any right to bring or participate in any class action in any way related to, or arising from, this agreement.

*Id.*, ¶ 10, Ex. A. The email address autumnsilver@gmail.com appears in Plaintiff Lukis' Instant Checkmate report. *Id.*, ¶ 11. Thus, it appears that Plaintiff Lukis on August 25, 2014 agreed to arbitrate any claim she could ever have in the future against Instant Checkmate. *Id.*, ¶ 12.

*Robert Fischer*

On June 12, 2019, a person identifying themselves as Robert Fischer and using the email address rfischer0910@comcast.net visited Instant Checkmate's website and proceeded to the "save your results" page which included the content below:



4

Johnson Decl. ¶ 15. This person entered their information and clicked the green "SAVE" button confirming agreement to Instant Checkmate's Terms of Use. *Id.,* ¶ 16. Instant Checkmate's Terms of Use then included the following mandatory arbitration provision:

> **17) Arbitration and Class Action Waiver.**
>
> a) EXCEPT WHERE PROHIBITED BY LAW, YOU AND INSTANT CHECKMATE UNDERSTAND AND AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND INSTANT CHECKMATE, ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES (INCLUDING DISPUTES AGAINST ANY AGENT, EMPLOYEE, SUBSIDIARY, AFFILIATE, PREDECESSOR IN INTEREST, SUCCESSOR, OR ASSIGN OF THE OTHER) RELATING TO THE SITES, THE INFORMATION AND MATERIALS PUBLISHED BY INSTANT CHECKMATE ON OR THROUGH THE SITES, ANY TRANSACTION OR RELATIONSHIP BETWEEN US RESULTING FROM YOUR USE OF THE SITES, COMMUNICATIONS BETWEEN US, OR THE PURCHASE, ORDER, OR USE OF OUR MEMBERSHIP PLANS, THE INFORMATION PROVIDED IN CONNECTION WITH OUR MEMBERSHIP PLANS, AND YOUR USE OF OUR SERVICES, INCLUDING, WITHOUT LIMITATION, TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE, OR REGULATION, AND THE ISSUE OF ARBITRABILITY, SHALL BE RESOLVED BY THE FINAL AND BINDING ARBITRATION PROCEDURES SET BELOW. THE PARTIES ACKNOWLEDGE AND AGREE THAT ANY SUCH CLAIMS SHALL BE BROUGHT SOLELY IN THE PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE PROCEEDING OR PRIVATE ATTORNEY GENERAL CAPACITY. THE PARTIES FURTHER AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL. ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT. JUDGMENT UPON ANY AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED BY A CALIFORNIA STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF. THIS ARBITRATION CONTRACT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND ITS INTERPRETATION, APPLICATION, ENFORCEMENT AND PROCEEDINGS HEREUNDER SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA").
>
> **The following procedures shall apply:**

> i) In the event a party elects to proceed with binding arbitration, it shall provide written notice thereof to the other party by registered or certified mail and shall describe in such notice, with reasonable particularity, the nature and basis of such claim and the total amount of the claim. Within thirty (30) days of receipt of such notice, the party receiving notice of a claim shall provide a written response which, with reasonable particularity, sets forth its position concerning the claim. If the parties are unable to resolve the dispute arising from the claim by good faith negotiations to be conducted within the thirty (30)-day period following the written response, either of them may initiate binding arbitration pursuant to the terms and conditions set forth herein.
>
> ii) The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA") and will be administered by the AAA. If the AAA is unavailable or refuses to arbitrate the parties' dispute for any reason, the arbitration shall be administered and conducted by a widely-recognized arbitration organization that is mutually agreeable to the parties, but neither party shall unreasonably withhold their consent. The AAA Rules are available online at www.adr.org. Unless otherwise agreed, the arbitration shall take place in the capital city of the state in which the consumer resides, but may proceed telephonically in the event the total amount of the claim does not exceed $2,500 U.S. dollars (if the claimant so chooses).

*Id.,* ¶ 17, Ex. B. The email address rfischer0910@comcast.net appears in Plaintiff Fischer's Instant Checkmate report. *Id.,* ¶ 18. Thus, it appears that on June 12, 2019 Plaintiff Fischer then agreed to arbitrate any claim he could ever have in the future against Instant Checkmate. *Id.,* ¶ 19.

## ARGUMENT

### I. The FAA Requires Enforcement of Instant Checkmate's Arbitration Provision.

Applying the FAA, Plaintiffs' claims against Instant Checkmate must be arbitrated in accordance with their arbitration agreements. The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." A*T&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This "liberal federal

6

policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id*. at 346 (quotation marks omitted).

The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. These criteria are met here, as the arbitration provision is in writing and use of Instant Checkmate's website involves interstate commerce. "[C]ourts have consistently found that use of the Internet necessarily involves interstate communications and therefore constitutes the use of a facility of interstate commerce." *Adams v. United States*, 2009 WL 2060089, at *6 (S.D. Ill. July 14, 2009) (quotation marks omitted); *see also United States v. Borrero*, 771 F.3d 973, 975 (7th Cir. 2014) (recognizing that the Internet is a means of interstate commerce). Indeed, the U.S. Supreme Court has explained that the FAA "signals an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). Here, Instant Checkmate's arbitration provisions each specify that the "interpretation, application, enforcement and proceedings [there]under shall be governed by the [FAA]." *See* Exs. A and B.

Plaintiffs agreed to arbitrate any claims against Instant Checkmate, their claims fall within the scope of their arbitration agreement, and no "grounds as exist at law or in equity for the revocation of any contract" apply to invalidate their agreements. 9 U.S.C. § 2. Accordingly, "[u]nder the terms of the FAA, [the Court] ha[s] no discretion to refuse a request for a stay and [must] direct the parties to proceed to arbitration on issues covered by an arbitration agreement." *Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp.*, 916 F.2d 402, 405 (7th Cir. 1990); *see also* 9 U.S.C. §§ 3, 4.

## II. Plaintiffs Entered Into A Valid Arbitration Agreement.

Courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether a valid arbitration agreement was formed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). But only "generally applicable" contract doctrines apply; state-law rules that "discriminat[e]" against or "disfavor[]" arbitration agreements are preempted by the FAA. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017). Under those generally applicable contract doctrines, Plaintiffs validly accepted the arbitration provision in Instant Checkmate's Terms of Use.

"Courts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract," and that "[t]here is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016) (collecting cases). In "regularly uphold[ing]" the validity of "clickwrap" agreements, *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011), courts have concluded that making the terms and conditions of an agreement available by hyperlink constitutes reasonable notice. *See, e.g.*, *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, 2018 WL 2933608, at *5 (N.D. Ill. June 12, 2018); *see also Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 835 N.E.2d 113, 296 Ill. Dec. 258 (Ill. Ct. App. 2005) (concluding that the statement indicating that sales were subject to the terms, combined with the hyperlinks, was sufficient to "place a reasonable person on notice that there were terms and conditions" attached to a transaction).

Instant Checkmate's website "contained a clear and conspicuous statement that . . . a user agreed to the Terms of Service & Privacy Policy" by clicking a link or pressing a button. *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *4-5 (N.D. Ill. Sept. 20, 2018) (enforcing terms of use). Plaintiffs did just this and thereby manifested assent to Instant Checkmate's Terms of Use and the mandatory arbitration provision therein. Accordingly, Plaintiffs agreed to arbitration.

### III.     Plaintiffs' Claims Are Within the Scope of the Arbitration Agreement.

Instant Checkmate's arbitration agreement encompasses Plaintiffs' claims in this action. Specifically, each arbitration provision applies to "ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND INSTANT CHECKMATE." Johnson Decl. ¶¶ 10, 17; Ex. A and B. As the Seventh Circuit has observed of a similar provision requiring arbitration of "any claim or dispute . . . relating to" the contract or the parties' relationship, "[i]t would be hard to draft a broader [arbitration] clause." *Carbajal v. H & R Block Tax Servs.*, Inc., 372 F.3d 903, 904-05 (7th Cir. 2004). Even if there were "any doubts concerning the scope of arbitrable issues"—and there are none—those doubts would have to be "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019) ("ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration.").

### IV.     Any Dispute Whether Plaintiffs' Claims Are Subject to Arbitration or the Arbitration Provision's Enforceability Must Be Decided by the Arbitrator.

In the event Plaintiffs deny that the arbitration agreement either is enforceable or encompasses their claims in this lawsuit, that dispute must be resolved by the arbitrator. These "gateway" questions of "arbitrability" normally would be for the Court to decide. <u>Howsam</u> v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). But under the FAA, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate

9

or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). The U.S. Supreme Court has squarely held that when an arbitration agreement "clearly and unmistakably" contains a "delegation provision"—*i.e.*, a clause delegating "threshold issues" of arbitrability to the arbitrator—"the FAA operates on this additional arbitration agreement just as it does any other." *Jackson*, 561 U.S. at 68-70 & n.1 (internal quotation marks omitted). In other words, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019). Here, the delegation clause in Instant Checkmate's arbitration provision is substantively identical to that enforced by the U.S. Supreme Court in *Jackson*.

The arbitration provision in *Jackson* provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." 561 U.S. at 66. Likewise, Instant Checkmate's arbitration provision provides that "[a]ny controversy concerning whether a dispute is arbitrable shall be determined by the arbitrator and not by the court." Johnson Decl. ¶¶ 10, 17; Ex. A and B. Unless the plaintiff has "challenged the delegation provision specifically," courts "must treat [the delegation clause] as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [arbitration agreement] as a whole for the arbitrator." *Jackson*, 561 U.S. at 72. Thus, the Court should compel arbitration of any contention by Plaintiffs that their claims are not arbitrable or that the arbitration agreement is unenforceable.

**V. The Court Should Dismiss Plaintiff Lukis' Claim for *Forum Non Conveniens* or Transfer Her Claim to the Southern District of California and Should Stay or Dismiss Plaintiff Fischer's Claim.**

When, as here, the FAA governs an arbitration provision that covers Plaintiffs' claims, Section 3 of the FAA directs the district court to compel arbitration and stay the lawsuit pending the resolution of the arbitration. *See* 9 U.S.C. § 3; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3").

Here, Instant Checkmate's Terms of Use in effect at the time Plaintiff Lukis agreed to arbitrate require the arbitration to occur in San Diego, located in the Southern District of California. *See* Johnson Decl. ¶ 10; Ex. A ("The arbitration shall take place in San Diego, CA…"). Because this Court sits in another district, this Court lacks authority to directly compel arbitration under the FAA. *See, e.g.*, *Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 801, 808 (7th Cir. 2011) ("a district court cannot compel arbitration outside the confines of its district"). Accordingly, the Court should dismiss this case under the *forum non conveniens* doctrine and allow Plaintiff Lukis to assert her claim in the proper forum, if she chooses. *See Hynan v. XPO Logistics Freight, Inc.*, 2019 WL 1598156, at *2 (S.D. Ind. Apr. 15, 2019); *see also Starykowicz v. Int'l Mgmt. Group (UK) Ltd.*, 2014 WL 2514819, at *5 (N.D. Ill. June 4, 2014) (granting motion to dismiss on *forum non conveniens* grounds based on parties' forum selection agreement). Alternatively, the Court should transfer the case under 28 U.S.C. § 1404(a) to the U.S. District Court for the Southern District of California, which has authority to compel arbitration in the parties' chosen forum. *See, e.g.*, *Gundrum v. Cleveland Integrity Servs., Inc.*, 2017 WL 414491, at *6 (W.D. Wisc. Jan. 31, 2017); *Daniels v. Painter*, 2016 WL 3034246, at *4-5 (E.D. Wisc. May 27, 2016).

As to Plaintiff Fischer, however, Instant Checkmate's Terms of Use in effect at the time Plaintiff Fischer agreed to arbitrate provide that the arbitration may take place in the capital city

11

of the state in which the consumer resides. *See* Johnson Decl. ¶ 17; Ex. B ("the arbitration shall take place in the capital city of the state in which the consumer resides"). Plaintiff Fischer has acknowledged that he is a resident of the state of Illinois. ECF No. 1-1, at ¶ 1. As such, this Court should compel Plaintiff Fischer to arbitration and either stay or dismiss his claim.

## CONCLUSION

For the foregoing reasons, Instant Checkmate respectfully requests that this Court enter an order: (1) directing Plaintiff Fischer to submit his claim to arbitration pursuant to the Instant Checkmate arbitration agreement and the FAA, 9 U.S.C. § 4; (2) staying this action pending the outcome of the arbitration of Plaintiff Fischer's claim, or in the alternative, dismissing the action with respect to Plaintiff Fischer's claim without prejudice; and (3) dismissing Plaintiff Lukis' claim for *forum non conveniens* or transferring Plaintiff Lukis' claim to the Southern District of California.

Dated: October 27, 2020　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　GORDON REES SCULLY MANSUKHANI, LLP


　　　　　　　　　　　　　　　　　　　　 /s/ Benjamin R. Kinney
　　　　　　　　　　　　　　　　　　　　*Benjamin R. Kinney,*
　　　　　　　　　　　　　　　　　　　　*One of the attorneys for defendant*

Benjamin R. Kinney #6317720
Avanti D. Bakane, #6299022
Damon W.D. Wright
GORDON REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800
Chicago, IL 60606
Ph: 312-619-4922
bkinney@grsm.com
abakane@grsm.com
dwright@grsm.com

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October 2020 a copy of the foregoing was filed electronically via the ECF filing system.

*/s/ Benjamin R. Kinney*

Benjamin R. Kinney #6317720
Avanti D. Bakane, #6299022
Damon W.D. Wright
GORDON REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800
Chicago, IL 60606
Ph: 312-619-4922
bkinney@grsm.com
abakane@grsm.com
dwright@grsm.com