IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Fischer and Stephanie Lukis, individually and on behalf of all others similarly situated, | ) ) ) ) | CIVIL ACTION NO: 19-cv-4892 |
| *Plaintiffs,* | ) ) | JUDGE FEINERMAN |
| v. | ) ) | MAG. WEISMAN |
| Instant Checkmate LLC, | ) ) | |
| *Defendant.* | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS FOR FORUM *NON CONVENIENS*, TRANSFER AND STAY**

**I.  Introduction**

More than 16 months after this case was initiated Defendant Instant Checkmate LLC moves to compel arbitration. Dkts. 90-92. The motion is just another in a long line of briefs that Defendant has filed in an effort to prevent this Court from addressing the merits of Plaintiffs' claims. Defendant's motives here are particularly transparent, as its motion was literally filed in the late evening hours of the same day the Court denied its motion for summary judgment—and, more importantly, despite the fact that Defendant had all the information necessary to compel arbitration at least five months ago.

Defendant's litigation conduct amounts to a clear waiver of its right to compel arbitration; and its explanation for the delay in making the motion—that it only "investigated…and identified" Plaintiffs arbitration agreements in the "couple of weeks" prior to filing—is entirely unpersuasive. *See* Exhibit 1, November 3, 2020 Hearing Transcript, p. 10 lines 1-3. The fact is, Instant Checkmate was well-aware of its arbitration claim *months* before its motion was ever filed. For example, on June 17, 2020 counsel for Defendant sent an email stating:

1

> "Because Ms. Lukis agreed to Instant Checkmate's website terms, this may provide grounds to compel arbitration and invoke the class action waiver with respect to her claim."

*See* Exhibit 2, Email from Defense Counsel. This email demonstrates that Defendant did not simply discover its right to arbitration a "couple of weeks" prior to filing its motion. And there is more in the record calling Defendant's timeline into question. For instance, Defendant's explanation for the delay in moving to compel arbitration was based on the claim that it needed Plaintiffs' email addresses to triangulate Plaintiffs' identities:

> THE COURT: I see. So, you didn't need Fischer's e-mail to know that he had done that in June of 2019.
>
> MR. WRIGHT: There -- we really did, your Honor, because there are -- everyone in the country has -- with some exceptions, of course, has a name that's shared by many other people. There are many, many people in the country who are named Robert Fischer. There are many people in this country who are named Stephanie Lukis. So, without the e-mail, there would be no way to know if it's the same Robert Fischer.

*See* Exhibit 1, p. 10 lines 15-23. Yet Defendant had pinpointed both Plaintiffs—along with their email addresses—long before a "couple of weeks" prior to filing its motion. Specifically, Defendant provided Plaintiffs with their background reports (that included the relevant email addresses) on May 13, 2020 in the case of Plaintiff Fischer and on June 17, 2020 in that Plaintiff Lukis. *See* Exhibit 1, November 3, 2020 Hearing Transcript, p. 9 lines 1-11. Not only were these materials provided to Plaintiffs, they were also later filed into the record by Defendant. Dkt. 62-1, Stephanie Lukis' Background Report (filed June 25, 2020) and Dkt. 61, Robert Fischer's Background Report (filed May 28, 2020).

Thus, despite having everything it needed to move for arbitration, Instant Checkmate elected to litigate, to wit:

- on May 14, moving for summary judgment, reconsideration and appeal of the Court's order and opinion on the pleadings (Dkts. 39, 43, 44)

- on May 19, 2020, filing corrected versions of its May 14 briefing (Dkts. 50, 51)

- on May 28, 2020, supplementing its L.R. 56.1 statement with an exhibit in further support of its summary judgment motion (Dkt. 61)

- on June 2, 2020, attending a status conference with the Court (Dkt. 63)

- on June 22, 2020, submitting a reply brief in further support of its petition for interlocutory appeal (Dkt. 70)

- on June 26, 2020, opposing Plaintiffs' motion to partially stay decision on Instant Checkmate's summary judgment motion (Dkt. 71)

- on July 10, 2020, submitting a reply brief in further support of its reconsideration and summary judgment motions (Dkt. 75)

- on July 22, 2020, filing a joint status report with a proposed discovery, class certification motion, and dispositive motion schedule (Dkt. 77)

- on August 11, 2020, participating in oral argument in support of its summary judgment motion (Dkt. 79)

- on August 31, 2020, responding to Plaintiffs' written discovery (Dkt. 82-2)

- on September 1, 2020, seeking leave to supplement its summary judgment briefing (Dkt. 80)

- on September 14, 2020, responding to Plaintiffs' motion to compel supplemental responses to Plaintiffs' written discovery (Dkt. 84)

- on October 9, 2020, participating in a deposition

Not once during any of the foregoing litigation activities did Defendant so much as mention arbitration—it was only after the Court denied Instant Checkmate's motions for summary judgment and reconsideration that Instant Checkmate filed its motion. The fact that Defendant persisted in litigating the merits of this lawsuit despite full awareness of the availability of arbitration is a classic example of waiver.

## I. Instant Checkmate forfeited its right to compel arbitration.

Arbitration provisions, like any other contract right, can be waived. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co*., 969 F.2d 585, 590 (7th Cir. 1992). An arbitration waiver can be intentional or implicit. *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018). Implicit waiver, also known as "forfeiture," occurs when a party fails to timely assert its right to arbitrate. *Id*. To determine whether a forfeiture has taken place a court looks to the "totality of the circumstances" to see if "a party acted inconsistently with the right to arbitrate." *Id*. Of particular importance is a party's diligence, *i.e*, whether a party "[does] all it can reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration[.]" *Id*. (quoting *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). Other factors include "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id*.

The *Smith* case is particularly instructive. There, the plaintiff entered into a credit card agreement that contained an arbitration provision. *Id*. at 497. The defendant was hired to collect plaintiff's debts pursuant to this agreement, but the plaintiff took issue with defendant's debt collection practices and sued. *Id*. Eight months into litigation, defendant demanded that the parties arbitrate. *Id*. at 498. The defendant argued it did not request arbitration sooner because it was not an original party to the agreement containing the arbitration clause and had difficulty obtaining a copy. *Id*. at 500. The 7th Circuit found this explanation "entirely inadequate" because defendant could have easily found the document through a "routine" search. *Id*.

Even more than the movant in *Smith*, the information necessary for Instant Checkmate to compel arbitration was at its fingertips. In fact, the more apt metaphor is that the information was up Defendant's sleeve. As shown above, Instant Checkmate claims that the missing links were

4

Plaintiffs' email addresses—but the record supports a finding that Instant Checkmate had those email addresses between five and six months ago. So, either willfully or negligently, the Defendant did not perform the "routine" steps required to investigate and/or file its claim for arbitration. Quite the opposite: Defendant persisted in litigating this case for months—including filing a motion for summary judgment—and that should be enough to find that Instant Checkmate effectively forfeited its right to arbitrate.

Even if the Court accepted that Defendant first discovered its right to arbitration a "couple of weeks" before filing its motion, there is *still* a strong argument for denying its arbitration motion. In *Smith*, after the movant allegedly discovered its arbitration claim, it did not notify the court, move to stay the pending dispositive motions, or move to assert any arbitration right. *Smith* at 500. The Seventh Circuit found this conduct was "unjustified and manifestly inconsistent with an intention to arbitrate." *Id*. Here, Instant Checkmate similarly did not move to stay its pending motions, notify the Court, or notify the Plaintiffs—until filing its motion late in the evening of the same day its motion for summary judgment was denied. *See also Auto. Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc*., 502 F.3d 740, 747 (7th Cir. 2007) (A "motion for summary judgment, which said nothing about venue or arbitration, was an implicit waiver of any argument for dismissing on either of those grounds."); *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'on*, 09 C 5619, 2011 WL 210805, at *4 (N.D. Ill. Jan. 20, 2011) ("[A]sking the Court to dismiss…claims on the merits" is inconsistent with a party promptly exercising a right to arbitrate).

The Seventh Circuit does not "want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning the suit in favor of arbitration." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002) That appears to be exactly what Defendant is

5

trying to do here. Because Instant Checkmate "manifested an intention to resolve the dispute through the processes of the federal court," *Cabinetree of Wisconsin, Inc.*, 50 F.3d at 390, its request to compel arbitration rings hollow. The Court should deny the motion.

**II.    Instant Checkmate's delay in seeking arbitration prejudices Plaintiffs.**

The Seventh Circuit has held that "prejudice is a relevant factor" in finding that a party has forfeited their right to arbitration. *Smith* at 501. In *Smith*, the Seventh Circuit found prejudice where the movant "sought arbitration after [the nonmovant] had defeated a motion to dismiss, obtained class certification, and litigated several discovery issues[.]" *Smith* at 501. The Court additionally found the arbitration motion "sought to erase [the nonmovant's] successes—including her victory on [a] pivotal legal issue… [t]his attempt to 'play heads I win, tails you lose' is the worst possible reason for delay." *Id*. at 501-2 (citations and quotations omitted). Similarly, here, Plaintiffs have defeated both Defendant's motion to dismiss and motion for summary judgment—both involving victories on pivotal legal issues within the context of the Illinois Right of Publicity Act. Erasing these successes by transferring this matter to arbitration would highly prejudice Plaintiffs and the Court should deny Defendant's motion on that basis as well.

**III.   Whether Defendant's litigation conduct forfeited arbitration is not a question for the arbitrator**

Defendant argues that the arbitration clause at issue delegates questions of arbitrability to the arbitrator. However, courts around the country have almost unanimously held that litigation conduct which forfeits the right to arbitration is an exception to that clause. *See MB Fin., Inc. v. Hart*, 2019 WL 316869, at *3 (N.D. Ill. Jan. 24, 2019) ("Courts, not arbitrators, determine whether a party has waived its right to arbitration through litigation conduct."); *Banc of Am. Sec. LLC v. Indep. Tube Corp.*, 2010 WL 1780321, at *6 (N.D. Ill. May 4, 2010) ("[T]he vast majority of other courts that have addressed this issue [have concluded] that courts—not arbitrators—should resolve

waiver-through-litigation-conduct issues.") (collecting cases); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 15 (1st Cir. 2005) ("There are no references to waiver or similar terms anywhere in the arbitration agreement. Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so."); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007) ("While it is clear the parties intended to have an arbitrator determine the gateway question of whether the underlying substantive dispute between them is arbitrable…we do not believe that this provision similarly evinces a clear and unmistakable intent to have an arbitrator decide procedural questions of arbitrability that arise only after the parties have bypassed a gateway determination of substantive arbitrability by the arbitrator and actively litigated the underlying dispute in court."); *Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 804 (5th Cir. 2017) (unpublished) ("Because the Agreement does not contain "clear and unmistakable evidence" of an intent to arbitrate the instant litigation-conduct waiver issue, the district court did not err.").

There are compelling policy reasons for allowing courts, not arbitrators, to evaluate whether a party has waived arbitration by its litigation conduct. First, the court "is better positioned to determine whether the belated request for arbitration is a thinly veiled attempt to forum shop." *Ehleiter* at 1048. Second, "because the inquiry into whether a party has waived its right to arbitrate by litigating the case in court heavily implicates *judicial* procedures…[and] the court should remain free to control the course of proceedings before it and to correct abuses of those proceedings[.]" *Id*. (citations and quotations omitted) (emphasis in original). Here, the evidence overwhelmingly suggests that Defendant intentionally withheld its arbitration arguments in order to steal a favorable ruling on the merits from this Court. Then, when it saw the writing on the wall, it pursued the exact *opposite* course and tried to extricate itself from this forum as soon as possible

via arbitration. On top of that, it was the Defendant who removed this case to federal court in the first place—despite the fact that at the time of removal it very well could have had all the information necessary to compel arbitration. Not only is the Court best positioned to evaluate this sequence of events, the Court is also entitled to correct abuses of process that count the Court among its victims. Under the present circumstances, the entire exercise of moving for arbitration (in a class action with alternate representatives waiting in the wings, no less) is an affront to the orderly administration of justice and a waste of judicial resources.

It is within the Court's power to determine whether the Defendant has forfeited its right to arbitration and Plaintiff respectfully requests that it make such finding and deny Defendant's motion to compel arbitration, dismiss for forum *non conveniens*, transfer and stay.

*Respectfully submitted,*

*/s/ William H. Beaumont*

Roberto Luis Costales
William H. Beaumont
BEAUMONT COSTALES
107 W. Van Buren #209
Chicago, IL 60605
Telephone: (773) 831-8000
whb@beaumontcostales.com
*Attorneys for Plaintiffs*