**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Robert Fischer, Stephanie Lukis, | ) | |
| Robert Harper, and Tiffany Adams, | ) | Case No: 1:19-cv-04892 |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | Hon. Gary Feinerman |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Instant Checkmate LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |

**DEFENDANT INSTANT CHECKMATE, LLC'S ANSWER AND AFFIRMATIVE AND OTHER DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant Instant Checkmate LLC ("Instant Checkmate"), by and through its undersigned counsel, hereby answers and states affirmative and other defenses to Plaintiffs' First Amended Complaint (the "Amended Complaint").

For ease of reference, Instant Checkmate has included in this Answer the headings used in the Amended Complaint, but does not thereby admit the truth of any allegations in the headings or any inference that could be drawn from those headings. Instant Checkmate denies that Plaintiffs are entitled to any relief from Instant Checkmate and, unless expressly admitted or qualified below, Instant Checkmate denies each and every allegation in the Amended Complaint.

**THE PARTIES**

1. Plaintiffs Robert Fischer, Stephanie Lukis, Robert Harper, and Tiffany Adams are residents of Illinois.

**ANSWER:** Upon reasonable inquiry, Instant Checkmate lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1 and, therefore, denies these allegations.

2. Defendant Instant Checkmate LLC ("Instant Checkmate" or "Defendant") owns and operates the website www.instantcheckmate.com. Defendant is a California-based, for-profit corporation organized under the laws of the State of Delaware.

**ANSWER:** Instant Checkmate admits the allegations of paragraph 2.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d)(1)(B).

**ANSWER:** The allegations contained in paragraph 3 consist of legal conclusions to which no response is required. To the extent a response is required, Instant Checkmate admits that the Amended Complaint purports to bring an action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(1)(B). Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 3.

4. Venue is proper in the Northern District of Illinois because Defendant is committing the acts alleged herein in the Northern District and a substantial part of the acts and omissions giving rise to the claims asserted herein have occurred in the Northern District.

**ANSWER:** The allegations contained in paragraph 4 consist of legal conclusions to which no response is required. To the extent a response is required, Instant Checkmate denies the allegations of paragraph 4.

## COMMON FACTUAL ALLEGATIONS

5. Defendant owns and operates a website that sells "background reports" on people to the general public.

**ANSWER:** Instant Checkmate admits the allegations of paragraph 5.

6. Defendant sells its reports on its website: www.instantcheckmate.com.

**ANSWER:** Instant Checkmate admits the allegations of paragraph 6.

7.      Upon accessing Instant Checkmate's website, the public-at-large is free to enter the first and last name of a particular individual via a search bar on the homepage.

**ANSWER:** Instant Checkmate admits that a user of Instant Checkmate's website can enter a first and last name as well as city and state into the search bar on the website's public homepage, provided that such use is in compliance with Instant Checkmate's website terms of use including the prohibition on any use for purposes subject to the Fair Credit Reporting Act. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 7.

8.      After entering this information, any public user of Instant Checkmate's website is provided with a listing of search results. Each search result corresponds to an actual person that Instant Checkmate has located who matches the name provided by the public user.

**ANSWER:** Instant Checkmate admits that after a user of Instant Checkmate's website enters a first and last name (and also city and state if provided) into the search bar on the website's public homepage, the website asks the user to provide additional information about the person being searched (such as the person's gender or age), and then the website provides the user with a list of search results. Answering further, Instant Checkmate states that the search results may include people with names that are similar or identical to the first and last name entered by the website user, and a search result may not correspond to an actual person to the extent that an actual person may have used an alias that was memorialized in public records. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 8.

9.      These search results provide a limited, free preview of Defendant's "background reports." As shown in the images below, this free preview includes the searched individual's name (including middle initials), age, current city and state of residence, the searched individual's relatives, and other identifying information:





**ANSWER:** Instant Checkmate admits that its search results page provides users with a sample of information contained in the background reports for persons who share the same or similar name to that of a searched person. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 9.

10. As shown in the above, Instant Checkmate's free preview provides enough information to identify an individual.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 10.

11. The purpose behind Instant Checkmate's free preview is singular: to entice users to purchase Defendant's services. These services include "background reports" and "histories" relating to individuals on its database.

**ANSWER:** Instant Checkmate admits that users of its website may purchase access to background reports. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 11.

12. Instant Checkmate uses these free previews to advertise its monthly subscription services whereby a user can access and retrieve "background reports" and "histories" on any individual in its database.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 12.

13. In order for a user to view a person's "background report" or other background "histories" generated by the Defendant, a user needs to purchase Defendant's services. Clicking on "view report" or "open report" in the above image, leads users to a pay screen which presents them with an option to pay for Instant Checkmate's monthly subscription services.

**ANSWER:** Instant Checkmate admits that, in order to review a background report, a user must agree on the pay screen to Instant Checkmate's website terms of use and then must purchase a background report. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 13.

14. Instant Checkmate's most popular monthly subscription costs $34.78 per month to access and search anyone on its database.

**ANSWER:** Instant Checkmate admits that, at times, the most popular option for purchasing a background report has been the monthly subscription costing $34.78 per month. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 14.

15. Instant Checkmate's monthly subscription allows users to obtain background reports using its services on an unlimited number of individuals per month.

**ANSWER:** Instant Checkmate admits that a monthly subscription allows users to obtain the background report that is the subject of a user's initial search as well as background reports on an unlimited number of people per month, except in the event that Instant Checkmate determines that there may have been a violation of Instant Checkmate's website terms of use. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 15.

16. Instant Checkmate compiles and generates the content it sells on its website. According to Defendant: "Instant Checkmate continually searches for new data and adds it to [its] reports the minute it becomes available."

**ANSWER:** Instant Checkmate admits that it provides users with access to information contained in background reports by querying the information from third party data providers in response to searches by users. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 16.

17. Neither Plaintiffs nor class members provided Defendant with written consent to use their identities in Defendant's advertisements. As detailed above, Instant Checkmate uses class members' identities to advertise its for-profit services. Thus, Defendant violates the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, *et seq*.

**ANSWER:** Instant Checkmate lacks knowledge as to whether Plaintiffs or all other putative class members provided Instant Checkmate with consent (written or otherwise) to use their identities on Instant Checkmate's website. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 17.

18. It would be extremely easy for Instant Checkmate to maintain their business model while still complying with state law. For example, Instant Checkmate could merely display the

names of the searched individuals—without more identifying information—in their advertisements for their services.

**ANSWER:**   Instant Checkmate denies the allegations of paragraph 18.

19.   Instant Checkmate purposefully subjects itself to jurisdiction in this Court by knowingly searching and obtaining private and public records and/or identifying information on Illinois residents. Indeed, this lawsuit revolves around Instant Checkmate business practice of acquiring identifying information about Illinois residents with the specific intent of selling that information to its customers.

**ANSWER:**   Instant Checkmate admits that it provides public record information. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 19.

20.   Additionally, Instant Checkmate directly sells its services to consumers in Illinois.

**ANSWER:**   Instant Checkmate admits that, at times, individuals in Illinois have purchased background reports from Instant Checkmate. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 20.

## THE PLAINTIFFS' EXPERIENCES

21.   Plaintiff Robert Fischer discovered that Instant Checkmate uses his name, age, city of domicile, and the identity of his relatives in advertisements on the Instant Checkmate website to advertise and/or actually sell Defendant's products and services. These advertisements were the same or substantially similar to those shown in Paragraph 9.

**ANSWER:**  Instant Checkmate denies the allegations of paragraph 21.

22.   Plaintiff Fischer believes that it is reasonable for others to identify him because Defendant's advertisements include accurate details about him.

**ANSWER:**   Instant Checkmate denies the allegations of paragraph 22.

23.   Indeed, Plaintiff Fischer can confirm that the individual Defendant identified in paragraph 9 is in fact himself.

**ANSWER:**  Upon reasonable inquiry, Instant Checkmate lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 23 and, therefore, denies these allegations.

24.     Plaintiff Fischer never provided Instant Checkmate with written consent to use any attribute of his identity in any advertisement or for any commercial purposes.

**ANSWER:**   Upon reasonable inquiry, Instant Checkmate lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 24 and, therefore, denies these allegations.

25.     Plaintiff Fischer is not and has never been an Instant Checkmate customer. He has no relationship with Instant Checkmate whatsoever.

**ANSWER:**   Instant Checkmate states that Fischer agreed to Instant Checkmate's website terms of use, including a class action waiver, and, therefore, Instant Checkmate denies the allegations of paragraph 25.

26.     Plaintiff Fischer's discovery of Instant Checkmate's unauthorized use of his identity has caused him emotional distress.

**ANSWER:**   Instant Checkmate denies the allegations of paragraph 26.

27.     Plaintiff Fischer has not been compensated by Instant Checkmate in any way for its use of his identity.

**ANSWER:**   To the extent that Fischer is referring to information contained on the search results page, Instant Checkmate denies any characterization that the information is "his" as it implies ownership over publicly available information, which cannot be owned as a matter of law. In further answering, Instant Checkmate denies that Fischer is entitled to any sum of money and, therefore, denies the allegations of paragraph 27.

28.     Plaintiff Fischer does not want Instant Checkmate to use his identity for any commercial advertising purpose.

**ANSWER:**   To the extent that Fischer is referring to information contained on the search results page, Instant Checkmate denies any characterization that the information is "his" as it implies ownership over publicly available information, which cannot be owned as a matter of law. In further answering, Instant Checkmate states that, prior to this litigation, Fischer never contacted Instant

Checkmate to request that it remove or suppress any information about him. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 28.

29.     Plaintiff Stephanie Lukis discovered that Instant Checkmate uses her name, age, city of domicile, and the identity of his [*sic*] relatives in advertisements on the Instant Checkmate website to advertise and/or actually sell Defendant's products and services. These advertisements were the same or substantially similar to those shown in Paragraph 9.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 29.

30.     Plaintiff Lukis believes that it is reasonable for others to identify her because Defendant's advertisements include accurate details about her.

**ANSWER:**  Instant Checkmate denies the allegations of paragraph 30.

31.     Indeed, Plaintiff Lukis can confirm that an individual Defendant identified in paragraph 9 is in fact herself.

**ANSWER:**  Upon reasonable inquiry, Instant Checkmate lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 31 and, therefore, denies these allegations.

32.     Plaintiff Lukis never provided Instant Checkmate with written consent to use any attribute of her identity in any advertisement or for any commercial purposes.

**ANSWER:**  Upon reasonable inquiry, Instant Checkmate lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 32 and, therefore, denies these allegations.

33.     Plaintiff Lukis' discovery of Instant Checkmate's unauthorized use of her identity has caused her emotional distress.

**ANSWER:**  Instant Checkmate denies the allegations of paragraph 33.

34.     Plaintiff Lukis has not been compensated by Instant Checkmate in any way for its use of her identity.

**ANSWER:**   To the extent that Lukis is referring to information contained on the search results page, Instant Checkmate denies any characterization that the information is "hers" as it

implies ownership over publicly available information, which cannot be owned as a matter of law. In further answering, Instant Checkmate denies that Lukis is entitled to any sum of money and, therefore, denies the allegations of paragraph 34.

35.    Plaintiff Lukis does not want Instant Checkmate to use her identity for any commercial advertising purpose.

**ANSWER:**  To the extent that Lukis is referring to information contained on the search results page, Instant Checkmate denies any characterization that the information is "hers" as it implies ownership over publicly available information, which cannot be owned as a matter of law. In further answering, Instant Checkmate states that, prior to this litigation, Lukis never contacted Instant Checkmate to request that it remove or suppress any information about her. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 35.

36.    Plaintiff Robert Harper discovered that Instant Checkmate uses his name, age, city of domicile, and the identity of his relatives in advertisements on the Instant Checkmate website to advertise and/or actually sell Defendant's products and services. These advertisements were the same or substantially similar to those shown in Paragraph 9.

**ANSWER:**  Instant Checkmate denies the allegations of paragraph 36.

37.    Plaintiff Harper believes that it is reasonable for others to identify him because Defendant's advertisements include accurate details about him.

**ANSWER:**   Instant Checkmate denies the allegations of paragraph 37.

38.    Plaintiff Harper never provided Instant Checkmate with written consent to use any attribute of his identity in any advertisement or for any commercial purposes.

**ANSWER:**  Upon reasonable inquiry, Instant Checkmate lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 38 and, therefore, denies these allegations.

39.    Plaintiff Harper's discovery of Instant Checkmate's unauthorized use of his identity has caused him emotional distress.

**ANSWER:**   Instant Checkmate denies the allegations of paragraph 39.

40. Plaintiff Harper has not been compensated by Instant Checkmate in any way for its use of his identity.

**ANSWER:** To the extent that Harper is referring to information contained on the search results page, Instant Checkmate denies any characterization that the information is "his" as it implies ownership over publicly available information, which cannot be owned as a matter of law. In further answering, Instant Checkmate denies that Harper is entitled to any sum of money and, therefore, denies the allegations of paragraph 40.

41. Plaintiff Harper does not want Instant Checkmate to use his identity for any commercial advertising purpose.

**ANSWER:** To the extent that Harper is referring to information contained on the search results page, Instant Checkmate denies any characterization that the information is "his" as it implies ownership over publicly available information, which cannot be owned as a matter of law. In further answering, Instant Checkmate states that, prior to this litigation, Harper never contacted Instant Checkmate to request that it remove or suppress any information about him. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 41.

42. Upon information and belief, Defendant uses Plaintiff Adams' name, age, city of domicile, and the identity of her relatives in advertisements on the Instant Checkmate website to advertise and/or actually sell Defendant's products and services. These advertisements are the same or substantially similar to those shown in Paragraph 9.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 42.

43. Plaintiff Adams never provided Instant Checkmate with written consent to use any attribute of her identity in any advertisement or for any commercial purposes.

**ANSWER:** Upon reasonable inquiry, Instant Checkmate lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 43 and, therefore, denies these allegations.

44. Plaintiff Adams is not and has never been an Instant Checkmate customer. She has no relationship with Instant Checkmate whatsoever.

**ANSWER:** Upon reasonable inquiry, Instant Checkmate lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 44 and, therefore, denies these allegations.

45. Instant Checkmate's unauthorized use of her identity has caused Plaintiff emotional distress.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 45.

46. Plaintiff Adams has not been compensated by Instant Checkmate in any way for its use of her identity.

**ANSWER:** To the extent that Adams is referring to information contained on the search results page, Instant Checkmate denies any characterization that the information is "hers" as it implies ownership over publicly available information, which cannot be owned as a matter of law. In further answering, Instant Checkmate denies that Adams is entitled to any sum of money and, therefore, denies the allegations of paragraph 46.

47. Plaintiff Adams does not want Instant Checkmate to use her identity for any commercial advertising purpose.

**ANSWER:** To the extent that Adams is referring to information contained on the search results page, Instant Checkmate denies any characterization that the information is "hers" as it implies ownership over publicly available information, which cannot be owned as a matter of law. In further answering, Instant Checkmate states that, prior to this litigation, Adams never contacted Instant Checkmate to request that it remove or suppress any information about her. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 47.

## CLASS ACTION ALLEGATIONS

48. Plaintiffs Fischer, Lukis, Harper and Adams bring this action on behalf of themselves and a class defined "all Illinois residents who have appeared in an advertisement preview for an Instant Checkmate report."

**ANSWER:** Instant Checkmate admits only that Plaintiffs purport to bring this action on behalf of a class, and that Plaintiffs claim to define this class as set forth in paragraphs 48 and 49. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 48.

49.     Excluded from the class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:** Instant Checkmate admits only that Plaintiffs purport to bring this action on behalf of a class, and that Plaintiffs claim to define this class as set forth in paragraphs 48 and 49. Unless expressly admitted here, Instant Checkmate denies the remaining allegations of paragraph 49.

50.     The persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 50.

51.     There are common questions of law and fact common to the claims of Plaintiffs and the putative class, and those questions predominate over any questions that may affect individual members of the class. Common questions for the class include, but are not necessarily limited to the following:

      a.     Whether Instant Checkmate's uses class members' names and identities in advertisements for its own commercial benefit;

      b.     Whether the conduct described herein constitutes a violation of the Illinois Right of Publicity Act 765 ILCS 1075/1, *et seq.*; and

      c.     Whether Plaintiffs and the class are entitled to injunctive relief.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 51, including subparts a through c.

52. The claims of the named Plaintiffs are typical of those of the class. Plaintiffs will fairly and adequately represent and protect the interests of the class and has retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the class, and Defendant has no defenses unique to the Plaintiffs.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 52.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Judicial economy will be served by maintaining this lawsuit as a class action because it avoids the burden which would otherwise be placed upon the judicial system by the filing of numerous similar suits. A class action is also superior because the damages suffered by individual class members are relatively small and because the burden upon such individual litigants may make it difficult and impractical for them to pursue their claims against Defendant.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 53.

54. There are no obstacles to effective and efficient management of this lawsuit as a class action by this Court.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 54.

55. References to Plaintiffs shall be deemed to include the named Plaintiffs and each member of the class, unless otherwise indicated.

**ANSWER:** The allegations contained in paragraph 55 do not contain allegations of fact and, as such, no response is required. To the extent a response is required, Instant Checkmate denies the allegations of paragraph 55.

## FIRST CAUSE OF ACTION

**Violation of the Illinois Right of Publicity Act 765 ILCS 1075/1, *et seq.***
**(On behalf of Plaintiffs and the class)**
(Damages)

56. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

**ANSWER:** Instant Checkmate adopts and incorporates by reference its responses to each of the preceding paragraphs as if fully set out here.

57. The Illinois Right of Publicity Act prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent. *See* 765 ILCS 1075/1, *et seq.*

**ANSWER:** The allegations contained in paragraph 57 do not contain allegations of fact and, as such, no response is required. To the extent a response is required, Instant Checkmate denies the allegations of paragraph 57.

58. Based upon Instant Checkmate's violation of the Illinois Right of Publicity Act, Plaintiffs and class members are entitled to (1) an injunction requiring Instant Checkmate's to cease using Plaintiffs' and members of the class' names and any attributes of their identities to advertise its products and services, (2) the greater of any award of actual damages (including profits derived from the unauthorized use of Plaintiffs' and class members' names and identities) or statutory damages of $1,000 per violation to the members of the class, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under 765 ILCS 1075/40-55.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 58.

## SECOND CAUSE OF ACTION

**Violation of the Illinois Right of Publicity Act 765 ILCS 1075/1, *et seq.*
(On behalf of Plaintiffs and the class)**
(Injunctive Relief)

59. Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

**ANSWER:** Instant Checkmate adopts and incorporates by reference its responses to each of the preceding paragraphs as if fully set out here.

60. The Illinois Right of Publicity Act provides for injunctive relief. 765 ILCS § 1075/50.

**ANSWER:** The allegations contained in paragraph 60 do not contain allegations of fact and, as such, no response is required. To the extent a response is required, Instant Checkmate denies the allegations of paragraph 60.

61. Plaintiffs and class members are entitled to and seek an order enjoining further violations of the Illinois Right of Publicity Act by Defendant.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 61.

62. Injunctive relief is necessary to afford Plaintiffs and class members the safety and peace of mind envisioned by the passage of the Illinois Right of Publicity Act.

**ANSWER:** Instant Checkmate denies the allegations of paragraph 62.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order:

1. Certifying the class as defined above, appointing Robert Fischer, Stephanie Lukis, Robert Harper, and Tiffany Adams as class representatives, and appointing their counsel as class counsel;

2. Declaring that Instant Checkmate's actions described herein constitute a violation of the Illinois Right of Publicity Act;

3. Awarding injunctive and other equitable relief as necessary to protect the interest of the class, including, *inter alia*, prohibiting Instant Checkmate from engaging in the wrongful and unlawful acts described herein;

4. Awarding the greater of actual damages, including the profits derived from the unauthorized use of same, or statutory damages in the amount of $1,000 per violation of the members of the class;

5. Awarding punitive damages where applicable;

6. Awarding Plaintiffs and the class their reasonable litigation expenses and attorney's fees;

7. Awarding Plaintiffs and the class pre- and post-judgment interest; and

8. Granting such other and further relief as the Court deems equitable and just.

**ANSWER:** Instant Checkmate denies that Plaintiffs are entitled to any relief, including class certification or any of the other requested relief. Instant Checkmate denies any remaining allegation in the Amended Complaint that has not been previously addressed in this Answer.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues for which a jury trial is allowed.

**ANSWER:** Instant Checkmate admits only that Plaintiffs have requested a jury trial.

## AFFIRMATIVE AND OTHER DEFENSES

Instant Checkmate incorporates by reference the above answers as though fully set forth here and, in further answer to the Amended Complaint, asserts the following affirmative and other

defenses, which do not relieve Plaintiffs of the burden of proof for each and every element of their claims, for damages to which Plaintiffs allege they are entitled, or for any other matter upon which Plaintiffs bear the burden of proof as a matter of law. Additional facts and evidence in support of the following defenses will be developed during discovery and fully presented in a motion for summary judgment and/or opposition to any motion by Plaintiffs for class certification.

1.      Plaintiffs' claims are barred in whole or in part by an arbitration provision that prohibits Plaintiffs' claims from being brought in this forum. Under the arbitration provision, arbitrability "shall be resolved in arbitration," such that this Court should remove this case to arbitration.

2.      Plaintiffs' class claims are barred in whole or in part by a class action waiver provision. Thus, Plaintiffs' claims must be brought solely in their individual capacity and may not be brought in a representative or consolidated capacity. As such, Plaintiffs' class claims should be dismissed.

3.      Plaintiffs' claims are barred in whole or in part because Plaintiffs lack standing under Article III of the United States Constitution as they have suffered no injury in fact. Plaintiffs cannot establish that they suffered a concrete and particularized injury as a result of the alleged conduct of Instant Checkmate. As such, Plaintiffs' claims should be dismissed.

4.      Plaintiffs have failed to state a claim upon which relief may be granted because, among other reasons, *(a)* Instant Checkmate's alleged publication of Plaintiffs' information is fully protected by the First Amendment of the U.S. Constitution and Article I, Section 4 of the Illinois Constitution; *(b)* Instant Checkmate's alleged use of Plaintiffs' information in its search results is not a "commercial purpose" under the Illinois Right of Publicity Act ("IRPA"); *(c)* Instant Checkmate's alleged use of Plaintiffs' name and other publicly available information does not

qualify as the use of Plaintiffs' "identity" under IRPA; and *(d)* Instant Checkmate's background reports and search results are exempt from liability under Sections 35(b)(1), (b)(2), and (b)(4) of IRPA.

5.      Plaintiffs' claims are barred in whole or in part because Instant Checkmate's directory information and search results are fully protected by the First Amendment of the U.S. Constitution and Article I, Section 4 of the Illinois Constitution. The publication of directory information, including publicly available information, is newsworthy, informational, noncommercial speech that is entitled to full First Amendment protection, regardless of whether it is sold for a profit. Plaintiffs' alleged theory of IRPA liability, if given effect, would cause suppression and censorship of First Amendment protected speech.

6.      Plaintiffs' claims are barred in whole or in part by the First and Fourteenth Amendments of the U.S. Constitution and Article I, Section 4 of the Illinois Constitution because IRPA is unconstitutionally overbroad in that it prohibits protected speech, including the publication of publicly available, newsworthy information about people.

7.      Plaintiffs' claims are barred in whole or in part by the First and Fourteenth Amendments of the U.S. Constitution and Article I, Section 4 of the Illinois Constitution. Instant Checkmate's alleged use of Plaintiffs' publicly available information is fully protected noncommercial speech concerning newsworthy information of public concern, and the imposition of IRPA liability for that speech would render the IRPA unconstitutional as applied.

8.      Plaintiffs' claims are barred in whole or in part because the statutory damages provision of IRPA violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and Article I, Section 2 of the Illinois Constitution in that the statutory damages are

excessive, severe, and wholly disproportionate to the harm allegedly suffered by Plaintiffs and/or any putative class member.

9.      Plaintiffs' claims are barred in whole or in part by 765 ILCS 1075/35(b)(1) because Instant Checkmate's compilation of information, including that which is publicly available, is akin to the use of Plaintiffs' identities in a "book," "article," or "other [] visual . . . work," such as an online directory or encyclopedia of information, which are exempt from liability under § 35(b)(1) of IRPA.

10.     Plaintiffs' claims are barred in whole or in part by 765 ILCS 1075/35(b)(2) because Instant Checkmate's compilation of information, including that which is publicly available, is for a noncommercial purpose, such as for its newsworthiness and as matters of public concern, and is thus exempt from liability under § 35(b)(2) of IRPA.

11.     Plaintiffs' claims are barred in whole or in part by 765 ILCS 1075/35(b)(4) because Plaintiffs allege that Instant Checkmate uses their identities in alleged promotional materials or advertisements for background reports, which are exempt from liability under §§ 35(b)(1) and (b)(2) of IRPA.

12.     Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations because the first publication upon which Plaintiffs base their claims occurred more than one year before Plaintiffs filed their Complaint.

13.     Plaintiffs' claim for punitive damages is barred in whole or in part because Instant Checkmate's alleged conduct was not a willful violation of IRPA.

14.     Plaintiffs' claim for punitive damages is barred in whole or in part because it would violate Instant Checkmate's guarantees of due process, equal protection, protection against excessive fines, and protection against multiple punishments under the U.S. Constitution and

Illinois Constitution. An award of punitive damages in this case would grossly exceed any legitimate interest in punishment and deterrence for the publication of publicly available, newsworthy information.

15.     The proposed putative class fails to meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1) because the proposed putative class is not so numerous that joinder of all members is impractical.

16.     The proposed putative class fails to meet the commonality requirement of Fed. R. Civ. P. 23(a)(2) because there are questions of fact and law that must be resolved on an individual basis for each member of the proposed putative class, and common questions do not predominate over individual questions. As to each proposed putative class member, the Court may, for example, need to determine: whether the information used in Instant Checkmate's search results is sufficient to "identify" the putative class member within the meaning of the IRPA; whether the putative class member is a public figure; whether the putative class member consented to Instant Checkmate's use of their identity by, for example, agreeing to Instant Checkmate's website terms of use; and whether the putative class member agreed to the arbitration and class action waiver provisions of Instant Checkmate's website terms of use. These individual issues pertain to both liability and damages.

17.     The proposed putative class fails to meet the typicality requirement of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are not typical of the claims of other members of the proposed putative class. For example, each of the search results at issue contains different information.

18.     The proposed putative class fails to meet the requirement of Fed. R. Civ. P. 23(a)(4) because Plaintiffs cannot adequately and fairly protect the interests of the proposed putative class. Plaintiffs do not have a cognizable claim under IRPA and thus cannot adequately represent a class.

19.     The proposed putative class is inappropriate for class certification under Fed. R. Civ. P. 23(b)(3) because common questions of law or fact do not predominate over questions affecting only individual members, as explained in the above paragraph 16, which Instant Checkmate incorporates by reference as though fully set forth here. Class treatment, therefore, is not an efficient method to resolve the myriad individual questions.

20.     The proposed putative class is additionally inappropriate for class certification under Fed. R. Civ. P. 23(b)(3) because a class action is not a superior method for fairly and efficiently adjudicating this case. Plaintiffs' proposed class presents a number of individualized factual and legal issues pertaining to both liability and damages, as explained in the above paragraph 16, which Instant Checkmate incorporates by reference as though fully set forth here.

21.     The proposed putative class is inappropriate for class certification because there is no ascertainable class. The proposed putative class allegedly includes "all Illinois residents who have appeared in an advertisement preview for an Instant Checkmate report," which is potentially any Illinois resident whose name was searched on Instant Checkmate's website and any Illinois resident whose name resulted from a search for a different person's name during the class period.

22.     Plaintiffs' claims are barred in whole or in part by the Communications Decency Act, 47 U.S.C. § 230, because Instant Checkmate is an interactive computer service provider that is immune from liability for the information about people available throughout its website. A person's name can appear on the search results page only if a user visits Instant Checkmate's website homepage and then enters a similar or identical name into the search bar when conducting a search. In addition, Instant Checkmate displays information about people provided by third party data providers.

23.     Plaintiffs' claims are barred in whole or in part by the Dormant Commerce Clause to the extent Plaintiffs seek to apply IRPA to speech or conduct occurring outside Illinois.

24.     Plaintiffs' claims are barred in whole or in part by Illinois' extraterritoriality doctrine to the extent Plaintiffs seek to apply IRPA to speech or conduct occurring outside Illinois.

Instant Checkmate reserves the right to seek leave to amend this Answer and add, delete, and/or modify affirmative and other defenses based upon legal theories, facts, and circumstances which may be developed through discovery or otherwise.

WHEREFORE, Instant Checkmate respectfully requests that this Court enter judgment in its favor and against Plaintiffs, dismiss all claims against Instant Checkmate with prejudice,  award all costs, expenses, and attorneys' fees to Instant Checkmate as the prevailing party under 765 ILCS 1075/55, and grant Instant Checkmate such other relief as the Court deems just and appropriate.

## **<u>JURY DEMAND</u>**

Pursuant to Fed. R. Civ. P. 38, Instant Checkmate respectfully demands a trial by jury as to all issues so triable.

Dated:  December 17, 2020    Respectfully submitted,

           INSTANT CHECKMATE LLC

           By: /s/ Debbie L. Berman
             *One of Its Attorneys*

           Debbie L. Berman, #6205154
           Wade A. Thomson, # 6282174
           Clifford W. Berlow, #6292383
           JENNER & BLOCK LLP
           353 N. Clark, Suite 4400
           Chicago, IL  60654-3456
           T:  312-923-2764
           dberman@jenner.com
           wthomson@jenner.com
           cberlow@jenner.com

           Ian Heath Gershengorn (*pro hac vice*)
           JENNER & BLOCK LLP
           1099 New York Avenue, NW, Suite 900
           Washington, DC 20001-4412
           T: 202-637-6323
           igershengorn@jenner.com

           Avanti D. Bakane, #6299022
           Benjamin R. Kinney, #6317720
           Damon W.D. Wright
           GORDON REES SCULLY MANSUKHANI, LLP
           One North Franklin, Suite 800
           Chicago, IL 60606
           T: 312-619-4922
           abakane@grsm.com
           bkinney@grsm.com
           dwright@grsm.com

## **CERTIFICATE OF SERVICE**

I, Debbie L. Berman, certify that on December 17, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ *Debbie L. Berman*