# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Robert Fischer, Stephanie Lukis, Robert Harper, and Tiffany Adams, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Instant Checkmate LLC, <br><br> Defendants. | Case No. 1:19-cv-04892 <br><br> Hon. Judge Gary Feinerman <br><br> Magistrate Judge M. David Weisman |

**DEFENDANT INSTANT CHECKMATE LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF
ROBERT FISCHER TO PRODUCE PREVIOUSLY AGREED UPON DOCUMENTS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................1

ARGUMENT .........................................................................................................................6

I. Fischer Should Be Held to His Agreement To Produce His Social Media Data. .......6

II. The Information Instant Checkmate Seeks Is Highly Relevant. .................................7

    A. Fischer's Off-Facebook Activity Relating to Instant Checkmate Is Highly Relevant. ...................................................................................................................7

    B. Fischer's Consents Are Highly Relevant. ..........................................................8

    C. Fischer's Twitter Data Is Highly Relevant. ......................................................10

CONCLUSION ....................................................................................................................11

LOCAL RULE 37.2 CERTIFICATION ..............................................................................11

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*,
    172 F.R.D. 295 (N.D. Ill. 1997) ................................................................................... 7, 9

*BankDirect Capital Finance, LLC v. Capital Premium Finance, Inc.*,
    326 F.R.D. 171 (N.D. Ill. 2018) ............................................................................... 6, 7, 11

*In re Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*,
    No. 1:14-ML-2570-RLY-TAB, 2017 WL 4099209 (S.D. Ind. Sept. 15, 2017) ................. 9

*Estate of Loury by Hudson v. City of Chicago*,
    No. 16-CV-04452, 2017 WL 11562006 (N.D. Ill. Mar. 14, 2017) .................................... 9

*Lukis v. Whitepages, Inc.*,
    No. 1:19-cv-4871 (N.D. Ill.) ........................................................................................ 1, 4

*Meyer v. S. Pac. Lines*,
    199 F.R.D. 610 (N.D. Ill. 2001) ........................................................................................ 7

*Miller UK Ltd. v. Caterpillar, Inc.*,
    No. 10-cv-3770, 2013 WL 474380 (N.D. Ill. 2013) ..................................................... 6, 7

*Miracle-Pond v. Shutterfly, Inc.*,
    No. 19-cv-4722, 2020 WL 2513099 (N.D. Ill. May 15, 2020) .......................................... 8

*Murata Manufacturing Co. v. Bel Fuse, Inc.*,
    234 F.R.D. 175 (N.D. Ill. 2006) .................................................................................... 6, 7

*Patrick v. City of Chicago*,
    111 F. Supp. 3d 909 (N.D. Ill. 2015) ............................................................................. 6, 7

*Rickels v. City of South Bend, Ind.*,
    33 F.3d 785 (7th Cir. 1994) ............................................................................................. 11

*Sailsbery v. Vill. of Sauk Vill.*,
    No. 15-cv-10564, 2020 WL 5570091 (N.D. Ill. Sept. 17, 2020) ....................................... 9

**Other Authorities**

Facebook Help Center, www.facebook.com/help/2207256696182627 (last visited
    Feb. 22, 2021) .................................................................................................................... 3

Fed. R. Civ. P. 1 .......................................................................................................................... 11

Fed. R. Civ. P. 37 ...........................................................................................................................10, 11

Federal Rule of Civil Procedure 30(b)(6) ......................................................................................9

# INTRODUCTION

Two important issues in this case are: (1) plaintiffs' interactions with the Instant Checkmate website; and (2) their consent to third parties sharing their data for advertisement purposes, such as cell phone numbers and email addresses. Instant Checkmate, therefore, served discovery requests seeking this information. Initially, plaintiffs produced nothing, but subsequently on January 13, 2021, in a meet and confer, plaintiffs' counsel agreed to produce "all data accessible" from both plaintiffs Lukis' and Fischer's social media accounts, including "all materials" Lukis and Fischer are "able to download, including, but not limited to posts, browsing history, user history, consents, and messages." Plaintiffs' counsel produced this information as to Lukis both in this case and previously in the *Whitepages* case[1], but then reneged on their promise to do so for Fischer, now claiming that they "overproduced" as to Lukis and that the information Instant Checkmate sought is irrelevant. The real explanation for this about face is not the relevance of the data, but the fact that Lukis was deposed in the *Whitepages* matter where this information was used to show that she did not fully disclose her interactions with that website and that she publicly shared her information, including her cell phone and email address, with many companies. Simply because information is damaging to a party's case, however, does not make it irrelevant or permit a party to withhold it. Fischer should be compelled to provide information regarding his social media activities that he previously agreed to produce.

# BACKGROUND

**Plaintiffs' Counsel Agrees to Produce "All Data Accessible" from Fischer's and Lukis' Social Media Accounts**

On November 17, 2020, Instant Checkmate served interrogatories and requests for production ("RFPs") on plaintiffs Lukis and Fischer. Ex. 1, Decl. of D. Berman ("Berman Decl."),

---

[1] *See Lukis v. Whitepages, Inc.*, No. 1:19-cv-4871 (N.D. Ill.).

¶ 2. The RFPs asked Fischer to produce, among other things: (1) "all documents that support or refute any of Your answers to Instant Checkmate's first set of interrogatories" (RFP #1); (2) "all documents where You have consented to Your Identity information being used by another" (RFP #4); and (3) "all documents reflecting Your public facing social media accounts (Facebook, Instagram, Twitter, etc.)" (RFP #8). *See* Ex. B. Instant Checkmate requested this same information for Lukis. After multiple extensions, plaintiffs finally served responses on January 8, 2021. Berman Decl., ¶ 3; Exhibits C-D to the Berman Decl. ("Exs. C-D").

Plaintiffs' responses were woefully inadequate, and Instant Checkmate's counsel immediately requested a meet and confer. *Id.* ¶ 4; Ex. E. The parties held a meet and confer on January 13, 2021. *Id.* ¶ 5. During that conference, Instant Checkmate's counsel discussed the specific types of social media data Instant Checkmate was seeking, including but not limited to documents reflecting plaintiffs' consent to share their data with third parties and relevant browsing history captured in plaintiffs' Facebook data. *Id.* Instant Checkmate's counsel specifically asked plaintiffs' counsel if they would produce for Lukis and Fischer the same social media data that they produced for Lukis in the *Whitepages* matter, and plaintiffs' counsel agreed that they would. *Id.* Plaintiffs' counsel said that they would produce "all data accessible" from Lukis and Fischer's Facebook and Twitter accounts (and for Lukis, her LinkedIn and Reddit accounts), including "all materials" they are "able to download, including, but not limited to posts, **browsing history**, user history, **consents**, and messages." *Id.* (emphasis added). They agreed to produce this information by January 18 for Lukis and January 22 for Fischer. *Id.* Instant Checkmate's counsel memorialized this agreement in an email to plaintiffs' counsel the same day, the accuracy of which plaintiffs' counsel did not and does not dispute. *Id.*; *see* Ex. F.

**Lukis Produces Social Media Data Revealing Additional Interactions with Instant Checkmate Website and Wide Sharing of Her Data.**

On January 18 and January 24, 2021, pursuant to the January 13 agreement, Lukis produced her Facebook, Twitter, and LinkedIn data. Berman Decl. ¶ 6. Among the documents Lukis produced was a document from her Facebook account titled "Your Off-Facebook Activity." *Id.* ¶ 6; *see* Ex. G. Off-Facebook Activity is a log maintained by Facebook that reflects certain internet activity that Facebook users have on sites other than Facebook, such as instantcheckmate.com.[2] *See* Ex. G. Information contained in a user's Off-Facebook Activity can show, for example, dates when a Facebook user accessed the Instant Checkmate website and information on the user's interactions with the Instant Checkmate website. *Id.*

Importantly, Off-Facebook Activity provides information about a user's access of the Instant Checkmate website that Instant Checkmate cannot identify based only on the user's email address. Instant Checkmate can search for some user interactions with its website if it has the email address that the user entered on the site. However, for other interactions (*e.g.*, where a user did not input an email address), Instant Checkmate cannot search for user activity unless it knows the details of when the user accessed the website. Instant Checkmate can glean this information from data stored by social media applications, including Facebook, through its Off-Facebook Activity.

Off-Facebook Activity thus can show whether and when a person accessed Instant Checkmate's website and agreed to its Terms of Use, including the provisions regarding arbitration, class waiver and consent to Instant Checkmate's use of their information. For example,

---

[2] For more information, see *What is off-Facebook activity?*, Facebook Help Center, www.facebook.com/help/2207256696182627 (last visited Feb. 22, 2021).

Lukis' Off-Facebook Activity showed that she accessed the Instant Checkmate website more times than she disclosed in her interrogatory responses. *See* Ex. G.

Lukis' Facebook production also included a document from her Facebook account titled "Advertisers Who Uploaded a Contact List With Your Information", which reflects third parties with whom a user shared their contact information (hereinafter "Consents"). Berman Decl. ¶ 7; *see* Ex. I. This document revealed that Lukis shared her contact information with more than 4,200 third parties. Berman Decl. ¶ 7; Ex. I.

**Plaintiffs' Counsel Reneges on Their Agreement to Produce Fischer's Social Media Data**

In the *Whitepages* matter, Lukis was deposed regarding the Facebook data she produced, revealing that she did not fully disclose her interactions with that website and that she publicly shared her information, including her cell phone and email address, with many companies. *See, e.g.*, *Lukis v. Whitepages, Inc.* No. 1:19-cv-4871, Dkt. No. 121, at 3; Dkt. 132 at 10-11. Shortly after her deposition, when it became clear to plaintiffs' counsel that the social media data at issue could be harmful to their case, plaintiffs' counsel reneged on their agreement to produce the Off-Facebook Activity page and Consents for Fischer. Berman Decl. ¶ 8; *see* Ex. J.

Instant Checkmate's counsel explained, in multiple emails, that Fischer's Off-Facebook Activity showing interactions with Instant Checkmate and his Consents were highly relevant. *See* Berman Decl. ¶ 9; Ex. K. The parties conferred on these issues again on February 2, and plaintiffs' counsel said Fischer would not be producing the same social media data Lukis produced and, in particular, would not produce Fischer's Consents. Berman Decl. ¶ 10. Plaintiffs' counsel claimed that they had "overproduced" as to Lukis, in this case and the *Whitepages* case, and would not do the same as to Fischer, despite their prior agreement to do so, because the information is irrelevant. *Id.* Plaintiffs' counsel did, however reaffirm their agreement to produce Fischer's Off-Facebook Activity reflecting his interactions with Instantcheckmate.com by February 16. *Id.* Instant

4

Checkmate's counsel memorialized this agreement and plaintiffs' position on these issues in an email the same day. *See* Ex. L.

**Fischer Fails to Produce His Off-Facebook Activity, Documents Showing Third-Party Consents, and Other Social Media Data**

On February 16, Fischer's counsel reproduced some of the data he had previously produced in an unusable format and some additional, limited data from his Facebook account. Berman Decl. ¶ 12. Fischer, however, did not produce his Off-Facebook Activity, Consents or data from his Twitter Account, despite Fischer's prior agreement to do so. *Id.* Instant Checkmate's counsel wrote plaintiffs' counsel immediately to note these deficiencies and demand production of these documents. *Id.*; *see* Ex. N.

On February 18, the parties again conferred twice regarding these issues, during which plaintiffs' counsel said—for the first time—that "Fischer has no Off-Facebook Activity." Berman Decl. ¶ 14. Instant Checkmate's counsel expressed skepticism about this claim because the parties had been discussing Fischer's Off-Facebook Activity for several weeks, and plaintiffs' counsel never suggested that such activity did not exist. *Id.* Moreover, Fischer's produced Facebook data was collected on January 22, well before plaintiffs' counsel specifically reaffirmed their agreement to produce Fischer's Off-Facebook Activity on February 2. Berman Decl. ¶ 17; Ex. Q. Plaintiffs' counsel also was unable to clarify whether Fischer has no Off-Facebook Activity whatsoever or no Off-Facebook Activity reflecting interactions with Instant Checkmate. *Id.* ¶ 14.

To try to get to the bottom of this, counsel for Instant Checkmate immediately sent an email to plaintiffs' counsel requesting information to evaluate the factual basis of their position, including screenshots showing that no Off-Facebook Activity relating to Instant Checkmate existed and information on whether Fischer had erased or changed his Facebook privacy settings to prevent the recording of his Off-Facebook Activity. *Id.* ¶ 15; *see* Ex. P. To date, Fischer's

5

counsel has ignored this request and has not produced any additional documents despite their agreement to do so. Berman Decl. ¶ 16.

## ARGUMENT

I.  **Fischer Should Be Held to His Agreement To Produce His Social Media Data.**

Fischer should be compelled to keep his promise and produce his Off-Facebook Activity relating to Instant Checkmate, Consents and data from his Twitter account. It is well-settled that when a party agrees to produce certain documents, but later reneges on their agreement, courts hold the party to their initial agreement. For example, in *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, the plaintiff agreed to produce documents responsive to three document requests then later reneged on this promise, claiming that the information was irrelevant and not proportional to the needs of the case. 326 F.R.D. 171, 173-74 (N.D. Ill. 2018). The Court ordered the plaintiff to produce the information because "lawyers are expected to honor the promises they have made to their adversaries." *Id.* at 172. In response to the plaintiff's belated objections, the court noted that the basis for the objections "would have been apparent from the beginning," and plaintiffs' concerns "would and should have been raised had they been legitimate" but were not, and the "silence [was] deafening." *Id.* at 175. Numerous decisions in the Northern District of Illinois have likewise found that parties are bound by their promises made in discovery. *See, e.g.*, *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 185 (N.D. Ill. 2006) (party must be held to its promises in discovery); *Miller UK Ltd. v. Caterpillar, Inc.*, No. 10 C 3770, 2013 WL 474380, at *7 (N.D. Ill. 2013) (holding that a party cannot renege on its discovery agreement); *Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 911 (N.D. Ill. 2015) ("Given the existence of this [discovery] arrangement—which is not open to reasonable dispute—it was a binding agreement.").

There is no question that plaintiffs' counsel agreed to produce Fischer's Off-Facebook Activity relating to Instant Checkmate, Consents and data from his Twitter account. Plaintiffs' counsel further reaffirmed this agreement to produce Fischer's relevant Off-Facebook Activity on February 2. Plaintiffs' counsel and Fischer, like the plaintiffs in *BankDirect*, should be held to their promises in discovery. 326 F.R.D. at 172-75; *see also Murata Mfg. Co.*, 234 F.R.D. at 185; *Miller UK Ltd.*, 2013 WL 474380, at *7; *Patrick*, 111 F. Supp. 3d at 911.

## II. The Information Instant Checkmate Seeks Is Highly Relevant.

Plaintiffs' counsel belatedly has claimed that the information that Instant Checkmate seeks is irrelevant. Any relevance issue, however, "would have been apparent from the beginning"—prior to plaintiffs' counsel's agreement to produce these materials—and plaintiffs' counsel's concerns "would and should have been raised had they been legitimate." *BankDirect*, 326 F.R.D. at 175. In any event, the three categories of data that Instant Checkmate seeks are highly relevant to the issues in the case. Discovery should be allowed "if there is any possibility that the information sought may be relevant to the subject matter of the action." *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 303 (N.D. Ill. 1997). The party opposing discovery bears the burden of showing why it should be disallowed. *See Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611-12 (N.D. Ill. 2001).

### A. Fischer's Off-Facebook Activity Relating to Instant Checkmate Is Highly Relevant.

Fischer's Off-Facebook Activity relating to Instant Checkmate is relevant to issues in this case, as it could reveal additional interactions with Instant Checkmate—like Lukis' Off-Facebook Activity did. This evidence is probative to whether Fischer agreed to Instant Checkmate's Terms of Use, including its provisions regarding arbitration, class waiver and consent to the use of his information. *Cf. Miracle-Pond v. Shutterfly, Inc.*, No. 19-cv-4722, 2020 WL 2513099, at *1 (N.D.

7

Ill. May 15, 2020) (granting motion to compel arbitration based on agreement to online Terms of Use). Indeed, Fischer has admitted that his social media information is relevant "insofar as that private information might indicate visits by them to Defendant's website"—which is the exact information Instant Checkmate seeks. Dkt. No. 121, at 3.[3]

On February 18, plaintiffs' counsel asserted—for the first time—that Fischer "has no Off-Facebook Activity." Instant Checkmate has genuine concerns about the meaning of and basis for this assertion, given that plaintiffs' counsel agreed to produce Fischer's Off-Facebook Activity *after* collecting Fischer's Facebook data, at which point they must have known whether any Off-Facebook Activity existed. Plaintiffs' counsel's inability to answer even basic questions about their collection raises significant concerns about Fischer's compliance with his discovery obligations. Accordingly, if plaintiffs' position is that Fischer "has no Off-Facebook Activity," Instant Checkmate asks the Court to order plaintiffs' counsel to respond in full to the questions raised in Instant Checkmate's counsel's February 18, 2021 email to plaintiffs' counsel (*see* Ex. P) and produce any documents supporting their response.

B. **Fischer's Consents Are Highly Relevant.**

Fischer's Consents to share his contact information with third parties—including his "Advertisers Who Uploaded a Contact List With Your Information"—are likewise highly relevant to the issues in this case.[4] Such documents are probative of the issue whether the information

---

[3] Fischer's Off-Facebook Activity relating to Instant Checkmate falls squarely within Instant Checkmate's RFP #1, which sought all documents that support or refute Fischer's interrogatory responses, including Fischer's response to Instant Checkmate's Interrogatory #1 asking Fischer to identify all instances in which he accessed the Instant Checkmate website.

[4] Plaintiffs' counsel also previously suggested that such documents are outside the scope of Instant Checkmate's RFPs. But documents showing third parties with whom Fischer has shared his contact information fall squarely under RFP #4, which requires "all documents where You have consented to Your Identity information being used by another." Ex. B.

8

displayed in Instant Checkmate's search results and background reports is publicly available and the extent to which Fischer consented to the sharing of his contact information with third parties. This information also is relevant to rebutting Fischer's allegation that Instant Checkmate's use of his identity information "caused him emotional distress." Dkt. No. 109, ¶ 26; *see, e.g.*, *Sailsbery v. Vill. of Sauk Vill.*, No. 15-cv-10564, 2020 WL 5570091, at *2 (N.D. Ill. Sept. 17, 2020) (granting motion to compel production of social media data as relevant to defending allegations of emotional distress). Fischer can come nowhere near meeting his burden to show that there is not even a "possibility" that this information "may be relevant to the subject matter of the action." *In re Aircrash Disaster*, 172 F.R.D. at 303.[5]

Fischer's suggestion that this discovery is irrelevant rings particularly hollow here because plaintiffs recently served a Rule 30(b)(6) deposition notice that includes several topics directed specifically at whether the information in Instant Checkmate's search results and background reports is public available. For example, the notice identifies topics relating to "the source or data provider for the specific data on each page," "specific source(s) from which you obtain a person's cellular phone number(s), email address(es), and relative(s)," and "the specific sources where your Data Providers obtain [Personal Identity Information] that they provide to you." *See* Ex. M, Topic Nos. 4, 15, 16. Plaintiffs' counsel cannot have it both ways. They cannot maintain that such

---

[5] In email correspondence after they reneged on their agreement, plaintiffs' counsel cited *Estate of Loury by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 11562006 (N.D. Ill. Mar. 14, 2017) and *In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:14-ml-2570-RLY-TAB, 2017 WL 4099209 (S.D. Ind. Sept. 15, 2017) in support of their position. These cases are wholly inapposite. First, neither of these cases involved an agreement by counsel to produce documents that counsel subsequently decided to withhold. Second, these cases did not involve Illinois Right of Publicity Act claims where the public nature of plaintiffs' data and plaintiffs' consent to using that data are highly relevant. Third, both cases involved broad requests for social media data, whereas Instant Checkmate seeks only targeted information relevant to the same issues on which plaintiffs themselves seek discovery.

information is relevant for purposes of their discovery, but irrelevant for purposes of Instant Checkmate's.

### C. Fischer's Twitter Data Is Highly Relevant.

Fischer's Twitter data, which he agreed to produce, is similarly relevant to the public nature of Fischer's information, his consents for third parties to use such information and other interactions with the Instant Checkmate website. For example, Lukis' production of Twitter data included "connected applications" that "have permission to access some or all of [Lukis'] account data." Berman Decl. ¶ 6; Ex. H. Fischer should be ordered to produce all data accessible from his Twitter account, as previously agreed, immediately.[6]

\* \* \* \*

Pursuant to Rule 37(a)(5), Fischer and/or his counsel should be required to pay Instant Checkmate's reasonable expenses, including attorney's fees, incurred in making this motion. An award of expenses under Rule 37(a)(5) is mandatory unless either the losing party can show that (i) the movant did not attempt to obtain the discovery without court intervention; (ii) the nondisclosure was substantially justified; or (iii) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A); *see ED&F Capital Markets Ltd. v. JVMC Holdings Corp.*, 355 F.R.D. 174, 180 (N.D. Ill. 2020); *see also Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786-87 (7th Cir. 1994) ("The great operative principle of Rule 37(a)[5] is that the loser pays.").

Fischer cannot show that any of these exceptions to the presumption of awarding costs apply. Instant Checkmate's counsel engaged in significant good-faith efforts for over a month to

---

[6] Instant Checkmate recently learned that Lukis produced even more of her social media activity in the *Whitepages* matter that she wrongfully has withheld in this case. Instant Checkmate's counsel raised this with Lukis' counsel and has received no response, and may be left with no choice but to file a motion to compel that information as well.

resolve these issues without court intervention. Berman Decl. ¶¶ 4-17. Instant Checkmate's counsel gave plaintiffs' counsel numerous chances to produce the data they agreed to produce and repeatedly warned plaintiffs' counsel that, if they did not, Instant Checkmate would be forced to seek judicial intervention. *See, e.g.*, Ex. K; Ex. L; Ex. N; Ex. O. Plaintiffs' counsel's refusal to produce documents they had already agreed to produce is at best unjustified, and at worst a transparent act of litigation gamesmanship. No circumstances render an award of expenses unjust in this case. Quite the contrary. A party in discovery should not need to ask the Court to enforce its adversary's promises to produce document, as "lawyers are expected to honor" such promises. *BankDirect*, 326 F.R.D. at 172. Failing to adhere to discovery agreements does nothing but interfere with the "just, speedy, and inexpensive" resolution of an action that the Federal Rules of Civil Procedure are designed to secure. *See* Fed. R. Civ. P. 1. Accordingly, the Court should award Instant Checkmate its expenses, including attorney's fees, in bringing this motion.

## CONCLUSION

For the above reasons, the Court should enter an order granting Instant Checkmate's motion to compel and awarding Instant Checkmate its expenses, including attorney's fees, incurred in bringing this motion.

## LOCAL RULE 37.2 CERTIFICATION

On January 13, 2021, Instant Checkmate's counsel Debbie Berman and Sara Crook participated in a meet and confer teleconference with Fischer's counsel Roberto Costales. Berman Decl. ¶ 5. Ms. Berman summarized this teleconference in an email on the same day. *Id.* On January 24, Fischer's counsel William Beaumont produced certain limited, outward-facing data from Fischer's Facebook and Twitter accounts. On January 24, January 25, and January 27, Ms. Berman sent emails to Fischer's counsel regarding the inadequacy of Fischer's production and

related discovery issues. *Id.* ¶ 9. On February 2, Ms. Berman, Ms. Crook, and Fischer's counsel Mr. Costales and Mr. Beaumont participated in another meet and confer teleconference, which Ms. Berman again summarized in an email the same day. *Id.* ¶ 10. On February 16, Fischer's counsel Mr. Beaumont produced a small amount of Facebook data from Fischer, but not Fischer's Off-Facebook Activity. *Id.* ¶ 12. On February 16 and February 18, Ms. Berman sent emails to Fischer's counsel regarding the continuing inadequacy of Fischer's production of Facebook data. *Id.* ¶¶ 12-13. On February 18, Mr. Beaumont called Ms. Berman saying he wanted to clear up confusion. *Id.* ¶ 14. That meet and confer with Mr. Beaumont continued later that day with Ms. Berman and her colleague Josh Levin. *Id.* Ms. Berman summarized the February 18 meet and confers in an email to Fischer's counsel the same day. *Id.* ¶ 15. Ms. Berman's email indicated that the parties had reached an impasse despite Instant Checkmate's good faith efforts over several weeks to resolve the issues and that, absent a response to several questions by February 22, 2021, Instant Checkmate would have no choice but to seek judicial intervention. *Id.* To date, Fischer's counsel has not responded in any way to that email, let alone provide the requested information necessary to evaluate Fischer's new assertion that certain documents do not exist. *Id.* ¶ 16.

|  |  |
|---|---|
| Dated: February 25, 2021 | Respectfully submitted,<br><br>INSTANT CHECKMATE LLC<br><br>By: /s/ Debbie L. Berman<br><br>Debbie L. Berman, #6205154<br>Wade A. Thomson, # 6282174<br>Clifford W. Berlow, #6292383<br>JENNER & BLOCK LLP<br>353 N. Clark Street<br>Chicago, IL 60654-3456<br>Telephone: 312 222-9350<br>Facsimile: 312 527-0484<br>dberman@jenner.com |

12

        wthomson@jenner.com
        cberlow@jenner.com

        Ian Heath Gershengorn (*pro hac vice*)
        JENNER & BLOCK LLP
        1099 New York Avenue, NW, Suite 900
        Washington, DC 20001-4412
        Telephone: 202 639-6000
        Facsimile: 202 639-6066
        igershengorn@jenner.com

        Avanti D. Bakane, #6299022
        GORDON REESE SCULLY MANSUKANI, LLP
        One North Franklin, Suite 800
        Chicago, IL 60606
        Telephone: 312 619-4922
        abakane@grsm.com

        Damon W.D. Wright (*pro hac vice*)
        GORDON REESE SCULLY MANSUKANI, LLP
        1101 King St., Suite 520
        Alexandria, VA 22314
        Telephone: 703 650-7016
        dwright@grsm.com

        *Attorneys for Defendant Instant Checkmate LLC*

**CERTIFICATE OF SERVICE**

    I, Debbie L. Berman, certify that on February 25, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

                                               /s/ *Debbie L. Berman*
                                                 Debbie L. Berman