IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Fischer, Stephanie Lukis, | ) | |
| and Tiffany Adams, | ) | |
| individually and on behalf of all others | ) | CIVIL ACTION NO: 19-cv-4892 |
| similarly situated, | ) | |
| | ) | |
| *Plaintiffs,* | ) | JUDGE FEINERMAN |
| v. | ) | |
| | ) | MAG. WEISMAN |
| Instant Checkmate LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |

_____

**MOTION FOR CLASS CERTIFICATION**
_____

Plaintiffs Robert Fischer, Stephanie Lukis, and Tiffany Adams hereby move this Honorable

Court to certify the above-captioned case as a class action under Fed. R. Civ. P. 23(b)(2) and (b)(3).

For the reasons stated in the following memorandum of law, Plaintiffs' motion should be granted

in its entirety.

*Respectfully submitted*:

*/s/ Roberto Costales*
Roberto Costales
William H. Beaumont
BEAUMONT COSTALES LLC
107 W. Van Buren #209
Chicago, IL 60605
Tel: (773) 831-8000
*rlc@beaumontcostales.com*

*Attorneys for Plaintiffs*

1

## **Table of Contents**

Introduction……………………………………………………………………………….5

Factual Background………………………………………………………………………6

Class Definitions………………………………………………………….……………...10

Standard of Review……………………………………………………………………11

The requirements of FRCP 23(a) are met for all proposed classes……………………………12

Certification of the Injunctive Class is appropriate under FRCP 23(b)(2)………………………17

Certification of the Search Results Class and the SEO Directory Class are appropriate under FRCP 23(b)(3) …………………………………………………………………..…………...18

Conclusion………………………………………………………………………...……...24

## Summary of Exhibits

**Exhibit A**     ***Declaration of Plaintiffs' Counsel William Beaumont***. Mr. Beaumont is putative class counsel in this matter and his declaration (together with attached exhibits) relates to discovery obtained from the Defendant, his work on this case, and his firm's experience.

**Exhibit B**     ███████████████████████████████████████
███████████████████████████████████████
███████████████████████

**Exhibit C**     ███████████████████████████████████████
███████████████████████████████████████
██████████████████

**Exhibit D**     ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███

**Exhibit E**     ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████

**Exhibit F**     ███████████████████████████████████████
███████████████████████████████████████
██████████████████████

**Exhibit G**     ***Excerpts of Defendant's Discovery responses***. This exhibit consists of Defendant's response to Plaintiff's Interrogatory No. 6 and also Defendant's document production Bates No. ICM00074.

**Exhibit H**     ***Declaration of Plaintiff Tiffany Adams***. Ms. Adams is a Plaintiff in this matter and her declaration relates to her participation in this case and Defendant's use of her identity on its website.

**Exhibit I**     ***Declaration of Plaintiff Robert Fischer***. Mr. Fischer is a Plaintiff in this matter and his declaration relates to his participation in this case and Defendant's use of her identity on its website.

**Exhibit J**     ***Declaration of Plaintiff Stephanie Lukis***. Ms. Lukis is a Plaintiff in this matter and her declaration relates to her participation in this case and Defendant's use of her identity on its website.

## Table of Authorities

**Cases**:

*Alliance to End Repression v. Rochford*, 565 F.2d 975 (7th Cir. 1977)…………..………..………...17

*Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231 (1997) …………………..…………..……...22

*Butler v. Sears, Roebuck and Co*., 727 F. 3d 796 (7th Cir. 2013) ……………….…...……..20, 21

*Carnegie v. Household Intern., Inc*., 376 F. 3d 656 (7th Cir. 2004) …………………...……21, 23

*Chicago Teachers Union v. Bd. of Educ*., 797 F. 3d 426 (7th Cir. 2015) …………….…...19, 20

*Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019) …………………..…………………………12

*General Telephone Co. of Southwest v. Falcon*, 457 US 147 (1992) ……………………………15

*Hinman v. M and M Rental Center, Inc*., 545 F. Supp. 2d 802 (N.D. Ill. 2008) ………..………22

*IN RE IKO ROOFING SHINGLE PRODUCTS LIABILITY*, 757 F. 3d 599 (7th Cir. 2014) …....20

*Jefferson v. Ingersoll Intern. Inc.*, 195 F. 3d 894 (7th Cir. 1999) ……………….…...……..…..17,18

*Johnson v. Meriter Health Services Employee Retirement Plan*,
702 F. 3d 364 (7th Cir. 2012)……………….……………….. ……………………...……16, 18, 19, 24

*Keele v. Wexler*, 149 F. 3d 589 (7th Cir. 1998)……………….…………..……….……………………13

*Lukis v. Whitepages Inc.*, No. 19 C 4871, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020)……..…..12

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012)…………..11, 19, 20-21

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)……………….…………..17, 22, 24

*Mulvania v. Sheriff of Rock Island County*, 850 F. 3d 849 (7th Cir. 2017)……………….………13

*Murray v. GMAC Mortg. Corp*., 434 F. 3d 948 (7th Cir. 2006)……………….……………………24

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006)………………..……………………….15

*Pella Corp. v. Saltzman*, 606 F. 3d 391 (7th Cir. 2010)……………….…...……………….…..20

*Rosario v. Livaditis*, 963 F. 2d 1013 (7th Cir. 1992)……………….………………………………15

*Schleicher v. Wendt*, 618 F. 3d 679 (7th Cir. 2010)……………….………………………....11

*Siegel v. Shell Oil Co*., 612 F.3d 932 (7th Cir. 2010)……………….………………………………19

*Seijas v. Republic of Argentina*, 606 F.3d 53 (2d Cir. 2010)……………….…………………...21

*Spano v. The Boeing Co.*, 633 F. 3d 574 (7th Cir. 2011)……………….…………………….15, 16

*Suchanek v. Sturm Foods, Inc*., 764 F.3d 750 (7th Cir.2014)……………….…………………20

*Szabo v. Bridgeport Machines, Inc*., 249 F. 3d 672 (7th Cir. 2001)……………….……………11

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)………………………12, 14, 15, 16, 18

## Other Authorities:

FRCP 23………………………………………………………………………………….………*passim*

765 ILCS 1075 *et seq*…………………………………………………………..……...12, 14, 18, 24

*Wright & Miller*, Federal Practice & Procedure (3d ed. 2011)……………………….…...19, 22

Principles of the Law of Aggregate Litigation (Am. Law Inst. 2010)…………………….…...21

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert Fischer, Stephanie Lukis, | ) | |
| and Tiffany Adams, | ) | |
| individually and on behalf of all others | ) | CIVIL ACTION NO: 19-cv-4892 |
| similarly situated, | ) | |
| | ) | |
| *Plaintiffs,* | ) | JUDGE FEINERMAN |
| v. | ) | |
| | ) | MAG. WEISMAN |
| Instant Checkmate LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION**

I.    <u>**Introduction**</u>

This is a Rule 23(b)(2) and 23(b)(3) class action by Plaintiffs Robert Fischer, Stephanie Lukis, and Tiffany Adams ("Plaintiffs") challenging the unlawful business practices of Instant Checkmate, LLC ("Defendant" or "Instant Checkmate"). Plaintiffs allege that Instant Checkmate uses their identities for a commercial purpose where it publishes their personal information to sell subscriptions to Instant Checkmate's services. Plaintiffs allege that this business practice constitutes a violation of the Illinois Right of Publicity Act ("IRPA").

Plaintiffs now ask the Court to certify two different classes. First, an Injunctive Class that seeks to enjoin Defendant's unlawful business practices. Second, a Damages Class that seeks money damages for Defendant's past violations of the IRPA. As argued in more detail below, these claims are of the precise type that Rule 23 class certification was designed for.

5

II.     **Factual Background**

Defendant owns and operates the website InstantCheckmate.com (hereinafter "Website").[1] The Website provides background reports that contain biographical information about people.[2] Users are able to search the Website for a particular person in two ways. First, a user can conduct a name search on the homepage.[3] In response to this search, the Website displays free search results (hereinafter "Search Results") showing a list of people who have the same or similar name as the searched person.[4] The list of Search Results include for each person listed an age, current city and state of residence, a names of family members.[5] These Search Results are effectively a "free preview" of the information that is included in the background report offered by Defendant with respect to each person listed.[6] ████████████████████████ ████████████████████████████.[7]

The second way someone can search Defendant's website for a person is via the "SEO Directory." ███████████████████████████.[8] █████████████████████ ████████████████████████████████████████████████████ ███████████████.[9] ████████████████████████████████████████████ ████████████████████████████████████████ ██████.[10] Attached at ***Exhibit 1*** is an example of the SEO Directory listings for the name

---

[1] Dkt. 40-1, Decl. Brian Mahon at ¶ 2.
[2] *Id.*
[3] *Id* ¶ 3.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] See ***Exhibit A***, Beaumont Decl. ¶¶ 3, 4. ███████████████████████ ████████████████████████
[8] ████████████████████
[9] ***Exhibit D***, ██████████████████
[10] ***Exhibit D***, █████████████████

"Tiffany Adams" in the location of "Chicago, Illinois" and also an example of the SEO Directory listing for the name "Stephanie Lukis."[11] As is evident from these exhibits, SEO Directory listings include a person's age, living locations, relatives, email addresses, and phone numbers.



---

[11] *Exhibit A*, Beaumont Decl. at ¶¶ 6, 7.
[12] *Exhibit D*,
[13] *Exhibit E*,
[14] *Exhibit E*,
[15] *Exhibit E*,
[16] *Exhibit E*,
[17] *Exhibit D*,
[18] *Exhibit E*,

[19] *Exhibit D*,







On August 31, 2020 the Defendant provided sworn discovery responses to the Plaintiffs stating that it does not obtain written consent from anyone apart from the Website's terms of use.[36]

---

[29] ***Exhibit F***,

[30] *Id.*

[31] ***Exhibit F***,

[32] ***Exhibit F***, . *Id.*

[33] *Id.*

[34] ***Exhibit F***,

[35] ***Exhibit F***,

[36] ***Exhibit G***, Excerpts of Defendant's Discovery responses, response to Interrogatory No. 6.

[37] ***Exhibit B***,

███████████████████████████████████████

████████████████████████████████████.[38]

Finally, Plaintiffs Fischer, Lukis, and Adams are all residents of Illinois.[39] All three of them have been listed in Search Results generated by Defendant's website and/or the SEO Directory.[40]

### III.   Class Definitions

On the foregoing facts the Plaintiffs seek certification of an FRCP 23(b)(2) class and also argue two different theories of certification under FRCP 23(b)(3).

The FRCP 23(b)(2) **Injunctive Class**, seeking to enjoin future violations of the IRPA, is defined as follows:

"*All Illinois residents for whom (i) Defendant can generate a name, age, and one or more location(s) and relative(s) (ii) in either the SEO Directory or the Search Results of the Website.*"

Plaintiffs also propose certification of two classes under 23(b)(3), each seeking statutory damages for past violations of the IRPA. The first is the **Search Result Class**, defined as follows:

"*All Illinois residents for whom (i) a Search Result was listed on the Website (ii) that included their name, age, location(s), and relative(s) and (iii) was actually selected by a user of the Website (iv) during a period beginning January 1, 2016 and continuing to the date of class certification. Said class seeks only the minimum*

---

[38] ***Exhibit B,*** ████████████████

[39] ***Exhibit H***, Adams Decl. ¶ 1; ***Exhibit I***, Fischer Decl. ¶ 1; ***Exhibit J***, Lukis Decl. ¶ 1.

[40] ***Exhibit H***, Adams Decl. ¶¶ 6-8; ***Exhibit I***, Fischer Decl. ¶ 6-7; ***Exhibit J***, Lukis Decl. ¶¶ 6-8.

*statutory damages as set out in IRPA; and said class excludes anyone who has incurred actual damages as defined in IRPA."*

The second is the **SEO Directory Class**, defined as follows:

*"All Illinois residents who were listed in the SEO Directory on or since the date of filing of the complaint and continuing to the date of class certification, where such listing included that person's name, age, location(s), and relative(s). Said class seeks only the minimum statutory damages as set out in IRPA; and said class excludes anyone who has incurred actual damages as defined in IRPA."*

For the reasons argued in more detail below, the Court should certify the Plaintiff's proposed classes.

**IV.** **Standard of Review**

Plaintiffs' motion requires them to establish, by a preponderance of the evidence, the elements of FRCP 23 with respect to each proposed class. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Specifically, all three of Plaintiffs' proposed classes must meet the requirements of FCRP 23(a); additionally, the Injunctive Class must meet the requirements of FRCP 23(b)(2) and the two proposed Damages Classes must meet the requirements of FRCP 23(b)(3).

Although Plaintiffs' burden at the class certification stage is not to prove their class claims on the merits, *Szabo v. Bridgeport Machines, Inc.*, 249 F. 3d 672, 675-76 (7th Circuit 2001), they are cognizant that the Court must also make "whatever factual and legal inquiries are necessary," to determine if they establish the elements of Rule 23. *Id*. at 676. Invariably that involves "a peek at the merits…limited to those aspects of the merits that affect the decisions essential under Rule 23." *Schleicher v. Wendt*, 618 F. 3d 679, 685 (7th Cir. 2010). Limiting

11

merit-based inquires is important to preserving the efficiencies envisioned by the class action device; because following certification, classwide disputes can just as easily prevail as "go down in flames on the merits," *Id*., and thus resolve legal questions for entire groups of potential disputants—not just the named plaintiff.

Here, the merits of the dispute are dictated by the IRPA, which prohibits using an individual's identity for a commercial purpose without having obtained that person's written consent. *Lukis v. Whitepages Inc.*, No. 19 C 4871, 2020 WL 6287369, at *3 (N.D. Ill. Oct. 27, 2020); 765 ILCS 1075/30(a). "A plaintiff must thus prove (1) the appropriation of one's identity, (2) without one's consent, (3) for another's commercial benefit." *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019). "The IRPA defines identity as any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." *Id*. (quoting 765 ILCS 1075/5).

As described in more detail below, any peek at the merits in this case should counsel in favor of proceeding with class certification. Plaintiffs allege three objectively ascertainable classes of people whose identities are allegedly being used by the Defendant for a discrete commercial purpose on specific parts of Defendant's website. These facts make this case particularly well-suited to class treatment. The question of whether Defendant's conduct constitutes a violation of the IRPA is one common to all class members and capable of resolution "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

V.     **The requirements of FRCP 23(a) are met for all proposed classes**

As argued below, all of Plaintiffs' proposed classes meet the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy, as well as the implicit requirement of ascertainability.

### i.    Numerosity of class members

The Seventh Circuit has observed that 40 class members typically satisfies the "numerosity" requirement. *Mulvania v. Sherriff of Rock Island County*, 850 F. 3d 849, 859-60 (7th Cir. 2017). Here, Plaintiffs seek to certify classes of all Illinois residents that have been displayed or are capable of being displayed on Defendant's website. There are 48 individuals *alone* named Tiffany Adams "in Illinois" as reflected in the SEO Directory of Defendant's website.[41] Similarly, a Search Results page using the criteria "Ronald Harper" and "Illinois" produced more than 60 Search Results.[42] Additionally, the homepage of Defendant's Website boasts of more than 1.4 billion searches having been done by its service.[43] The sheer volume of these numbers is enough for the Court to reasonably conclude that each of Plaintiffs' three proposed classes are sufficiently numerous.

### ii.    Common Questions of Law and Fact

Under 23(a)(2), Plaintiff's class claims must involve "questions of law or fact common to the class." A common nucleus of operative facts is enough to satisfy the commonality requirement, and this typically exists where the defendants have engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F. 3d 589, 594 (7th Cir. 1998). The Supreme Court famously issued guidance on the commonality requirement in their landmark

---

[41] ***Exhibit A***, Beaumont Decl. ¶ 6.
[42] ***Exhibit A***, Beaumont Decl. ¶ 5.
[43] ***Exhibit G***, at ICM00074. ██████████████████████████

██████████████████████████
██████████████████

2011 decision, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Writing for the majority,

Justice Scalia observed:

> "[Common questions of law and fact] must depend upon a
> common contention…[t]hat common contention, moreover, must
> be of such a nature that it is capable of classwide resolution—
> which means that determination of its truth or falsity will resolve
> an issue that is central to the validity of each one of the claims in
> one stroke. What matters to class certification ... is not the raising
> of common 'questions'—even in droves—but, rather the
> capacity of a classwide proceeding to generate common *answers*
> apt to drive the resolution of the litigation."

*Dukes* at 2551 (emphasis in original) (quotations and citations omitted). Here, Plaintiffs' class

claims fit seamlessly into the commonality framework from *Dukes*. There is a "single answer" to

the "common questions" that Plaintiffs' lawsuit poses that have zero dissimilarity amongst class

members. Those questions are:

a. Is the combination of a class member's name, age, living location(s), and
relative(s) enough to constitute their "identity" within the meaning of the IRPA?

b. Does the practice of displaying either a Search Result or an SEO Directory
Listing about a class member constitute the "use" of that class member's identity
for a "commercial purpose" under the IRPA?

c. Is Defendant's practice of displaying class members' identities exempt under the
IRPA as described at 765 ILCS § 1075/30(b)(1), (2), and (4), as alleged in
Defendant's answer?

d. Is Defendant's practice of displaying class members' identities exempt under First
Amendment principles, as alleged in Defendant's answer?

e. Does Defendant obtain written consent from class members before displaying
their identities on the Website?[44]

These questions strike at the heart of Plaintiffs' case, but they are also identically

dispositive *as to all other class members*. In order words, these common questions can "generate

---

[44] ██████████████████████████████████████████████████████████
████████████████████

common answers" and resolve the litigation "in one stroke." *Dukes* at 2551. For example, if the Court finds that Defendant's website does not "use" Plaintiffs' identities for a "commercial purpose" when it displays them in a Search Result, then that answer will resolve the same legal question for all other class members. Similarly, if the listing of Plaintiffs' names, ages, living locations, and relatives do not constitute their "identities" within the meaning of the IRPA, that answer would apply to all other class members as well. Common questions also exist with respect to Defendant's defenses: whether the Website is exempt under the IRPA or First Amendment principles is a defense that would equally bar the claims of all class members. The questions posed by Plaintiffs' claim are in lockstep with those presented by the claims of all other proposed class members. For that reason, the commonality prong of 23(a) is satisfied.

iii.     **Typicality**

The question of typicality is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F. 2d 1013, 1018 (7th Cir. 1992). The two requirements "tend to merge" and both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon*, 457 US 147, 158, n. 13 (1992). Stated another way, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F. 3d 574, 586 (7th Cir. 2011).  That "congruence" is shown where "claims are based on the same legal theory…[where] the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quotations and citations omitted).

Here, Plaintiffs proposed classes include all Illinois residents whose name, age, living location(s), and relative(s) have or can be listed in a Search Result or the SEO Directory. With respect to each proposed class representative, the Defendant both has and can do that—as reflected in *Exhibits A*, *H*, *I*, and *J*.  Thus, Plaintiffs' claim are "typical" of all other class members, because they are also Illinois residents for whom the Defendant can and/or has displayed their name, age, living location(s), and relative(s) on the Website.

  iv. **Adequacy**

Adequacy also "tend[s] to merge" with the typicality and commonality requirements, "although the [adequacy] requirement also raises concerns about the competency of class counsel and conflicts of interest." *Dukes* at 2551 n. 5 (2011). The issue is one of constitutional principles: "absentee members of a class will not be bound by the final result if they were represented by someone who had a conflict of interest with them or who was otherwise inadequate." *Spano* at 587. Conflicts between a named class representative and class members is where the representative must "choose between competing class members" *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F. 3d 364, 372 (7th Cir. 2012), or where there is a possibility that "some class members will be hurt by class treatment[.]" *Id.*

Those concerns are inapplicable in the present case. There are no competing interests between the class members—they are all, categorically, subject to the same allegedly unlawful conduct. There is no possibility that any putative class member will be "hurt" by the class. Plaintiffs and their counsel have no "conflict of interest" with the putative class. Plaintiffs' interests are aligned with the class, and they are aware of their responsibilities as class

representatives.[45] Furthermore, Plaintiffs' counsel is competent in class actions, and has litigated this case expeditiously and professionally.[46]

v. <strong>Ascertainability</strong>

In addition to the four factors listed above, FRCP 23(a) also implicitly includes the requirement of ascertainability. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). In general, this means that a class must be clearly defined by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659–60 (7th Cir. 2015). Classes defined by vague or subjective criteria, or classes defined only in terms of success on the merits (so-called "fail-safe classes"), do not meet the ascertainability requirement. *Id*.

Here, Plaintiffs' proposed class definitions all set forth "objective criteria" by which class members may be identified. They consist of all residents of a particular state (Illinois) for whom Defendant can or has generated a specific entry on its website (either a Search Result listing or an SEO Directory listing) with a defined set of information (name, age, living location(s), and relative(s)). The proposed class definition is not a "fail safe" class, nor is it vague or dependent on subjective criteria "such as a person's state of mind." *Mullins*, *supra*, at 660. For these reasons the ascertainability prong is satisfied.

## VI.    Certification of the Injunctive Class is appropriate under 23(b)(2)

In addition to the requirements of 23(a), a class action under 23(b)(2) must also be one where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Jefferson v. Ingersoll Intern. Inc.,* 195 F. 3d 894, 896 (7th

---

[45] ***Exhibit I***, Fischer Decl. ¶¶ 2-5; ***Exhibit J***, Lukis Decl. ¶¶ 2-5; ***Exhibit H***, Adams Decl. ¶¶ 2-5.
[46] ***Exhibit A***, Beaumont Decl. ¶¶ 8-10.

Cir. 1999) (quoting Rule 23). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes* at 2557.

Plaintiffs' Injunctive Class seeks injunctive and declaratory relief. Plaintiffs ask that the Court declare Instant Checkmate's conduct unlawful under 765 ILCS 1075/1 and also enter an injunction under 765 ILCS 1075/50, which states:

> Upon a showing of cause as required by Article XI of the [Illinois] Code of Civil Procedure for the issuance of injunctive relief, the court may issue such temporary restraining orders, preliminary injunctions, and permanent injunctions as may be appropriate under this Act.

For many of the same reasons that Plaintiffs' claims meet the commonality prong of 23(a), so too do they meet the requirements of 23(b)(2). A declaratory judgment that Defendant's Website violates the IRPA is a determination that has a uniform application for each class member—because Defendant's practice affects every class member in the same way. Similarly, any injunction mandating that Instant Checkmate change its policies (or any judgment finding that no injunction is necessary) totally and finally applies to each class member "indivisibly." *Dukes* at 2557.

## VII. Certification of the Search Results Class and SEO Directory Class Under 23(b)(3) is also appropriate

Plaintiffs also seek certification of the Search Results Class and SEO Directory Class under 23(b)(3). Because these classes seek money damages, their claims are more appropriately certified under 23(b)(3). *Dukes* at 2557 (damage claims that are not "incidental" to equitable relief must be brought under 23(b)(3)); *Johnson* at 370 (7th Cir. 2012) (observing that post-*Dukes* it is unclear if a 23(b)(2) class "can *ever* seek damages") (emphasis in original). Unlike

(b)(2) classes, 23(b)(3) classes require the plaintiff to establish (1) that questions common to class member *predominate* over individualized ones, and (2) that the class action mechanism is the *superior* means of adjudicating the dispute between the defendant and the class. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir.2010). Also, notice must also be provided to 23(b)(3) class members affording them the ability to "opt out" of the class. *Johnson* at 370.

As shown below, both of Plaintiffs' proposed Damages Classes meet the all the requirements of 23(b)(3).

i.    **Predominance**

The predominance inquiry is concerned with whether class members' claims will be materially advanced by the class representative's case. "Predominance is met when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner* at 815 (quoting *Wright & Miller*, Federal Practice & Procedure § 1778 (3d ed. 2011)). Here, and as argued above, there are two basic and common questions that drive this litigation, namely: (i) is Defendant violating the IRPA when its Website displays certain categories of class members' personal information without class members' consent; and (ii) is Defendant's Website exempt from the IRPA under some legal theory? There are no "individualized inquiries" of class members which so predominate over these two basic questions that certification under 23(b)(3) is unwarranted. As the Seventh Circuit observed in *Chicago Teachers Union v. Bd. of Educ.*, 797 F. 3d 426 (7th Cir. 2015):

> The office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the `method' best suited to adjudication of the controversy fairly and efficiently. Consequently…[the] only answer we provide today is that it will certainly be efficient and fair to answer the question once for all plaintiffs rather than in piecemeal litigation….One single question would trigger a liability finding for both the 23(b)(2) and 23(b)(3) class…[and] the answer to this question would eliminate the need for repeat adjudication of this question for determinations of damages or individual injunctive relief."

*Chicago Teachers* at 444-5 (quotations and citations omitted). Here, there is no fairer and more efficient course than for the Court to settle, once and for all class members, the major liability questions that drive this case.

By comparison, the individual questions posed by class certification are mechanically determinable. Because the proposed Damages Classes are limited to individuals who were included in the SEO Directory or actually selected from a listing of Search Results, the only real question is whether someone (1) is an Illinois resident; and (2) was included in either the SEO Directory or selected in any Search Result. ████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████[47]████████████████████████████

████████████████████████████████████████████████

These limited types of individualized inquiries should not preclude 23(b)(3) class certification, as the Seventh Circuit has consistently held that more complex individualized inquires do not. *See e.g.*, *Suchanek v. Sturm Foods, Inc*., 764 F.3d 750, 760 (7th Cir. 2014) (individual issues of proving reliance and causation in the consumer fraud context does not preclude class certification); *Pella Corp. v. Saltzman*, 606 F. 3d 391, 394 (7th Cir. 2010) (same); *Butler v. Sears, Roebuck and Co*., 727 F. 3d 796, 798 (7th Cir. 2013) (product defect case where individual hearings to determine damages for each class member not a basis to deny class certification); *IN RE IKO ROOFING SHINGLE PRODUCTS LIABILITY*, 757 F. 3d 599, 603 (7th Cir. 2014) (rejecting the requirement that there must be a "commonality of damages" and

---

[47] *See* footnotes 29-35, *supra*; ***Exhibit D***, ████████████████████

affirming the holdings in *Pella* and *Butler*). *See also Messner* at 815 ("The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole").

The class question posed above, i.e. whether the Website violates the IRPA or is exempt from it, is so important and fundamental that even if the Court were to find individualized issues problematic, it should at least partially certify this matter to rule on the class questions alone. *See Butler* at 800; Principles of the Law of Aggregate Litigation § 2.02(e) (Am. Law Inst. 2010) (partial certification under FRCP 23(b)(4) appropriate where it would "materially advance" the resolution of plaintiffs' and the class members' claims "by addressing the core of the dispute in a manner superior to other realistic procedural alternatives, so as to generate significant judicial efficiencies."). That said, partial certification should not be necessary. The common questions posed by all class members' claims predominate over individual issues and the predominance prong is satisfied.

ii.    **Superiority**

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." One common litmus test of superiority is whether class members would be better off pursuing their own claims. Cases where, as here, the class members' prospective recovery is minimal compared to the costs of litigation, "the class action device is frequently superior to individual actions." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). Or, as Judge Posner famously quipped: "only a lunatic or a fanatic sues for $30." *Carnegie v. Household Intern., Inc*., 376 F. 3d 656, 661 (7th Cir. 2004).

Here, class members stand to gain $1,000—not $30—but that is still a meagre sum compared to the costs of litigation against a well-heeled Defendant like Instant Checkmate.

Plaintiffs' counsel's attached declaration testifies to the time-consuming challenges of this case. There have been 6 depositions (and counting),[48] litigation costs are already more than $8,000,[49] and motion practice has been extensive.[50] The scope of these risks and expenses in comparison to the modest recovery of just $1,000 justifies certification:

> For example, a group composed of consumers or small investors typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure. When this is the case it seems appropriate to conclude that the class action "is superior to other available methods for the fair and efficient adjudication of the controversy."

7A Wright, Miller & Kane, *Federal Practice & Procedure*, § 1779 at 557 (3d ed.). *See e.g., Hinman v. M and M Rental Center, Inc*., 545 F. Supp. 2d 802, 808 (N.D. Ill. 2008) ("It also appears that resolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources. The superiority requirement of Rule 23(b) is therefore satisfied."); *see also Amchem* at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

The second hallmark of the superiority analysis is manageability. "A court must consider the likely difficulties in managing a class action but in doing so it must balance countervailing interests to decide whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Mullins* at 658. When courts analyze the superiority requirement "they must recognize both the costs *and benefits* of the class device." *Id.* at 664 (emphasis in original). Denial of class certification due to manageability concerns should be "a

---

[48] *Exhibit A,* Beaumont Decl. ¶ 8.
[49] *Exhibit A,* Beaumont Decl. ¶ 10.
[50] *Exhibit A,* Beaumont Decl. ¶ 9.

last resort" because, as a practical matter, a denial of class certification often means that the parties' dispute will not be resolved at all. *Id.* (quoting *Carnegie*, 376 F.3d at 661, "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all").

The Seventh Circuit has discussed manageability in both the liability and remedy phases of a class case. *See, e.g., Carnegie* at 661. Here, Plaintiffs' case presents minimal manageability concerns in both phases. First, as argued above, proving liability in this case is subject to a uniform analysis across all class members. There are no sub-classes applying different states' laws or analyzing class members claims according to different factual scenarios. The two common denominators to all class members' claims are the exact same, and they focus on the conduct of Defendant, not individual class members: (1) does the Website "use" class members' "identities" for a "commercial purpose" in the Search Results and/or SEO Directory and (2) is the Website exempt from the IRPA?

Similarly, the remedy phase does not pose extensive or unworkable manageability concerns. ███████████████████████████████████████████ ███████████████████████████████████"[51] ████████████████████████████ ██████████████████████████████████████████████████[52] ████████████████████████████████████████████████. Self-identification as a class member, via affidavit, is the only administrative issue envisioned by the remedy phase. This approach to class membership has been expressly endorsed by the Seventh

---

[51] ***Exhibit D***, ███████████████████████
[52] *See* footnotes 29-35, *supra*.

Circuit. *See Mullins* at 672. Further, because each class member need not prove actual damages to recover their statutory award of $1,000, no further individual hearings are necessary. Limiting class membership to a statutory minimum damage award[53] is a well-established and accepted method in class litigation action. *Murray v. GMAC Mortg. Corp.*, 434 F. 3d 948, 953 (7th 2006) ("Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification.").

### iii.   **Notice Plan**

Another defining characteristic of 23(b)(3) classes is class notice. Class members must be given an opportunity to opt-out of the class. *Johnson* at 370. To this end, following the grant of Plaintiffs' motion with respect to either of their proposed Damages Classes, the Court should order the Plaintiffs to provide a proposed notice plan.

## VIII.   **Conclusion**

This case presents an exciting opportunity for the Court to decide, for all Illinoisans, whether websites like the Defendant's will be permitted to profit off the identities of individuals without their consent. Whether Defendant's Website violates the IRPA is a question that has universal application to all class members and the Court's answer to that question will provide important guidance and peace of mind to all parties moving forward.

Plaintiffs' motion should be granted.

---

[53] Under the IRPA, a prevailing plaintiff is entitled to statutory minimum damages of $1,000. 765 ILCS 1075/40. "[P]roof of actual damages is not a prerequisite to recovery of statutory minimum damages" under the IRPA. *Id*.

*Respectfully submitted*:

*/s/ Roberto Costales*
Roberto Costales
William H. Beaumont
BEAUMONT COSTALES LLC
107 W. Van Buren #209
Chicago, IL 60605
Tel: (773) 831-8000
*rlc@beaumontcostales.com*

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2021, I served a copy of the foregoing on counsel for

Defendants via the Court's CM/ECF system.

*/s/ Roberto Costales*