**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT FISCHER, STEPHANIE LUKIS, ALESSANDRA FISSINGER-FIGUEROA, ERIC CARVALHO, JOSE CAMACHO, RHONDA COTTA, ROGELIO RAMIREZ, JAKE WEBB, JAMES ANDERSON, THERESE BACKOWSKI, JUSTIN ROGALSKY, NATEEMA LEWIS, and NICHOLAS FIORITTO, individually and on behalf of all others similarly situated, | |
| | Case No. 19-cv-4892 |
| *Plaintiffs*, | Hon. Manish S. Shah |
| v. | |
| INSTANT CHECKMATE LLC, TRUTHFINDER LLC, INTELIUS LLC, THE CONTROL GROUP MEDIA COMPANY, LLC, and PEOPLECONNECT, INC., | |
| *Defendants*. | |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................................3

    A. The Relevant Right of Publicity Statutes ...........................................3

    B. Plaintiffs' Allegations ...........................................................................4

    C. Litigation, Negotiation, and Settlement ..............................................5

III. TERMS OF THE SETTLEMENT AGREEMENT ..........................................9

    A. Class Definitions ...................................................................................9

    B. Monetary Relief ..................................................................................12

    C. Prospective Relief ...............................................................................13

    D. Payment of Settlement Notice and Administrative Costs ................13

    E. Payment of Attorneys' Fees, Costs, and Incentive Award ..............14

    F. Release of Liability .............................................................................14

IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT PAYMENT CLASSES .......................................................15

    A. The Settlement Classes Can Be Certified .........................................15

        1. The Settlement Classes Are Sufficiently Numerous ...........16

        2. Common Issues of Fact and Law Predominate....................17

        3. Plaintiffs' Claims Are Typical of the Settlement Classes They Seek to Represent ........................................................20

        4. The Adequacy Requirement Is Satisfied...............................22

        5. A Class Action Is a Superior Method of Resolving the Controversy with Respect to the Settlement Payment Classes .................................26

        6. Injunctive Relief Is Appropriately Entered for the Multistate Injunction Settlement Classes .................................29

7.    The Classes Are Ascertainable ................................................30

8.    The SEO Directory Class Definition Is Appropriately Modified to Align with the Proposed Illinois Injunction Settlement Class Definition ................................................31

B.    The Proposed Settlement Warrants Preliminary Approval ...........................33

1.    Plaintiffs and Proposed Class Counsel Have Adequately Represented the Settlement Classes................................................33

2.    The Settlement Was Negotiated at Arm's Length ...............................35

3.    The Relief Provided for the Classes Is Exceptional ...........................36

a.    The benefits of settlement outweigh the cost, risk, and delay of further litigation................................................37

b.    The proposed method of distributing relief to the Settlement Payment Classes is effective ........................................41

c.    The terms of the requested attorneys' fees are reasonable ......42

d.    There are no side agreements separate from the Settlement Agreement................................................43

4.    The Settlement Treats Class Members Equitably ...............................44

C.    The Proposed Notice Plan to the Settlement Payment Classes Should Be Approved in Form and Substance................................................45

1.    Notice to the Settlement Payment Classes Comports with Rule 23 and Due Process................................................46

2.    Notice to the Multistate Settlement Classes Is Unnecessary ...............47

V.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .....49

VI.    CONCLUSION ................................................50

**TABLE OF AUTHORITIES**

**United States Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................26

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
    568 U.S. 455 (2013)............................................................................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)............................................................................18

*Frank v. Gaos*,
    139 S. Ct. 1041 (2019)........................................................................39

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)............................................................................44

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)..............................................................17, 18, 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)....................................................................17, 47

**United States Appellate Court Cases**

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) ............................................................15

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018 (7th Cir. 2018) ..........................................................18

*Bell v. PNC Bank, Nat'l Ass'n*,
    800 F.3d 360 (7th Cir. 2015) ............................................................17

*Dancel v. Groupon, Inc.*,
    949 F.3d 999 (7th Cir. 2019) ............................................................18

*Fraley v. Batman*,
    638 F. App'x 594 (9th Cir. 2016) ................................................38, 39

*Gomez v. St. Vincent Health, Inc.*,
    649 F.3d 583 (7th Cir. 2011) ............................................................22

*Howard v. Cook Cnty. Sheriff's Off.*,
   989 F.3d 587 (7th Cir. 2021) ...........................................................................17, 21, 22

*In re Motorola Secs. Litig.*,
   644 F.3d 511 (7th Cir. 2011) ...........................................................................31

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) .......................................................................27

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...........................................................................39

*Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL-CIO*,
   216 F.3d 577 (7th Cir. 2000) ...........................................................................29

*Lewis v. City of Chicago*,
   702 F.3d 958 (7th Cir. 2012) ...........................................................................49

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ...........................................................................18

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ...........................................................................16, 28, 30

*Retired Chi. Police Ass'n v. City of Chi.*,
   7 F.3d 584 (7th Cir. 1993) ...............................................................................22

*Spano v. The Boeing Co.*,
   633 F.3d 574 (7th Cir. 2011) ...........................................................................21

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ...........................................................................17

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ...........................................................................37

**<u>United States District Court Cases</u>**

*Alvarado v. Int'l Laser Prods., Inc.*,
   No. 18-cv-7756 (N.D. Ill. Jan. 24, 2020).........................................................43

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ...........................34

*Backowski v. PeopleConnect, Inc.*,
   No. 21-cv-00115 (W.D. Wash.).............................................................*passim*

*Barnes v. Air Line Pilots Ass'n, Int'l*,
   310 F.R.D. 551 (N.D. Ill. 2015) ...................................................................................16, 28

*Benson, et al. v. DoubleDown Interactive, LLC., et al.*,
   No. 2:18-cv-00525 (W.D. Wash. June 1, 2023) ...............................................................23

*Bernal v. NRA Grp. LLC*,
   318 F.R.D. 64 (N.D. Ill. 2016)........................................................................................27, 29

*Boelter v. Hearst Commc'ns, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017)...................................................................................24

*Breeden v. Benchmark Lending Grp., Inc.*,
   229 F.R.D. 623 (N.D. Cal. 2005)...........................................................................................28

*Butela v. Midland Credit Mgmt. Inc.*,
   341 F.R.D. 581 (W.D. Pa. 2022) ..........................................................................................26

*Calderon v. GEICO Gen. Ins. Co.*,
   279 F.R.D. 337 (D. Md. 2012)...............................................................................................28

*Camacho v. The Control Group Media Co., LLC*,
   No. 21-cv-01957 (S.D. Cal.) ......................................................................................... *passim*

*Camacho v. The Control Group Media Co., LLC*,
   No. 21-cv-01954 (S.D. Cal.) ......................................................................................... *passim*

*Cates v. Whirlpool Corp.*,
   No. 15-cv-5980, 2017 WL 1862640 (N.D. Ill. May 9, 2017)............................................17

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ................................................................................................21

*Charvat v. Valente*,
   No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ..........................35, 36, 41

*Chapman v. Worldwide Asset Mgmt., L.L.C.*,
   No. 04-cv-7625, 2005 WL 2171168 (N.D. Ill. Aug. 30, 2005) .........................................23

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
   No. 1:18-cv-07018 (N.D. Ill. Sept. 10, 2020) ....................................................................43

*Dancel v. Groupon, Inc.*,
   No. 18 C 2027, 2019 WL 1013562 (N.D. Ill. Mar. 4, 2019) ............................................41

*Ebin v. Kangadis Food Inc.*,
 297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................................24

*Fischer, et al. v. Instant Checkmate LLC*,
 No. 19-cv-04892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ................................ *passim*

*Fraley v. Facebook, Inc.*,
 966 F. Supp. 2d 939 (N.D. Cal. 2013) .....................................................................38

*Friske v. Bonnier Corp.*,
 No. 16-cv-12799 (E.D. Mich.) ..................................................................................25

*Gates v. City of Chicago*,
 No. 04 C 2155, 2011 WL 1811187 (N.D. Ill. May 12, 2011) .................................32

*Goldsmith v. Tech. Sols. Co.*,
 No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ...............................40

*Howard v. LVNV Funding, LLC*,
 No. 3:19-cv-00093, 2023 U.S. Dist. LEXIS 52294 (W.D. Pa. Mar. 22, 2023) .................26

*In re Google Buzz Priv. Litig.*,
 No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ..........................39

*In re Google LLC Street View Elec. Commc'ns Litig.*,
 611 F. Supp. 3d 872 (N.D. Cal. 2020) .......................................................................2

*In re Hearst Communications State Right of Publicity Statute Cases*,
 632 F. Supp. 3d 616 (S.D.N.Y. 2022) ......................................................................18

*In re Relafen Antitrust Litig.*,
 218 F.R.D. 337 (D. Mass. 2003) ...............................................................................28

*In Re: Vizio, Inc. Consumer Privacy Litig.*,
 No. 8:16-ml-02693 (C.D. Cal. Apr. 12, 2019) ........................................................25

*Jackson v. Nat'l Action Fin. Servs., Inc.*,
 227 F.R.D. 284 (N.D. Ill. 2005) ...............................................................................27

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
 No. 3:10-CV-00426-WMC, 2014 WL 12725371 (W.D. Wis. Sept. 17, 2014) ..........31, 32

*Knapke v. PeopleConnect Inc.*,
 No. C21-262 MJP, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) ..............................40

*Kolebuck-Utz v. Whitepages Inc.*,
No. C21-0053-JCC, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021)..........................40

*Krause v. Rocketreach*,
No. 21-cv-01938 (N.D. Ill.) ..................................................................23, 38, 50

*Lechuga v. Elite Eng'g, Inc.*,
559 F. Supp. 3d 736 (N.D. Ill. 2021) ..............................................................22

*Lopez-McNear v. Superior Health Linens, LLC*,
No. 19-cv-2390 (N.D. Ill. Apr. 27, 2021) .......................................................43

*Lukis v. Whitepages Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ..............................................................40

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
No. 18 C 1526, 2020 WL 4345418 (N.D. Ill. July 29, 2020) ..........................50

*Muir v. Nature's Bounty (DE), Inc.*,
No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018)............................20

*Palmer v. Combined Ins. Co. of Am.*,
217 F.R.D. 430 (N.D. Ill. 2003).....................................................................48

*Pawelczak v. Fin. Recovery Servs., Inc.*,
286 F.R.D. 381 (N.D. Ill. 2012).....................................................................27

*Perez v. Rash Curtis & Associates*,
No. 4:16-cv-03396-YGR (N.D. Cal.) ..............................................................24

*Perez v. Rash Curtis & Associates*,
No. 4:16-cv-03396, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) ...................24

*Ramirez v. GLK Foods, LLC*,
No. 12-C-210, 2014 WL 2612065 (E.D. Wis. June 11, 2014) .........................28

*Ramirez v. The Control Group Media Co., LLC*,
No. 22-cv-01128 (S.D. Cal.).............................................................................4

*Ramos v. ZoomInfo Techs., LLC*,
No. 21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021).........................40

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................................42

*Sessa v. Ancestry.com Operations Inc.*,
  No. 2:20-cv-02292, 2021 WL 4245359 (D. Nev. Sept. 16, 2021)......................................40

*Smith v. City of Chicago*,
  340 F.R.D. 262 (N.D. Ill. 2021).....................................................................................30

*Snyder v. Ocwen Loan Servicing, LLC*,
  No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ...............................33, 34, 36

*Starr v. Chi. Cut Steakhouse*,
  75 F. Supp. 3d 859 (N.D. Ill. 2014) ...............................................................................22

*Tedesco v. Mishkin*,
  689 F. Supp. 1327 (S.D.N.Y. 1988)................................................................................28

*T.K. through Leshore v. Bytedance Tech. Co., Ltd.*,
  No. 19-cv-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ................................. *passim*

*Walsh v. Kelley*,
  No. 17-CV-05405, 2021 WL 4459531 (N.D. Ill. Sept. 29, 2021) ....................................47

*Williams v. Lane*,
  129 F.R.D. 636 (N.D. Ill. 1990)................................................................................48, 49

*Wright v. Nationstar Mortg. LLC*,
  No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016).........................................26

*Young v. Rolling in the Dough, Inc.*,
  No. 1:17-CV-07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ..............................36, 41

*Zuniga v. Bernalillo Cnty.*,
  319 F.R.D. 640 (D.N.M. 2016).......................................................................................27

## State Court Cases

*James, et al. v. PacifiCorp, et al.*,
  20CV33885 (4th Dist. Oregon).......................................................................................23

## Miscellaneous Authority

4 Newberg on Class Actions § 13:1 (6th ed.) ...........................................................15

7AA Fed. Prac. & Proc. Civ. § 1785.4 (3d ed.) ........................................................32

28 U.S.C. § 1292....................................................................................................5

765 ILCS 1075 ...........................................................................................................3, 19

Ala. Code § 6-5-770 ..........................................................................................................3

Ala. Code § 6-5-772 ..........................................................................................................3

Ala. Code § 6-5-774 ..........................................................................................................3

Cal. Civ. Code § 3344 .......................................................................................................3

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Ind. Code § 32-36-1 ......................................................................................................3, 4

Nev. Rev. Stat. § 597.790 .................................................................................................3

Nev. Rev. Stat. § 597.810 .................................................................................................4

Ohio Rev. Code § 2731.01 ................................................................................................3

Ohio Rev. Code § 2741.07 ................................................................................................4

S.D. Codified Laws § 21-64 .........................................................................................3, 4

R.C. § 2741 ............................................................................................................. *passim*

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
    Law360 (Aug. 28, 2018), https://www.law360.com/articles/1076447/illinois-
    powerhouse-edelson-pc.................................................................................... 24

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
    Law360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-
    Powerhouse-Edelson-PC.pdf ......................................................................... 24

Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*,
    Law360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-
    of-the-year-edelson ......................................................................................23

Joyce Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*,
    Law360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-
    privacy-group-of-the-year-edelson ...........................................................23, 24

Lauraann Wood, *Illinois Powerhouse: Edelson*,
    Law360 (Sept. 3, 2019), https://www.law360.com/articles/1193728/illinois-powerhouse-
    edelson .............................................................................................................. 24

*Law360 Names Practice Groups of the Year*,
    Law360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-
    practice-groups-of-the-year.................................................................................23

I.       **INTRODUCTION**

After years of highly contentious litigation across the country and months of hard-fought

negotiations following mediation, Plaintiffs have joined together in this litigation to seek the

Court's preliminary approval of a proposed Class Action Settlement Agreement.[1] If approved,

the Settlement would resolve claims under the laws of seven states that Defendants used

individuals' identities without their permission to drive business to Defendants' Websites. The

Settlement proposes to provide significant financial and non-financial relief to Settlement

Payment Class Members and Multistate Injunction Settlement Class Members (collectively, the

"Settlement Classes") and will end, on a global basis, the myriad cases that have been

proceeding against Defendants around the country related to the Websites.

All of these claims are based on the contention that Defendants' people-search websites

used the identities of Settlement Class Members without first obtaining their consent, thereby

violating the right of publicity laws in: Alabama, California, Illinois, Indiana, Nevada, Ohio, and

South Dakota. Under the Settlement's terms, Defendants have agreed to provide substantial relief

to individuals in each of these states. For those whose name was searched and resulted in the

purchase of a subscription to Defendants' products, Defendants have agreed to create seven

separate non-reversionary State-Specific Settlement Funds corresponding with each state's

Settlement Payment Class and collectively totaling $10,102,897. Each Fund's amount is based

on a percentage of the available statutory damages under each state's right of publicity law. Each

Settlement Payment Class Member who submits an Approved Claim will be entitled to a *pro*

*rata* share of their respective State-Specific Settlement Fund. Based on a claims rate of 15–25%

---

[1]       Capitalized terms used in this motion are defined in the Class Action Settlement
Agreement (the "Settlement" or "Settlement Agreement"), attached as Exhibit 1.

Settlement Payment Class Members are reasonably expected to receive settlement payment amounts as follows: Alabama, $577 to $960; California, $82 to $137; Illinois, $635 to $1,058; Indiana, $111 to $185; Nevada, $82 to $137; Ohio, $286 to $477; and South Dakota, $107 to $178. Against a backdrop of privacy settlements that provide little to no money to plaintiffs—*see In re Google LLC Street View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 891-94 (N.D. Cal. 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act)—the relief secured here is exceptional. This is true even compared against recent right of publicity settlements finally approved in this District. *See Butler v. Whitepages, Inc.*, No. 19-cv-04871, dkt. 277 (N.D. Ill., Sept. 29, 2022) (finally approving settlement providing $95 to each Illinois Right of Publicity Act claimant and $380 to each Ohio Right of Publicity Act claimant).

For individuals whose identities are in Defendants' SEO Directory, but whose display did not result in a subscription purchase, Defendants have agreed to the creation of Multistate Injunction Settlement Classes. Defendants will stop displaying these individuals' names on any page on their websites that includes a subscription offer to Defendants' products or services, putting a stop to the conduct that led to the lawsuits. Importantly, any Multistate Injunction Settlement Class Members who are not Settlement Payment Class Members will receive these benefits without releasing Defendants from monetary damages claims relating to any alleged use of their identities.

In light of this relief, as well as other considerations discussed below, the proposed Settlement Agreement more than satisfies the requirements for preliminary approval under Rule 23. Accordingly, Plaintiffs respectfully requests that this Court preliminarily approve the proposed Settlement Agreement, certify the proposed Settlement Classes for settlement purposes,

appoint Plaintiffs' attorneys as Class Counsel, direct that notice be provided to Settlement

Payment Class Members, and schedule a Final Approval Hearing.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Relevant Right of Publicity Statutes.

Alabama, California, Illinois, Indiana, Nevada, Ohio, and South Dakota have each passed

a statutory scheme effectively codifying common law restrictions on the use of a person's right

to control their identity. Specifically, these statutes prohibit the use of an individual's identity for

a commercial purpose without first obtaining his or her prior consent. *See* Ala. Code § 6-5-770,

*et seq.* (the "ARPA"); Cal. Civ. Code § 3344, *et seq.* (the "CRPS"); 765 ILCS 1075/1, *et seq.*

(the "IRPA"); Ind. Code § 32-36-1, *et seq.* ("InRPA"); Nev. Rev. Stat. § 597.790 (the "NRPS");

Ohio Rev. Code § 2731.01, *et seq.* (the "ORPA"); S.D. Codified Laws § 21-64, *et seq.* (the

"SDRPS"). An "identity" includes attributes or indicia that serve to identify an individual to a

reasonable person, and can include a name, photograph, likeness, or voice. Ala. Code § 6-5-

771(1); Cal. Civ. Code § 3344(a); 765 ILCS 1075/5; Ind. Code Ann. § 32-36-1-6; Nev. Rev.

Stat. Ann. § 597.790(1); Ohio Rev. Code Ann. §§ 2741.01(A), (C); S.D. Codified Laws § 21-64-

1(2). An identity is used in commerce when it is used in or on advertisements or to promote a

good or service. Ala. Code § 6-5-772(a); Cal. Civ. Code § 3344(a); 765 ILCS 1075/5; Ind. Code

Ann. § 32-36-1-2; Nev. Rev. Stat. Ann. § 597.770(1); Ohio Rev. Code Ann. § 2741.01(B); S.D.

Codified Laws § 21-64-1(1). Each statute includes a private right of action that allow individuals

whose identities were used without their permission to recover statutory damages in particular

amounts; actual out-of-pocket damages are not required to recover these statutory damages. Ala.

Code §§ 6-5-772(a), 6-5-774(1)(a) (providing $5,000 in statutory damages); Cal. Civ. Code §

3344(a) (providing for $750 in statutory damages); 765 ILCS 1075/40 (providing for $1,000 in

statutory damages); Ind. Code Ann. § 32-36-1-10(1)(a) (providing for $1,000 in statutory damages); Nev. Rev. Stat. Ann. § 597.810(1)(b)(1) (providing for $750 in statutory damages); Ohio Rev. Code Ann. § 2741.07(A)(1)(b) (providing for $2,500 in statutory damages); S.D. Codified Laws § 21-64-5(2) (providing for $1,000 in statutory damages).

### B. Plaintiffs' Allegations.

Beginning with this instant action in 2019, Plaintiffs began filing lawsuits around the country on behalf of state-specific classes asserting violation of particular states' right of publicity laws. *Fissinger-Figueroa v. PeopleConnect, Inc*., No. l:22-cv-04184 (N.D. Ill.) (asserting IRPA claims on behalf of Illinois class); *Ramirez v. The Control Group Media Co., LLC*, No. 22-cv-01128 (S.D. Cal.) (asserting CRPS claims on behalf of California class); *Camacho v. PeopleConnect, Inc.*, No. 22-cv-00209 (S.D. Cal.) (asserting CRPS claims on behalf of California class and ARPA claims on behalf of Alabama class); *Backowski v. PeopleConnect, Inc.*, No. 21-cv-00115 (W.D. Wash.) (asserting ORPA claims on behalf of Ohio class); *Camacho v. The Control Group Media Co., LLC*, No. 21-cv-01957 (S.D. Cal.) (asserting CRPS claims on behalf of California class and ARPA claims on behalf of Alabama class); *Camacho v. The Control Group Media Co., LLC*, No. 21-cv-01954 (S.D. Cal.) (asserting CRPS claims on behalf of California class and ARPA claims on behalf of Alabama class); (Dkt. 1-1 (asserting IRPA claims on behalf of Illinois class).) The alleged violations all stem from the same factual premises. Defendants operate several "people search" websites at www.instantcheckmate.com, www.truthfinder.com, www.intelius.com, and www.ussearch.com. (Second Amended Complaint ("SAC"), ¶ 15.) When a user performs a search, Defendants' Websites return a list of matched results that include specific identifying information (such as full name, locations they have lived, and relatives) about the searched person. (*Id.* ¶ 15.)

4

Information from these preliminary search results is then saved in SEO Directories, which Defendants maintain, and can be searched by users of Defendants' Websites. (*Id.* ¶ 17.) These matched results act as "free preview" pages specific that encourage users to obtain more information on the searched-for individual by purchasing "premium" memberships that allow paying users to obtain information beyond what is provided in the free previews. (*Id.* ¶ 18.) Plaintiffs allege that the use of their and others' identities to induce purchases for subscriptions for full access on the Websites without first obtaining their consent violates their respective state's right of publicity law. (*See generally* SAC.) Defendants have denied these allegations.

### C.    Litigation, Negotiation, and Settlement.

Plaintiffs Fischer and Lukis originally filed their complaint against Defendant Instant Checkmate LLC in the Circuit Court of Cook County, Illinois. Instant Checkmate LLC ("Instant Checkmate") removed the case to this Court and moved to dismiss the action. After the matter was briefed, the Court (then through Judge Feinerman) denied Instant Checkmate's motion and allowed Plaintiffs' claims to proceed. (Dkt. 36.) Instant Checkmate then moved for (i) reconsideration of the Court's denial of the motion to dismiss, (dkt. 43); leave to appeal pursuant to 28 U.S.C. § 1292(b), (dkts. 44–45); and (iii) summary judgment, (dkts. 39–41). After additional briefing, the Court denied these motions in their entirety. (Dkts. 88–89.)

Along with this significant motion practice related to the pleadings, the Parties conducted significant discovery. Fischer and Lukis issued written discovery, to which Instant Checkmate responded with thousands of pages of documents. (Declaration of Phillip L. Fraietta ("Fraietta Decl."), attached as Exhibit 2, ¶ 4.) Instant Checkmate issued its own written discovery to Fischer and Lukis, which they also answered. (*Id.*) As written discovery progressed, Plaintiffs and Instant Checkmate took depositions of relevant witnesses. (*Id.*) Specifically, Plaintiffs took

multiple depositions of key personnel in connection with the operation of the at-issue website, the data that Instant Checkmate maintained, and the display of individuals' information. (*Id.*) From this discovery, Plaintiffs were able to obtain key information such as the size of the directory that Instant Checkmate maintained, and the profile views and purchase metrics that it tracked. (*Id.*)

With discovery complete in *Fischer*, Fischer and Lukis moved for class certification, which Instant Checkmate opposed. The Court ultimately certified two classes: (i) the "*SEO Directory Class*" defined as "All Illinois residents who were listed in Instant Checkmate's SEO Directory on or since June 21, 2019 … and continuing to March 31, 2022 … where such listing included that person's name, age, location(s), and relative(s), excluding anyone who has incurred actual damages as defined in IRPA," (dkt. 193 at 31-32); and (ii) the "*Injunctive Relief Class*" defined as "All Illinois residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of www.instantcheckmate.com," (*id.* at 32). Instant Checkmate petitioned the Seventh Circuit for interlocutory review of the class certification order under Rule 23(f), which Fischer and Lukis opposed, and the Seventh Circuit denied. *In re Instant Checkmate LLC*, No. 22-8005 (7th Cir. May 13, 2022). Fischer and Lukis thereafter litigated the appropriate method of class notice with Instant Checkmate, each submitted their competing proposals. (Dkts. 203, 208.) The Court adopted Fischer and Lukis' plan as to the Rule 23(b)(3) class and sustained Instant Checkmate's objections for the requirement of individual notice as to the Rule 23(b)(2) class, and appointed Simpluris as notice administrator. (Dkt. 214.)

Interspersed with the litigation and discovery efforts in *Fischer* described above, other Plaintiffs began filing their respective cases elsewhere in the country. In several of these actions,

Plaintiffs defeated Defendants' motions to dismiss or to compel arbitration, *Camacho*, 22-cv-00209, dkt. 24 (S.D. Cal. July 18, 2022) (denying Defendants' motion to dismiss); *Camacho*, 21-cv-01954, dkt. 32 (S.D. Cal. July 18, 2022) (same); *Camacho*, 21-cv-01957, dkt. 31 (S.D. Cal. July 18, 2022) (same), or otherwise began the discovery into the arbitrability of the dispute, *Backowski*, dkt. 38 (W.D. Wash. July 11, 2022) (ordering arbitration-related discovery).

Having successfully certified two classes in *Fischer*, Fischer, Lukis, and Instant Checkmate began exploring the possibility of settling the *Fischer* action in 2022. (Fraietta Decl. ¶ 6.) To facilitate these discussions, they agreed to seek the assistance of a third-party neutral, the Hon. Sidney Schenkier (ret.) of JAMS Chicago. (*Id.*) Fisher and Lukis and Instant Checkmate each submitted a mediation statement setting out their respective positions and views on settling the case. (*Id.*) After exchanging these mediation briefs, they attended a full-day, in-person mediation on October 27, 2022, which involved multiple rounds of back-and-forth negotiations. (*Id.*) While these discussions were productive, no resolution was reached at day's end. (*Id.*) Nevertheless, Fischer and Lukis and Instant Checkmate agreed to attend a follow-up mediation with Judge Schenkier on December 6, 2022. (*Id.* ¶ 7.) That mediation also failed to result in a negotiated resolution. (*Id.*) Once again, though, the Parties agreed to continue their settlement discussions, which they did over the ensuing months. (*Id.*) These negotiations continued both between the Parties and with the assistance of Judge Schenkier through multiple teleconferences. (*Id.*)

While the original settlement discussions centered on the *Fischer* action and providing monetary relief to the certified classes, Fischer and Lukis obtained information regarding Instant Checkmate's finances. (*Id.* ¶ 8.) The financial data that Instant Checkmate provided demonstrated that obtaining complete monetary relief to the certified class—which included

essentially every Illinois resident—was not viable whether in settlement or in litigation. (*Id.*) Facing this limitation, proposed Class Counsel turned to negotiating a resolution that would provide significant relief to as many of the most harmed individuals as possible while avoiding an outcome that would preclude any recovery whatsoever. (*Id.*)

To that end—and understanding that ICM's sibling companies Truthfinder and Intelius and former owner of some of the Websites, PeopleConnect, Inc., were also facing suits and interested in a potential resolution—the scope of the settlement negotiations expanded. (*Id.* ¶ 9.) Defendants provided additional information into the size of potential settlement classes from other states, including in connection with the Additional Litigation. (*Id.*) Plaintiffs' counsel issued non-contingent settlement proposals for states with viable right of publicity claims, including Alabama, California, Illinois, Indiana, Nevada, Ohio, and South Dakota. (*Id.* ¶ 10.) The demands represented static percentages of the statutory damages available under each state's right of publicity law. (*Id.*) Defendants could reject or accept any of these proposals on an individual basis. (*Id.*) The Parties then engaged in weeks of additional back-and-forth negotiations attempting to agree on the appropriate percentages of damages, and the resulting size of the State-Specific Settlement Funds. (*Id.*)

As these negotiations continued, Instant Checkmate moved to decertify the SEO Directory Class in the *Fischer* action on March 27, 2023, citing supposed factual and legal developments since the class was certified. (Dkts. 243-246.) Fischer and Lukis requested an extension to their responsive briefing schedule in order to oppose this request. (Dkt. 248.) While this briefing period remained open, the Parties concluded their negotiations and ultimately reached a binding memorandum of understanding that contained the material points of a settlement would resolve all litigation regarding the Websites pending against Defendants.

(Fraietta Decl. ¶ 12.)

The Parties spent the next few months finalizing the fulsome written settlement agreement detailing all terms of the global settlement. (*Id.* ¶ 11.) This included an agreement to seek modification of the SEO Directory Class in the *Fischer* action to align with the Illinois Injunction Settlement Class. (*Id.*) And, contemporaneously with filing this motion, Plaintiffs have sought leave to file an amended complaint that will effectively bring all litigation against Defendants related to the Websites before this Court, allowing the approval proceedings to efficiently proceed before one Court overseeing the longest-pending action.

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth fully in the Class Action Settlement Agreement and are briefly summarized here.

### A.      Class Definitions.

The Settlement proposes the certification of the following Multistate Inunction Classes:

**Alabama Injunction Settlement Class:** all Alabama residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (Settlement § 1.3.)

**California Injunction Settlement Class:** all California residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.* § 1.9.)

**Illinois Injunction Settlement Class:** all Illinois residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.* § 1.27.)

**Indiana Injunction Settlement Class:** all Indiana residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.* § 1.32.)

**Nevada Injunction Settlement Class:** all Nevada residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.* § 1.39.)

**Ohio Injunction Settlement Class:** all Ohio residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.* § 1.47.)

**South Dakota Injunction Settlement Class:** all South Dakota residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.* § 1.62.)

Excluded from each respective Multistate Injunction Settlement Class are: (1) any Judge or Magistrate presiding over this Action and members of their families, and (2) Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest. (*Id.* §§ 1.3, 1.9, 1.27, 1.32, 1.39, 1.47, 1.62.)

The proposed Illinois Injunction Settlement Class overlaps entirely with the SEO Directory class that the Court previously certified. (*Compare* Settlement § 1.27 *with* dkt. 193 at 32.) In order to effectuate the global Settlement, Plaintiffs Fischer and Lukis request that the definition of the SEO Directory Class be modified pursuant to Rule 23(c)(1)(C) to align with the proposed Illinois Injunction Settlement Class definition. (Settlement § 1.27.)

The Settlement proposes the certification of the following Settlement Payment Classes:

**Alabama Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after August 11, 2019, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an Alabama address per the Defendants' records. (*Id.* § 1.5.)

**California Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate,

Truthfinder, Intelius, or U.S. Search on or after August 11, 2019, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed a California address per the Defendants' records. (*Id.* § 1.11.)

**Illinois Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or US Search on or after June 21, 2018, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation or for whom a report was purchased after a follow-up e-mail was sent, that displayed an Illinois address per the Defendants' records. (*Id.* § 1.29.)

**Indiana Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after December 6, 2020, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an Indiana address per the Defendants' records. (*Id.* § 1.34.)

**Nevada Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after December 6, 2018, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed a Nevada address per the Defendants' records. (*Id.* § 1.41.)

**Ohio Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after January 29, 2017, through the date of preliminary approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an Ohio address per the Defendants' records. (*Id.* § 1.49.)

**South Dakota Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after December 6, 2019, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an South Dakota address per the Defendants' records. (*Id.* § 1.64.)

Excluded from each respective Settlement Payment Class are: (1) any Judge or

Magistrate presiding over this Action and members of their families, (2) Defendants,

Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which

Defendants or their parents have a controlling interest, (3) persons who properly execute and file a timely request for exclusion from any respective Settlement Payment Class, and (4) the legal representatives, successors, or assigns of any such excluded persons. (*Id.* §§ 1.5, 1.11, 1.29, 1.34, 1.41, 1.49, 1.64.) The Settlement provides that Defendants may elect to terminate the Settlement if more than five percent (5%) of the Settlement Class Members choose to opt out of the Settlement. (*Id.* § 6.2.) The start date for membership in each Settlement Payment Class is tailored to align with the statute of limitations period for each state's right of publicity statute.

### B. Monetary Relief.

Pursuant to the Settlement, Defendants will establish non-reversionary State-Specific Settlement Funds for each of the Settlement Payment Classes in the following amounts: Alabama, $877,500; California, $1,003,556; Illinois, $6,245,148; Indiana, $106,695; Nevada, $119,205; Ohio, $1,727,888; and South Dakota, $22,905. (*Id.* §§ 1.7, 1.13, 1.31, 1.36, 1.43, 1.51, 1.66.) Settlement Payment Class Members will be entitled to submit claims from their respective State-Specific Settlement Funds. (*Id.* § 1.60.) All Settlement Class Members that submit an Approved Claim will be entitled to a *pro rata* portion of their respective State-Specific Settlement Fund after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive award, if approved by the Court. (*Id.* § 2.1(a).) Assuming a 15-25% claims rate, proposed Class Counsel estimate that each respective Settlement Payment Class Member with an Approved Claim will receive a net payment as follows: Alabama, $577 to $960; California, $82 to $137; Illinois, $635 to $1,058; Indiana, $111 to $185; Nevada, $82 to $137; Ohio, $286 to $477; and South Dakota, $107 to $178. (*Id.* § at Ex. B.)

Any uncashed checks or electronic payments unable to be processed within 180 days of issuance shall revert to their respective State-Specific Settlement Funds, to be distributed *pro*

*rata* to claiming Settlement Payment Class Members from that State-Specific Settlement Fund, if practicable, or in a manner otherwise directed by the Court upon application made by Class Counsel. (*Id.* § 2.1(e).) No portion of any State-Specific Settlement Fund will revert to Defendants should the settlement be approved. (*Id.* §§ 1.7, 1.13, 1.31, 1.36, 1.43, 1.51, 1.66.)

### C. Prospective Relief.

Defendants agree not to display the name of any Settlement Payment Class or Multistate Injunction Settlement Class Member whose address, according to Defendants' SEO Directory, remains in Alabama, California, Illinois, Indiana, Nevada, Ohio, or South Dakota on any page of the Instant Checkmate, Intelius, Truthfinder, and U.S. Search websites that includes a subscription offer to Defendants' products or services. (*Id.* § 2.3(a).) Defendants will implement this change within thirty (30) days of the entry of a Final Approval Order. (*Id.* § 2.3(b).)

### D. Payment of Settlement Notice and Administrative Costs.

All Notice and Settlement Administration shall be paid from the respective State-Specific Settlement Funds on a proportional basis. (*Id.* §§ 1.7, 1.13, 1.31, 1.36, 1.43, 1.51, 1.66.) This includes all expenses incurred by the Settlement Administrator in, or relating to, administering the Settlement, providing Notice to the Settlement Payment Classes, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing settlement payments, and any other related expenses. (*Id.*) Expenses incurred equally by each of the Settlement Classes shall be paid equally from the State-Specific Settlement Funds, but expenses incurred by one particular fund will be paid from that fund alone. (*Id.* § 1.57.) The Parties agree that no notice needs to be disseminated to the Multistate Injunction Settlement Classes in light of the significant costs to do so. (*Id.* § 4.3; *see also* dkt. 214 (ordering that notice to the certified Rule 23(b)(2) class need not be provided).)

**E.    Payment of Attorneys' Fees, Costs, and Incentive Awards.**

Defendants have agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. (*Id.* § 8.1.) Proposed Class Counsel has agreed to limit its request for fees to 35% of each of the respective State-Specific Settlement Funds, with no consideration from Defendants. Defendants may also challenge the amount requested. (*Id.*) Defendants have also agreed to pay Plaintiffs incentive awards in the following amounts, subject to Court approval, from their respective State-Specific Settlement Fund in recognition of their efforts as Class Representatives: Alabama, $5,000; California, $750; Illinois, $10,000 to the Illinois Injunction Settlement Class Representatives Fischer and Lukis, and $1,000 to each of the Illinois Injunction Settlement Class Representative Fissinger-Figueroa and the Illinois Settlement Payment Class Representative Carvalho; Indiana, $1,000; Nevada, $750; Ohio, $2,500; South Dakota, $1,000. (*Id.* § 8.3.) Plaintiffs will move for these payments via a separate request after preliminary approval and prior to the deadline to object.

**F.    Release of Liability.**

In exchange for the relief described above, each Settlement Payment Class Member will release Defendants and certain related entities from all claims arising from or related to the alleged use of a person's name, age, contact information, former residence locations, list of possible relatives, likeness, photograph, image, or other identifying information to advertise, promote, or in connection with an offer for sale of any products or services on Defendants' websites. (*Id.* § 3.1.) To be clear, members of the Multistate Injunction Settlement Classes who are not members of the Settlement Payment Classes (i.e., individuals who are not eligible to receive a payment under the Settlement) are not releasing any claims against Defendants. (*Id.* § 1.56.)

14

## IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT PAYMENT CLASSES

Approval of a class action settlement proceeds in three stages. First, the parties present a proposed settlement to the court for preliminary approval. Second, if the court preliminarily approves the settlement, notice of the proposed settlement is sent to the class, and class members are given an opportunity to object or opt out of the settlement. Third, after holding a final fairness hearing, the court decides whether to give final approval to the settlement. *See* Fed. R. Civ. P. 23(e); 4 NEWBERG ON CLASS ACTIONS § 13:1 (6th ed.).

At the first stage, preliminary approval, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, both elements are satisfied.

### A. The Settlement Classes Can Be Certified.

Taking the second prong first, this Court will be able to certify the Settlement Classes for purposes of entering the final judgment. District courts have broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). To merit certification, each of the Settlement Payment Classes and Multistate Injunction Settlement Classes must satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, for the Settlement Payment Classes that are sought to be certified pursuant to Rule 23(b)(3), (i) common questions of law or fact must predominate over individual issues, and (ii) a class action must be the superior device to resolve the claims. *Id.* As for the Multistate Injunction Settlement Classes, for which certification is sought under Rule 23(b)(2), they must demonstrate that the Defendants acted "on grounds that apply generally to

15

the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, Rule 23 contains an implicit "ascertainability" requirement "that classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed classes satisfy all relevant Rule 23(a), (b)(2), and (b)(3) prerequisites, as well as Rule 23's implicit ascertainability requirement.

### 1. The Settlement Classes Are Sufficiently Numerous.

A class may be maintained if it "is so numerous that joinder of all members is impractical." Fed R. Civ. P. 23(a)(1). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is satisfied when the class comprises forty (40) or more people. *See, e.g., id.* (certifying class of 120 members). Here, each of the Settlement Payment Classes contain hundreds or thousands of Members: Alabama, 3,900, (Settlement § 1.5); California, 29,735, (*id.* § 1.11); Illinois, 25,284, (*id.* § 1.29); Indiana, 2,371, (*id.* § 1.34); Nevada, 3,532, (*id.* § 1.41); Ohio, 15,359, (*id.* § 1.49); South Dakota, 509, (*id.* § 1.64). Likewise, each of the Multistate Injunction Settlement Classes includes tens of thousands of more individuals whose information Defendants have obtained and maintained in connection with their Websites stretching back years. This essentially includes most residents of each of the relevant states, as exemplified by the size of the original SEO Directory Class. As such, the numerosity requirement is readily satisfied.

### 2. Common Issues of Fact and Law Predominate.

Rule 23(a)(2)'s commonality requirement—that "there are questions of law or fact common to the class"—and Rule 23(b)(3)'s predominance requirement, relevant to the Settlement Payment Classes here—that such questions "predominate over any questions affecting only individual members"—are closely related and often analyzed together. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately"); *Cates v. Whirlpool Corp.*, No. 15-cv-5980, 2017 WL 1862640, at *18 (N.D. Ill. May 9, 2017).

Common questions are those that are "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Bell*, 800 F.3d at 374 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotations omitted). As such, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal quotations omitted). "Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff, . . . no common answers are likely to be found." *Id.* But where "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," commonality exists. *Id.*

Predominance, in turn, "builds on commonality." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 607 (7th Cir. 2021). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453

(2016) (quotations omitted). Predominance is satisfied "when common questions represent a significant aspect of [the] case and can be resolved for all members of [the] class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (cleaned up). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018).

Here, common issues of law and fact exist with respect to the Multistate Injunction Settlement Classes and Settlement Payment Classes and predominate with respect to the Settlement Payment Classes. "That analysis, 'begins, of course, with the elements of the underlying cause of action.'" *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479, at *7 (N.D. Ill. Mar. 31, 2022) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). As highlighted in Section II(A), *supra*, the substantive elements of each relevant state's right of publicity statute are overwhelmingly similar. *See Camacho v. Control Grp. Media Co., LLC*, No. 21-cv-1954-MMA (MDD), 2022 WL 3093306, at *30 (S.D. Cal. July 18, 2022) (noting in ARPA and CRPA case that the Parties "d[id] not provide any different analysis [under the two statutes], nor do they distinguish the statutes," and "it appears that the parties agree the statutes are not notably distinguishable at this stage of the case"); *In re Hearst Communications State Right of Publicity Statute Cases*, 632 F. Supp. 3d 616, 620 (S.D.N.Y. 2022) (conducting joint assessment of, among other states, Alabama, California, Indiana, Nevada, Ohio, and South Dakota right of publicity claims). The IRPA provides a representative example: "(1) the appropriation of one's identity, (2) without one's consent, (3) for another's commercial benefit." *Fischer*, 2022 WL 971479, at *7 (quoting *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019)); *Camacho*, 2022 WL 3093306, at *23, *30 (similar

regarding ARPA and CRPA claims). As this Court has already recognized when previously granting class certification in connection with this matter, "[a]t least the first and third elements present common questions," and "those common questions predominate over any remaining individual questions." *Id.*; *see also Butler*, dkt. 261 at 2; dkt. 277 at 2 (preliminarily and finally certifying classes asserting IRPA and ORPA claims). The consent element is also readily susceptible to class-wide proof. *See, e.g.*, *Fischer*, 2022 WL 971479, at *9 (recognizing Instant Checkmate's admission that the website's terms of use were the only method by which it purported to obtain consent, noting the question of consent "could be mechanically resolved by consulting Instant Checkmate's records").

These conclusions flow naturally from the fact that all Multistate Injunction Settlement Class Members and Settlement Payment Class Members make the same contention arising out of the same alleged course of conduct: Defendants violated each state's right of publicity laws by using their names and other identifying characteristics on its website to sell paid subscriptions without first obtaining their consent. "Whether [Defendants'] use and display of putative class members' attributes appropriates their identities for its own commercial benefit turns on how the company uses and displays its search results…, not any circumstances particular to a class member." *Fischer*, 2022 WL 971479, at *7. "Resolution of those elements will turn on common proof regarding [Defendants'] website and business practices." *Id.* In other words, "a reasonable jury could find, as a categorical matter, that a search result displaying a name [and other identifying characteristics] 'serves to identify that individual to an ordinary, reasonable viewer'" for purposes of the right of publicity statutes, and that Defendants designed the Website to do so in order to drive sales of access to its subscription service, all without obtaining the requisite consent. *Id.* at *8 (quoting 765 ILCS 1075/5).

19

Apart from these common and predominating liability questions, the claims also raise a host of additional common issues pertaining to Defendants' defenses. This includes whether Defendants' use of names and other information on its website falls under any relevant statutory exemptions, or whether the First Amendment or §230 of the Communication Decency Act protects Defendants' use of this information. Determining the validity of these defenses will rely on common proof of Defendants' conduct and on resolution of broad legal questions applicable to all Settlement Classes, not on circumstances unique to any individual. Because Defendants used Plaintiffs' and Settlement Class Members' information in the exact same way, whether the Plaintiffs can prove their case or whether any of the Defendants' defenses apply will determine the validity of *every* Settlement Class Members' claim in a single stroke. *See Fischer*, 2022 WL 971479, at *8–9 (citing *Tyson Foods, Inc.*, 577 U.S. at 453). And because answering each of these questions would resolve all Settlement Payment Class Members' claims in one stroke, and no individualized issues (to the extent there are any) could defeat this overwhelming commonality, predominance is also satisfied with respect to the Settlement Payment Classes. *See Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *9 (N.D. Ill. Aug. 1, 2018) (recognizing predominance satisfied when "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating individual issues") (internal quotations omitted).

### 3. Plaintiffs' Claims Are Typical of the Settlement Classes They Seek to Represent.

The next certification prerequisite—typicality—requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the

20

named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). "As a general matter, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard*, 989 F.3d at 605 (internal quotations omitted). In other words, when the basis of the suit is the Defendants' systematic business practices toward the named Plaintiffs and the members of the Settlement Classes, typicality is generally satisfied. *See Fischer*, 2022 WL 971479, at *7 ("[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions.") (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011)).

Here, there is nothing separating the claims of each Class Representative from the respective Settlement Payment Class and/or Multistate Injunction Settlement Class that they seek to represent. Plaintiffs assert that Defendants violated the relevant right of publicity laws by using the Class Representatives' names and other identifying information on the Website to solicit the purchase of paid subscriptions without their consent—precisely the violative conduct Defendants are alleged to have carried out with respect to every one of their fellow Class Members. For the Multistate Injunction Settlement Class Representatives, each of them had their information stored in Defendants' SEO Directories, just like all other Multistate Injunction Settlement Class Members, for which they are seeking the same injunctive relief. For each Settlement Payment Class Representative, they had their profiles searched for in connection with a Website visit that resulted in a subscription purchase, just like the other Settlement Payment Class Members, for which they stand to receive proportionally the same monetary compensation under the Settlement. Because Plaintiffs' claims arise from the same course of conduct and are based on the same legal theory as the claims of all other Settlement Class Members—that is, the

claims "have the same essential characteristics," *Howard*, 989 F.3d at 605—typicality is satisfied. *Fischer*, 2022 WL 971479, at *7.

### 4. The Adequacy Requirement Is Satisfied.

The final Rule 23(a) prerequisite—adequacy—requires a finding that the Class Representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement comprises two parts: (1) adequacy of the named plaintiff as representative of the proposed class's myriad members, and (2) adequacy of the proposed class counsel. *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 742 (N.D. Ill. 2021) (citing *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011)). Here, Plaintiffs and proposed Class Counsel are more than adequate.

To be an adequate representative, "the named Plaintiffs must not have 'antagonistic or conflicting claims.'" *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)). Plaintiffs have no such antagonism toward or conflict with the class, as their claims and interests in this litigation are completely aligned with those of the Multistate Inunction Settlement Class and Settlement Payment Class Members that they seek to represent. (*See* § IV(A)(2)–(3), *supra*.) Where "the claims of the named Plaintiffs are essentially identical to those of the proposed class members," and "[t]here are no individual defenses or other claims that would in any way impede the named Plaintiffs' ability to adequately represent the interest of the class members," the named Plaintiff is an adequate class representative. *Starr*, 75 F. Supp. 3d at 874; *Fischer*, 2022 WL 971479, at *7 (rejecting claim that any idiosyncratic differences precluded adequacy finding).

Likewise, each of the law firms proposed as Class Counsel satisfy the adequacy

requirement, as this Court has already recognized. *Fischer*, 2022 WL 971479, at *15. Besides this case, proposed Class Counsel has also been appointed as class counsel in other right of publicity litigation. *Krause v. Rocketreach*, No. 21-cv-01938, dkt. 87 at 3 (N.D. Ill. Apr. 11, 2023); *Butler*, dkt. 261 at 3; *see also Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04-cv-7625, 2005 WL 2171168, at *5 (N.D. Ill. Aug. 30, 2005) ("That counsel has been found adequate in other cases is persuasive[.]").

Proposed Class Counsel Edelson PC has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Edelson PC is a national leader in high stakes plaintiffs' work ranging from class and mass actions to public client investigations and prosecutions. (*See* Firm Resume of Edelson PC, attached as Exhibit 3-A to the Declaration of Michael Ovca ("Ovca Decl."), attached as Exhibit 3.) For example, the firm reached a $450 million settlement resolving consumer protection claims against providers of social casino-style games, *Benson, et al. v. DoubleDown Interactive, LLC., et al.*, No. 2:18-cv-00525, dkt. 549 (W.D. Wash. June 1, 2023) and secured a $73 million trial verdict against an Oregon power company on behalf of residents whose properties were burned as a result of a wildfire allegedly worsened by the company's negligence, *James, et al. v. PacifiCorp, et al.*, 20CV33885 (4th Dist. Oregon). In short, the firm has litigated, tried, and settled numerous high-profile class action cases involving statutes much like the right of publicity laws at issue here. (Ovca Decl. ¶ 2.) The firm was recognized by Law360 as a "Practice Group of the Year" for 2020 in two categories— Class Action and Cybersecurity[2]—and for three years running as an "Illinois Powerhouse,"

---

[2]     *Law360 Names Practice Groups of the Year*, Law360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-practice-groups-of-the-year; Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*, Law360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-of-the-year-edelson; Joyce

alongside Kirkland & Ellis, Sidley Austin, Mayer Brown, Dentons, and Jenner & Block.[3] Edelson has been the only plaintiffs' firm, as well the only firm with fewer than 100 attorneys, to make the latter list. Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Ovca Decl. ¶ 3.)

By the same token, proposed Class Counsel Bursor & Fisher, P.A. has extensive experience litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Bursor & Fisher, P.A., attached as Exhibit 2-A to the Fraietta Decl.) "The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in [six] class action jury trials since 2008." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014). In 2019, the firm won its sixth jury verdict in *Perez v. Rash Curtis & Associates*, No. 4:16-cv-03396-YGR (N.D. Cal.), a TCPA case, for $267 million. The *Perez* case ultimately settled for $75.6 million. *See Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021). The firm has also litigated, tried, and settled numerous high-profile class action cases involving statutes like those involved here. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) (granting named plaintiff's motion for summary judgment in PPPA case ultimately resulting in $50 million settlement). Bursor & Fisher has diligently investigated, prosecuted, and

---

Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*, LAW360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-privacy-group-of-the-year-edelson.

[3]    Lauraann Wood, *Illinois Powerhouse: Edelson*, LAW360 (Sept. 3, 2019), https://www.law360.com/articles/1193728/illinois-powerhouse-edelson; Diana Novak Jones, *Illinois Powerhouse: Edelson PC*, LAW360 (Aug. 28, 2018), https://www.law360.com/articles/1076447/illinois-powerhouse-edelson-pc; Diana Novak Jones, *Illinois Powerhouse: Edelson PC*, LAW360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-Powerhouse-Edelson-PC.pdf.

dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Fraietta Decl. ¶ 12.)

Next, proposed Class Counsel from Beaumont Costales LLC likewise meet the adequacy requirement. (*See* Declaration of Attorney Roberto Luis Costales ("Costales Decl."), attached as Exhibit 4. As the record of this matter itself demonstrates, Beaumont Costales has proven a zealous and capable advocate in the class action arena. Beaumont Costales' hard work and diligence in this case is consistent with the firm's continued track record of fighting for the rights of class members in state and federal courts across the country, securing more than forty million dollars for class members under the Fair Labor Standards Act, the Illinois Biometric Information Privacy Act, and the Telephone Consumer Protection Act. (Costales Decl. ¶¶ 4-5). Beaumont Costales LLC has diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency.

Finally, proposed Class Counsel from East End Trial Group satisfies the adequacy element. Attorneys Kevin Tucker and Kevin Abramowicz launched East End Trial Group in March 2020. Before that, they made substantial contributions to privacy-related class cases at their prior firm. *See, e.g.*, *In Re: Vizio, Inc. Consumer Privacy Litig.*, No. 8:16-ml-02693, ECF No. 308-11 (C.D. Cal. Apr. 12, 2019) (showing attorney Tucker's work in this MDL in which Vizio agreed to change its data-collection practices and establish a settlement fund worth $17 million, effectively disgorging the value Vizio received from sharing class members' private information); *Friske v. Bonnier Corp.*, No. 16-cv-12799, ECF No. 76-1, p. 2 (E.D. Mich.) (showing attorney Abramowicz's work in a class action alleging violations of Michigan's Video Rental Privacy Act). In just three years since launch East End Trial Group, attorneys Tucker and Abramowicz have been appointed class counsel in ten different cases representing nationwide

25

and state-specific classes of consumers. *See, e.g.*, *Butela v. Midland Credit Mgmt. Inc.*, 341 F.R.D. 581, 598 (W.D. Pa. 2022); and *Howard v. LVNV Funding, LLC*, No. 3:19-cv-00093, 2023 U.S. Dist. LEXIS 52294, at *18-21 (W.D. Pa. Mar. 22, 2023). Proposed Class Counsel from East End Trial Group will diligently prosecute this action throughout its pendency.

Accordingly, because Plaintiffs and Class Counsel will fairly and adequately protect the interests of the Class, the adequacy requirement—like the other Rule 23(a) factors—is satisfied.

### 5. A Class Action Is a Superior Method of Resolving the Controversy with Respect to the Settlement Payment Classes.

The proposed Settlement Payment Classes also satisfy the superiority requirements of Rule 23(b)(3). In addition to the predominance requirement discussed above, Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule sets out four criteria germane to this inquiry, *id.*, but only the first three are relevant when class certification is sought as part of a settlement. *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *3 (N.D. Ill. Aug. 29, 2016) ("In the context of certifying classes for settlement purposes only, the Supreme Court has held that certification must meet the usual requirements of Rule 23(a) and (b), *except for* the manageability prong of Rule 23(b)(3)(D).") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997)). Each are satisfied here. *See Fischer*, 2022 WL 971479, at *13 (recognizing that SEO Directory class met superiority requirements).

The first consideration—"class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A)—weighs in favor of superiority here. Besides the litigants whose cases are consolidated here, there is no other pending litigation against Defendants stemming from the Websites' alleged use of individuals' identities; indeed, "many class members may be unaware of their rights under [their state's right

26

of publicity laws].” *Bernal v. NRA Grp. LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Settlement

Payment Class Members’ interest in individually controlling a separate action is therefore

“minimal.” *Id.* Further, the modest statutory damages amount available under each state’s right

of publicity statutes (ranging from $750 to $5,000) relative to the high costs of retaining

adequate counsel “is unlikely to provide sufficient incentive for individual members to bring

their own claims.” *Fischer*, 2022 WL 971479, at * 13 (quoting *Pawelczak v. Fin. Recovery

Servs., Inc.*, 286 F.R.D. 381, 387 (N.D. Ill. 2012)); *see also Jackson v. Nat’l Action Fin. Servs.,

Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (“A class action is superior where potential damages

may be too insignificant to provide class members with incentive to pursue a claim

individually.”).

The second consideration—“the extent and nature of any litigation concerning the

controversy already begun by or against class members,” Fed. R. Civ. P. 23(b)(3)(B)—is not

applicable here. Outside of this consolidated litigation, there are no other known actions

addressing the conduct alleged regarding the Websites, and this consideration thus “is not a

factor.” *Bernal*, 318 F.R.D. at 76.

The third consideration—“the desirability or understandability of concentrating the

litigation of the claims in [this] forum,” Fed. R. Civ. P. 23(b)(3)(C)—also weighs in favor of

superiority. As the Court overseeing the first-filed *Fischer* litigation through class certification,

this is a particularly desirable forum given the Court’s familiarity with the facts and issues of the

underlying IRPA claims—claims that are essentially identical to the claims asserted under the

other relevant states’ right of publicity laws. *Zuniga v. Bernalillo Cnty.*, 319 F.R.D. 640, 682

(D.N.M. 2016) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004) (noting that

Rule 23(b)(3)(C) consideration includes specific district judge’s familiarity with the case,

including whether he or she "has already made several pre-certification preliminary rulings")).

Likewise, the fact that all litigation pending against Defendants regarding its use of free previews

on the Websites is now before this Court "increase[s] the 'desirability . . . of concentrating the

litigation of the claims' . . . in this forum." *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 347 (D.

Mass. 2003) (citing Fed. R. Civ. P. 23(b)(3)(C)).

Resolving the case here also makes sense as a matter of geographical convenience. The

majority of Illinois Settlement Payment Class Members, along with counsel for Plaintiffs and

Defendants, reside here. *See Barnes*, 310 F.R.D. at 562 (third factor met where defendant

conducted business and the events giving rise to plaintiffs' claims occurred within the court's

district); *Ramirez v. GLK Foods, LLC*, No. 12-C-210, 2014 WL 2612065, at *9 (E.D. Wis. June

11, 2014) (events in forum giving rise to lawsuit support concentration in the forum); *Tedesco v.

Mishkin*, 689 F. Supp. 1327, 1337 (S.D.N.Y. 1988) (forum appropriate where "[t]he vast

majority of class members" resided); *Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 347 (D.

Md. 2012) (considering location of attorneys). And while several Plaintiffs' cases were initiated

in other districts, Illinois is nevertheless a centrally located forum for out-of-state Settlement

Payment Class Members who may desire to appear in any proceedings. *See Breeden v.

Benchmark Lending Grp., Inc.*, 229 F.R.D. 623, 631 (N.D. Cal. 2005) ("[S]ince the parties,

evidence, and witnesses are all likely to be located relatively close to this particular forum, this

Court does not perceive any reason why section (b)(3)(C) counsels against certifying the putative

class.").

Furthermore, not only do the relevant criteria expressly laid out in Rule 23(b)(3) support

a finding of superiority, an overall consideration of "both the costs *and benefits* of the class

device" does as well. *Mullins*, 795 F.3d at 663. Consolidating class members' claims in one

proceeding will generate economies of time and expense and promote legal uniformity. In contrast, requiring individual cases "would make no sense," because "[p]arallel litigation for each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery." *Bernal*, 318 F.R.D. at 76

### 6. Injunctive Relief Is Appropriately Entered for the Multistate Injunction Settlement Classes.

Because certification of the Multistate Injunction Settlement Classes is sought under Rule 23(b)(2), Plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see Fischer*, 2022 WL 971479, at *15 (certifying injunctive relief class). This is readily demonstrated in light of Defendants' common course of conduct with respect to each respective Multistate Injunction Settlement Class Member. *See Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000) ("By virtue of its requirement that the plaintiffs seek to redress a common injury properly addressed by a class-wide injunctive or declaratory remedy, Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members."). As discussed above in Section II(B), *supra,* Defendants' Websites each pull their data from data providers and Defendants then store some of the returned information in the SEO Directories that Defendants maintain. Under the Settlement, for any individuals for whom Defendants' can generate a name, age, one or more location(s) in Alabama, California, Illinois, Indiana, Ohio, Nevada, or South Dakota, and relative(s) in Directory or from search results, Defendants will not display that individual's name on any page on their websites that

29

includes a subscription offer to Defendants' products or services. (Settlement § 2.3(a).) Each Multistate Injunction Settlement Class Member is entitled to the same relief based on Defendants' uniform operation of their SEO Directories and Websites. Thus, the requested injunctive relief may be entered with respect to the Multistate Injunction Settlement Classes as a whole. *Fischer*, 2022 WL 971479, at *15 (recognizing that injunction sought by Plaintiffs was appropriate to proposed injunctive class as a whole); *see also Smith v. City of Chicago*, 340 F.R.D. 262, 291 (N.D. Ill. 2021) (finding Rule 23(b)(2) requirement when "plaintiffs seek the same relief for all members—namely, policy changes and monitoring…").

### 7. The Classes Are Ascertainable.

In addition to satisfying the explicit requirements of Rule 23(a), (b)(2), and (b)(3), the proposed Settlement Classes satisfy Rule 23's implicit ascertainability requirement, which requires that the classes "be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Under the 'weak' version of ascertainability employed by the Seventh Circuit, courts worry most about 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class.'" *T.K. through Leshore v. Bytedance Tech. Co., Ltd.*, No. 19-cv-7915, 2022 WL 888943, at *3 (N.D. Ill. Mar. 25, 2022) (quoting *Mullins*, 795 F.3d at 654).

Here, each Multistate Injunction Settlement Class and Settlement Payment Class is objectively defined.[4] With respect to the Multistate Injunction Settlement Classes, membership

---

[4]     The Illinois Settlement Payment Class definition is worded slightly differently than the that of the other Settlement Payment Classes to include individuals whose profiles may have been used in emails resulting in a purchase on Defendants' Websites. (*Compare* Settlement § 1.29 *with* § 1.34.) Specifically, for the Illinois Settlement Payment Class, information is available that allows for the determination of any reports on an Illinois Settlement Payment Class Member that were purchased after a follow-up email was sent to the individual who searched for the

turns on whether Defendants' SEO Directory or search results have an address from the relevant states associated with their entry. (Settlement §§ 1.37, 1.38.) Regarding the Settlement Payment Classes, membership turns on whether a purchase on the Website originated from the individual's profile in the SEO Directory. (*Id.* §§ 1.5, 1.11, 1.29, 1.34, 1.41, 1.49, 1.64.) These definitions are—as required—clear and based on objective criteria determinable from Defendants' SEO Directories. Along with identifying information—names, email addresses, and mailing addresses—of individuals in their SEO Directories, Defendants' records allow for the determination of whether a purchase on the Website originated from the search or selection of an individual's profile in the SEO Directory. Furthermore, while the "weak" version of ascertainability used in this Circuit does not require the actual identification of all class members, *T.K.*, 2022 WL 888943 at *2–3, all Multistate Injunction Settlement Class and Settlement Payment Class Members can be identified through Defendants' records.

### 8. The SEO Directory Class Definition Is Appropriately Modified to Align with the Proposed Illinois Injunction Settlement Class Definition.

Finally, pursuant to Rule 23(c)(1)(C), the Court can modify the previously certified SEO Directory Class definition to comport with the proposed Illinois Injunction Settlement Class definition. Rule 23(c)(1)(C) provides that the Court may "alter[] or amend[]" the order granting certification at any time before final judgment. The Seventh Circuit recognizes that "litigants are free to modify a class via a court-approved settlement agreement." *In re Motorola Secs. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) (collecting cases); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, No. 3:10-CV-00426-WMC, 2014 WL 12725371, at *2 (W.D. Wis. Sept. 17, 2014)

---

Illinois Settlement Payment Class Member. Thus, individuals who had their reports purchased in such a manner are included in the Illinois Settlement Payment Class.

(modifying previously certified class in preliminary approval order to conform with settlement). The proposed revised class definition must comport with all relevant Rule 23 requirements. *See Gates v. City of Chicago*, No. 04 C 2155, 2011 WL 1811187, at *3 (N.D. Ill. May 12, 2011) ("[T]he party seeking modification still bears the burden of showing that the proposed class meets the federally mandated requirements for class certification."). Additionally, the modification must take into account Due Process concerns related to absent class members. *See* Wright and Miller, Alteration or Amendment of Certification, 7AA Fed. Prac. & Proc. Civ. § 1785.4 (3d ed.).

As discussed herein, the Illinois Injunction Settlement Class readily meets the Rule 23 criteria for certification of a Rule 23(b)(2) class. As for Due Process, there are no hurdles here that would preclude modification or warrant specific action to redress. No notice has gone out to the SEO Directory Class that would require a follow-up disclosure addressing the modification or explaining the differences in the classes. Anyone who was in the SEO Directory Class who was searched on a Website and that led to the purchase of a subscription for that Website will be included in the Illinois Settlement Payment Class, will receive notice, and will be entitled to submit a claim as part of the Settlement. And anyone who is in the SEO Directory Class but who was not searched or did not have a purchase associated with a search on the Websites will receive injunctive relief but is not part of the release (meaning that they will retain any claim for money damages that they have against the Defendants). Thus, the original SEO Directory Class definition may be modified to match the Illinois Injunction Settlement Class proposed here.

Because the proposed Settlement Classes satisfy all of Rule 23(a), (b)(2), and (b)(3)'s explicit requirements for certification, as well as the implicit ascertainability requirement, and the current SEO Directory Class definition may be amended, the Multistate Injunction

32

Settlement Classes and Settlement Payment Classes can be certified for purposes of settlement and for purposes of entering final judgment after final approval, if granted.

**B.       The Proposed Settlement Warrants Preliminary Approval.**

In addition to showing that the Settlement Payment Classes and Multistate Injunction Settlement Classes are certifiable, the Parties must also show that the Court "will likely be able to … approve the [settlement] proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). Rule 23(e)(2) requires the Court to find that the Settlement is "fair, reasonable, and adequate" after considering whether: (A) the Class Representatives and Class Counsel have adequately represented the class; (B) the Settlement was negotiated at arm's length; (C) the relief provided to the Settlement Payment Classes and Multistate Injunction Settlement Classes is adequate; and (D) the Settlement treats Settlement Payment Class and Multistate Injunction Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The proposed Settlement easily satisfies these requirements.

**1.       Plaintiffs and Proposed Class Counsel Have Adequately Represented the Settlement Classes.**

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). This factor "look[s] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment (hereinafter "2018 Committee Notes"). Ultimately, where the named plaintiff "participated in the case diligently … [a]nd class counsel fought hard throughout the litigation," *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019), and where "Class Counsel had 'an adequate information base' while negotiating for the settlement," *T.K.*, 2022 WL 888943 at *11 (quoting 2018 Committee Notes), this factor is satisfied.

Here, each of the Plaintiffs diligently participated in their respective cases, including by helping Class Counsel investigate their right of publicity claims, assisting in the preparation of and reviewing the Complaints before filing, becoming familiar with the case more generally, participating in the discovery process as applicable, and reviewing and approving the Settlement Agreement before signing it. (Fraietta Decl. ¶ 13.) In other words, each Plaintiff has and continues to adequately represent the Multistate Injunction Settlement Class and Settlement Payment Class he or she seeks to represent.

Class Counsel's performance in this case likewise satisfies this factor. They "fought hard throughout the litigation," briefing and defeating Defendants' attempts to dismiss the case, conducting in discovery, obtaining class certification, "and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379, at *4. This occurred not just in the *Fischer* Action, but in the Additional Litigation as well. In *Backowski*, for example, the Parties briefed a motion to dismiss that was stricken without prejudice and began engaging in arbitration-related discovery. *See Backowski*, dkts. 29, 38. In each of the *Camacho* cases, Plaintiffs defeated Defendants' motion to dismiss, and an appeal was pending when the Parties settled. *Camacho*, 22-cv-00209, dkt. 24 (S.D. Cal. July 18, 2022) (denying Defendants' motion to dismiss); *Camacho*, 21-cv-01954, dkt. 32 (S.D. Cal. July 18, 2022) (same); *Camacho*, 21-cv-01957, dkt. 31 (S.D. Cal. Jul. 18, 2022) (same). Prior to settling, the Parties exchanged formal and informal discovery, as well as multiple mediation briefs, providing Class Counsel with "an adequate information base" on which to negotiate. *T.K.*, 2022 WL 888943 at *11; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (noting that the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the

merits of this case").

### 2. The Settlement Was Negotiated at Arm's Length.

Like the first Rule 23(e)(2) factor, the second factor—whether the settlement was negotiated at arm's length—addresses a "procedural" concern. Fed. R. Civ. P. 23(e)(2)(B); 2018 Committee Notes. And again, this factor is satisfied here.

The arm's-length negotiation requirement "aim[s] to root out settlements that may benefit the plaintiffs' lawyers at the class's expense." *T.K.*, 2022 WL 888943 at *11 (internal quotation omitted). Here, there was no collusion between Class Counsel and Defendants to take advantage of any Settlement Class. "Unlike many class action settlements in which settlement negotiations begin before discovery even takes place, this case was contested through an adversarial and contentious process." *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019). The Parties litigated before this Court and others for years, defeating one motion to dismiss after another. *See Camacho*, 22-cv-00209, dkt. 24 (denying Defendants' motion to dismiss); *Camacho*, 21-cv-01954, dkt. 32 (same); *Camacho*, 21-cv-01957, dkt. 31 (same), *Fischer*, dkt. 36 (N.D. Ill. Apr. 16, 2020) (same). Discovery followed, and after that a class certification motion in *Fischer* that Defendants vigorously contested. Only after the Court issued its certification order and the Seventh Circuit rejected Instant Checkmate's appeal in this case did the Parties discuss the potential to resolve all litigation involving the Websites. Even still, Instant Checkmate moved to decertify the class in the middle of settlement negotiations, (dkt. 243), a motion that was pending at the time the settlement-in-principle was ultimately reached.

In addition, "[t]he best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K.*, 2022 WL 888943, at *11 (internal quotations omitted). In this case, Judge Schenkier's assistance both during and after the full-day mediation was

instrumental in bringing this case to a negotiated resolution. *See, e.g.*, *Charvat*, 2019 WL 5576932, at *5 (finding arm's-length negotiation factor met where "[t]he parties attended a full day of mediation that, after initially failing to result in a settlement, finally jumpstarted negotiations between the parties"); *Young v. Rolling in the Dough, Inc.*, No. 17-cv-07825, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (recognizing class settlement "clearly" the product of arm's-length negotiation where agreement reached only after a contested motion, extensive discovery, and an unsuccessful settlement conference before a magistrate judge).

What's more, the arm's-length nature of these negotiations is further confirmed by the Settlement itself: each State-Specific Settlement Fund is non-reversionary, provides higher cash payments than comparable right of publicity settlements to Settlement Payment Class Members who submit a simple Claim Form, and contains no provisions that might suggest fraud or collusion, such as a "clear sailing" or "kicker" clause regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (finding settlement negotiated at arm's length where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"). In a similar vein, the release is not overbroad. Only the Settlement Payment Class Members (who are eligible to submit a Claim Form) are releasing their claims regarding the Websites; individuals who are only in the Multistate Injunction Settlement Classes will get injunctive relief under the Settlement, but are not giving up their right to otherwise sue Defendants.

### 3. The Relief Provided for the Classes Is Exceptional.

The next Rule 23(e)(2) factor—whether "the relief provided for the class is adequate"— includes four express considerations to take into account: (i) the costs, risks, and delay of trial

and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations favors finding that the relief provided here is more than adequate.

### a. The benefits of settlement outweigh the cost, risk, and delay of further litigation.

Although the "costs, risks, and delay" consideration was not expressly included in Rule 23 until 2018, the Seventh Circuit has long required courts to consider "the strength of plaintiff's case on the merits balanced against the amount offered in settlement," as well as the "likely complexity, length and expense of the litigation." *T.K.*, 2022 WL 888943, at \*12 (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). That precedent informs the Court's assessment of the "costs, risks, and delay" consideration of Rule 23(e)(2)(C)(i). *Id.*; *see also* 2018 Committee Notes (explaining that 2018 amendment's listing of settlement approval factors was not meant to displace any court-made factors, but simply to focus courts and parties on a shorter list of core concerns). Here, when balanced against the downsides of continued litigation, the benefits of the proposed Settlement are clear.

The Settlement's monetary benefits are substantial. The Settlement would create State-Specific Settlement Funds based on a static percentage of the statutory damages available under that state's right of publicity law. For Alabama, California, Indiana, Ohio, and South Dakota, the State-Specific Settlement Funds equal 4.5% of each state's maximum statutory damages, multiplied by the size of that Settlement Payment Class's size: Alabama, $225 per 3,900 Alabama Settlement Payment Class Members equals a $877,500 fund; $33.75 per 29,735 California Settlement Payment Class Members equals a $1,003,556 fund; $45 per 2,371 Indiana

Settlement Payment Class Members equals a $106,695 fund; $33.75 per 3,532 Nevada

Settlement Payment Class Members equals a $119,205 fund; $112.50 per 15,359 Ohio

Settlement Payment Class Members equals a $1,727,888 fund; and $45 per 509 South Dakota

Settlement Payment Class Members equals a $22,905 fund. In recognition of the fact that the

original *Fischer* litigation has been pending the longest and proceeded that furthest procedurally

(resulting in a certified class), the Illinois Settlement Payment Fund is based on 24.7% of the

IRPA's maximum statutory damages, or $247 per the 25,284 Illinois Settlement Payment Class

Members for a $6,245,148 fund. Estimating a claims rate of 15–25%, Settlement Payment Class

Members are reasonably expected to payments in the following amounts: Alabama, $577 to

$960; California, $82 to $137; Illinois, $635 to $1,058; Indiana, $111 to $185; Nevada, $82 to

$137; Ohio, $286 to $477; and South Dakota, $107 to $178.

 These per-person amounts are well in line with recent settlements in the right of publicity

space. For example, under the IRPA, recent settlement funds have been based on $60 per class

member, *Krause*, dkts. 77-1, 87 (granting preliminary approval to settlement creating $1,596,300

fund for 26,605 IRPA class members), and $40, *Butler*, dkts. 272-1, 277 (granting final approval

to $1,208,440 settlement of 30,211 IRPA claims, or $40 per person). The per-person figures

under the Settlement are a significant improvement on these amounts. Under the ORPA, a

recently approved settlement was based on a per-person payment amount of $100. *Butler*, dkts.

272-1, 277 (granting final approval to $2,864,200 settlement of 28,642 ORPA claims). Here

again, the proposed Settlement surpasses this figure. Estimated net payments are also expected to

be commensurately higher than previous settlements. *See Butler*, dkt. 272 ($95 to each IRPA

claimant and $380 to each ORPA claimant); *cf. also Fraley v. Facebook, Inc.*, 966 F. Supp. 2d

939, 943–44 (N.D. Cal. 2013), *aff'd sub nom Fraley v. Batman*, 638 Fed. App'x 594, 597 (9th

Cir. 2016) (approving California right of publicity settlement providing $15 to each claiming class member).

While courts have not had occasion to consider class-wide right of publicity settlements with "people-search" providers like Defendants under Alabama, California, Indiana, Nevada, or South Dakota law, the fact that the per-person amounts for those states are based on a higher percentage of statutory damages (here, 4.5%) than in the first IRPA and ORPA settlement in *Butler*, dkts. 272-1, 277 (per-person damages for purposes of calculating funds was 4% of statutory damages under the respective laws). Of course, the monetary relief provided under the Settlement stands apart from other consumer privacy class actions that may provide no monetary relief whatsoever. *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member— where $10,000 in statutory damages were available per claim); *In re Google Buzz Priv. Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement); *see also Frank v. Gaos*, 139 S. Ct. 1041, 1047–48 (2019) (Thomas, J., dissenting).

Besides the monetary relief to the Settlement Payment Classes, the Multistate Injunction Settlement Classes are also entitled to key injunctive relief that aimed at remedying the underlying, allegedly unlawful conduct. Specifically, Defendants must stop displaying Class Members' names on any page on their websites that includes a subscription offer to Defendants' products or services. (Settlement § 2.3.) This would end the behavior that led to the lawsuits in the first place. Critically, members of the Multistate Injunction Settlement Classes who are not Settlement Payment Class Members—that is, they were not searched in a way that led to a

subscription purchase and are not eligible for a monetary payment under the Settlement—are excluded from the release. (*Id.* § 1.56.) Thus, they will receive real injunctive benefits from the Settlement while retaining any claims they may have against Defendants.

All of this relief to the Settlement Classes is immediate, avoiding potentially years of complex litigation and appeals. *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). Furthermore, the risk of obtaining *no* relief through continued litigation is significant. While this Court denied Defendants' motion to dismiss, Defendants could re-raise some or all of their arguments at summary judgment or on appeal. And while the Court granted class certification once, at the time the Settlement was reached, Instant Checkmate had a pending motion to decertify the class. (Dkt. 243.) Additionally, the sheer number of cases pending throughout the country alleging similar right of publicity claims based on "free preview" advertising makes appellate review of this type of case almost inevitable. *See, e.g.*, *Backowski*, No. 21-cv-00115 (W.D. Wash.); *Lukis v. Whitepages Inc*., 454 F. Supp. 3d 746 (N.D. Ill. 2020), *reconsideration denied*, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020); *Ramos v. ZoomInfo Techs., LLC*, No. 21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021); *Kolebuck-Utz v. Whitepages Inc.*, No. C21-0053-JCC, 2021 WL 1575219 (W.D. Wash. April 22, 2021); *Knapke v. PeopleConnect Inc.*, No. C21-262 MJP, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021); *Sessa v. Ancestry.com Operations Inc.*, No. 2:20-cv-02292, 2021 WL 4245359 (D. Nev. Sept. 16, 2021). A negative appellate decision on any of the potentially dispositive issues in this case (statutory exceptions, First Amendment, Communications Decency Act, or dormant commerce clause) could singlehandedly doom these cases were litigation to continue.

Likewise, continued litigation would force Plaintiffs outside the *Fischer* action to seek class certification adversarially, a process not entirely free of risk. *See T.K.*, 2022 WL 888943, at *13 (noting obstacle posed by adversarial class certification if litigation were to continue rather than settle). While the *Fischer* certification order certainly provides a roadmap to class certification with respect to the other Websites, Defendants would surely attempt to raise idiosyncratic differences between the Websites' functionality to try and distinguish the case. Indeed, the fact that the Court certified two classes, but declined to certify a third class of individuals appearing in search results illustrates that certification in the Additional Litigation would by no means be guaranteed. *Fischer*, 2022 WL 971479, at *3, *15; *Dancel v. Groupon, Inc.*, No. 18 C 2027, 2019 WL 1013562, at *1 (N.D. Ill. Mar. 4, 2019), *aff'd*, 949 F.3d 999 (7th Cir. 2019) (denying motion to certify IRPA class because whether any given username was sufficient to identify an individual presented individual inquiries that defeated predominance).

In short, "any relief to class members would still be far down the road and may ultimately be entirely denied." *Charvat*, 2019 WL 5576932, at *7. In contrast, "[a]pproving the proposed settlement agreement will end the case and cause benefits to flow in short order." *Id.*; *see also Young*, 2020 WL 969616, at *5 ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort.").

**b.** **The proposed method of distributing relief to the Settlement Payment Classes is effective.**

The "method of distributing relief" consideration looks to whether the methods proposed for processing claims are "so complex that they discourage class members from pursuing valid claims." *T.K.*, 2022 WL 888943, at *14. "A requirement that potential claimants fill out a form in order to collect from the settlement fund seldom raises such concerns." *Id.* That is all that's required from Settlement Payment Class Members here. (Settlement § 2.1.) The proposed Claim

41

Form "is not unduly burdensome, long, or complex." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 591 (N.D. Ill. 2011). "All information called for on the form is required of the claims administrator in order for it to process claims." *Id.* Furthermore, "[t]he parties' use of a settlement website … suggests that the claims process was designed to encourage—not discourage—the filing of claims." *Id.* "For example, the ability to submit a claim online through the settlement website allow[s] Class Members to submit a claim without the need to pay for a stamp." *Id.* The Settlement also offers Class Members several easy options for receiving their payment, including Venmo, Zelle, or check. (Settlement § 1.15.)

"In addition to the method of submitting a claim, courts must also consider how claims are paid out." *T.K.*, 2022 WL 888943, at *14. "Courts are especially wary of complex claims processes paired with either claims-made settlements, distributing only the amount actually claimed by the class members, or reversionary funds." *Id.* (quotations omitted). The Settlement here is neither; Defendants will pay set amounts into each State-Specific Settlement Fund regardless of the number of claims filed, with no possibility of any funds reverting back to Defendants. Consequently, "it seems unlikely that the claims process is designed to limit the 'take rate' of Class Members." *Schulte*, 805 F. Supp. 2d at 591. *See also T.K.* 2022 WL 888943, at *15 ("[B]ecause no possibility of reversion exists here, it creates little incentive for gamesmanship by Defendants or class counsel.").

### c. The terms of the requested attorneys' fees are reasonable.

The next consideration under Rule 23(e)(2)(C)'s evaluation of the adequacy of relief are "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, proposed Class Counsel intends to petition the Court for an award of attorneys' fees not to exceed 35% of the net State-Specific

Settlement Funds remaining after payment of Settlement Administration Expenses and any service awards granted to the Class Representatives. "[T]he percentage method is employed by the vast majority of courts in the Seventh Circuit," and "the typical fee [is] between 33 and 40 percent." *T.K.*, 2022 WL 888943, at *24 (quotations omitted); *see also*, *e.g.*, *Butler*, dkt. 277 at 6 (awarding 35% of funds); *Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, dkt. 70 (N.D. Ill. Jan. 24, 2020) (awarding 35% of fund); *Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, dkt. 69 (N.D. Ill. Apr. 27, 2021) (awarding 35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, dkt. 57 (N.D. Ill. Sept. 10, 2020) (awarding 35% of fund). Again, there is no clear sailing agreement, and the Settlement Agreement permits Defendants to challenge the amount of any fees requested. (Settlement § 8.1.) With respect to the timing of payment of attorneys' fees, any payment will be made within seven business days after final judgment, including any appeals. (*Id.* § 8.2.)

As will be discussed further in a subsequently filed fee petition, the attorneys' fees sought "are reasonable in light of the Class Counsel's work, their investment of resources in the case, their prosecution of the action for the benefit of the Class[es], the risks that they faced in the litigation, and the overall benefit of the Settlement achieved." *T.K.*, 2022 WL 888943, at *15. For the immediate purposes of evaluating the adequacy of relief under Rule 23(e)(2)(C), however, the important thing to note is that the Court's decision on settlement approval is completely distinct from its determination of fees. *Id.* ("Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees remains entirely separate from approval of the Settlement.").

> **d.  There are no side agreements separate from the Settlement Agreement.**

The last consideration in Rule 23(e)(2)'s assessment of the adequacy of relief requires

this Court to take into account "any agreement made in connection with the [proposed settlement]." Fed. R. Civ. P. 23(e)(2)(C)(iv), (3). This consideration ensures that the Court is aware of any "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2003 Amendment. Here, there are no such agreements; all terms and agreements affecting Multistate Injunction Settlement Class and Settlement Payment Class Members are contained within the Settlement Agreement.

In sum, each of the four express considerations of Rule 23(e)(2)(C)'s adequacy of relief requirement suggest that the Rule is satisfied here.

### 4. The Settlement Treats Class Members Equitably.

In addition to adequate representation, arm's-length negotiation, and adequacy of relief, the final factor in determining whether a proposed settlement is fair, reasonable, and adequate—and thus deserving of preliminary approval—is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Considering the Multistate Injunction Settlement Classes, each Class Member is entitled to the same injunctive relief across the Classes. "Generally, a settlement that provides for *pro rata* shares to each class member will meet this standard." *T.K.*, 2022 WL 888943, at \*15; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 840–41 (1999) (describing *pro rata* distribution of fund as a "straightforward model[] of equitable treatment"). With respect to the Settlement Payment Classes, that's precisely what the Settlement Agreement provides here: each claiming Settlement Payment Class Member will receive a *pro rata* share of their respective State-Specific Settlement Fund. The fact that Plaintiffs intend to seek a service award for themselves that, if approved, would lead them to

receive marginally more of their State-Specific Settlement Funds than other Class Members is not problematic. "Equitably relative to each other" does not mean "equally to each other," and absent unusual circumstances, a modest service award to a class representative does not render a proposed settlement unfair, unreasonable, or inadequate. *See T.K.*, 2022 WL 888943, at *15–16 (finding $2,500 service awards did not render treatment of class members inequitable, noting that "[b]ecause class representatives do more work and take more risks than the average class member, service awards to named class members will generally not raise a red flag") (quotations omitted). The proposed Settlement treats all Multistate Injunction Settlement Class and Settlement Payment Class Members equitably relative to each other, and all four Rule 23(e)(2) factors thus support preliminary approval here.

### C.     The Proposed Notice Plan to the Settlement Payment Classes Should Be Approved in Form and Substance.

As shown above, the proposed Settlement Payment Classes can be certified, and the proposed Settlement can be preliminarily approved. Consequently, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Furthermore, with respect to the Settlement Payment Classes, because Plaintiffs seek certification under Rule 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). As for the Multistate Injunction Settlement Classes, the Court may—but need not—direct that notice be sent to the Members. Fed. R. Civ. P. 23(c)(2)(A). As described below, the proposed Notice to the Settlement Payment Class Members meets all requirements under Rule 23, and no separate notice to Multistate Injunction Settlement Class Members is necessary.

1.      **Notice to the Settlement Payment Classes Comports with Rule 23 and Due Process.**

First, notice may be provided to the Settlement Payment Classes via "United States mail, electronic means, or other appropriate means," and must describe "clearly and concisely … in plain, easily understood language" the nature of the action, the definition of the Settlement Payment Classes, the claims and defenses at issue, the Settlement Payment Class Members' right to appear through counsel if so desired, their right to request exclusion from the Settlement Payment Class, the time and manner for requesting exclusion, and the binding effect of a class judgment on all Settlement Payment Class Members. Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement Agreement sets out a comprehensive notice plan focused on providing direct notice, plus two reminder notices to all Settlement Payment Class Members via email and, as appropriate, U.S. Mail. (Settlement § 4.2.) Each of the Notices will be tailored to that respective Settlement Payment Class Member's state and the claims that are at issue. (*Id.* § 4.2(a) and exhibits referenced therein). Defendants will provide the Settlement Administrator with all identifying information (including, but not limited to, names, email addresses, and mailing addresses) that Defendants have for each person in each Settlement Payment Class. (*Id.* § 4.1.) The Settlement Administrator will send direct notice to all Settlement Payment Class Members for whom a valid email address is contained in the Settlement Payment Class List. (*Id.* § 4.2(a).) That email will contain a link to the Claim Form and otherwise describe the Settlement. (*Id.*) For any emails that result in a "bounce-back" or are undeliverable, or in the event that no email address is available, the Settlement Administrator will attempt send notice, along with a Claim Form, to that Settlement Class Member's U.S. Mail address (after first updating the address through the National Change of Address database or similar resources). (*Id.* §§ 4.2(a), 4.2(b).) To the extent that U.S. Mail notice is returned as undeliverable, the Settlement

Administrator shall attempt remailings. (*Id.* § 4.2(b).) Two subsequent reminder emails will be sent, one thirty days and one seven days prior to the Claims Deadline; if the number of Claim Forms submitted does not equal at least ten percent of the Settlement Class, the Settlement Administrator will send a final reminder email two days before the Claims Deadline. (*Id.* § 4.2(c).)

Finally, the Settlement Administrator will establish and maintain a Settlement Website. This will include notice of the Settlement Agreement, relevant case documents, key dates and deadlines, and the ability to file Claim Forms online or download them in hardcopy form. (*Id.* § 4.2(d).) It will also include contact information for the Settlement Administrator and Class Counsel. (*Id.*)

All in all, the proposed direct notice plan to Settlement Payment Class Members is designed to provide information about the proposed Settlement and their rights under it in plain, easily understood language. It is the best notice practicable, and this Court should approve the notice plan as set forth in the Settlement.

### 2. Notice to the Multistate Settlement Classes Is Unnecessary.

While the Settlement Website will make information about the Settlement available to all Multistate Injunction Settlement Class Members, no separate direct notice needs to be sent to them. As an initial matter, unlike with respect to classes certified under Rule 23(b)(3), the Federal Rules do not mandate that notice be sent to members of classes certified under Rule 23(b)(2) seeking injunctive relief. *Wal-Mart*, 564 U.S. at 362 (recognizing that Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action"); *Walsh v. Kelley*, No. 17-CV-05405, 2021 WL 4459531, at *2 (N.D. Ill. Sept. 29, 2021) ("In a Rule 23(b)(2) suit for injunctive

relief, notice is not required but rather provided at the Court's discretion, unnamed class members do not have a right to opt out, and there is no monetary recovery to split among class members."); *Williams v. Lane*, 129 F.R.D. 636, 640 (N.D. Ill. 1990) (regarding Rule 23(b)(2) class, "a court does not violate the rights of individual class members by failing to provide individual notice of the pendency of the class action or an opportunity to withdraw and pursue claims individually."); Fed. R. Civ. P. 23(c)(2)(A). Sending such notice here to essentially every resident in the at-issue states would be disproportionately costly compared against the marginal benefits to be gained, and in light of the negligible risks of not sending such notice. It would also be in line with the Court's previous orders regarding notice to the previously-certified Rule 23(b)(2) class. (Dkt. 214 at 3 ("As to the Rule 23(b)(2) class, the court will not require notice.").)

First, the Parties have conferred with the proposed Settlement Administrator, and notice is expected to exceed more than $1 million for the Illinois Injunction Settlement Class alone, which includes nearly all Illinois residents going back years. (Ovca Decl. ¶ 4.) Such costs would quickly deplete, if not exceed, each of the State-Specific Settlement Funds, which were calculated based on the much smaller Settlement Payment Classes and not meant to bear such an expensive and expansive notice campaign. *Compare Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D. 430, 440 (N.D. Ill. 2003) (noting overlap in (b)(2) and (b)(3) classes such that "no significant additional expenses will be incurred").

Against these costs, the Multistate Injunction Settlement Class Members stand little to gain by receiving direct notice. Because they are not afforded an opportunity to opt out and Defendants are obligated to cease displaying their names on any page on their websites that includes a subscription offer to Defendants' products or services automatically (that is, there is no claims process they must complete in order to receive that benefit), the notice would only

serve to tell them about events that are, if the Settlement is finally approved, will happen anyway. *See Williams*, 129 F.R.D. at 640 (recognizing that (b)(2) class members "have homogenous interests as to the injunctive relief, [such that] their interests are sufficiently protected" by Rule 23(a)(4)'s adequacy requirement). Likewise, the Multistate Injunction Settlement Class Members who are not also Settlement Payment Class Members are excluded from the Settlement's release, meaning that they do not risk unknowingly waiving any claims that they may have against Defendants. Compared against the costs and scant benefits, the risk that Multistate Injunction Settlement Class Members won't be given direct notice of their right to object is not a serious impediment: the Settlement Website will be available to anyone and will provide instructions on what must be done to file an objection and appear at the Final Approval Hearing. *See, e.g.*, *Lewis v. City of Chicago*, 702 F.3d 958, 962–63 (7th Cir. 2012) (recognizing that (b)(2) class members are not entitled to notice and that "[m]embers of a (b)(2) class can monitor the litigation"). Neither Rule 23 nor due process will be infringed by declining to provide costly and unnecessary notice to the Multistate Injunction Settlement Class Members, as this Court previously recognized. (Dkt. 214 at 3.)

## V. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Finally, if the Court finds that the Settlement Payment and Multistate Injunction Settlement Classes are certifiable, it should appoint Plaintiffs' counsel Class Counsel. *See* Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserting in the action, (iii) counsel's knowledge of the applicable law, and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Especially given the Court already

appointed Plaintiffs' counsel as Class Counsel once in connection with this case, these requirements are readily met. *See Fischer*, 2022 WL 971479, at \*15.

As discussed in Section IV(A)(4) above, proposed Class Counsel have extensive experience in litigating consumer privacy class actions, including right of publicity litigation; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. (*See* Fraietta Decl. ¶ 10.) All of the Rule 23(g)(1)(A) considerations thus support the appointment of Plaintiffs' counsel as Class Counsel once more in this case. *See Molinari v. Fin. Asset Mgmt. Sys., Inc.*, No. 18 C 1526, 2020 WL 4345418, at \*8 n.8 (N.D. Ill. July 29, 2020) ("The analysis under Rule 23(g) builds on the standards that courts developed in scrutinizing the adequacy of class counsel under Rule 23(a)(4) rather than introducing an entirely new element into the class certification process.") (quotations omitted). Besides having already been appointed as Class Counsel previously in this case, many of Plaintiffs' counsel has been appointed class counsel in two similar IRPA class action settlements. *Krause*, dkt. 87 at 3 (appointing J. Eli Wade-Scott, Michael W. Ovca, Phillip L. Fraietta, as settlement class counsel); *Butler*, dkt. 261 at 3 (appointing J. Eli Wade-Scott and Philip L. Fraietta as settlement class counsel). This Court should appoint Plaintiffs' counsel as Class Counsel for each of the Settlement Classes.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) preliminarily approving the proposed Settlement; (2) certifying the proposed Settlement Payment Classes and Multistate Injunction Settlement Classes for settlement purposes; (3) appointing Plaintiff Jose Camacho to represent the Alabama Injunction Settlement Class and Alabama Settlement Payment Class, Plaintiffs Rhonda Cotta, Rogelio Ramirez, and Jake Webb to

represent the California Injunction Settlement Class, Plaintiff Jake Webb to represent the California Settlement Payment Class, Plaintiffs Robert Fisher, Stephanie Lukis, Alessandra Fissinger-Figueroa, and Eric Carvalho to represent the Illinois Injunction Settlement Class, Plaintiff Eric Carvalho to represent the Illinois Settlement Payment Class, Plaintiff James Anderson to represent the Indiana Injunction Settlement Class and Indiana Settlement Payment Class, Plaintiff Nicholas Fioritto to represent the Nevada Injunction Settlement Class and Nevada Settlement Payment Class, Plaintiffs Therese Backowski and Justin Rogalsky to represent the Ohio Injunction Settlement Class, Plaintiff Justin Rogalsky to represent the Ohio Settlement Payment Class, and Plaintiff Nateema Lewis to represent the South Dakota Injunction Settlement Class Representative and South Dakota Settlement Payment Class; (4) directing that Notice be provided to Settlement Payment Class Members pursuant to the notice plan set forth in the Settlement; (5) appointing Roberto Luis Costales and William Beaumont of Beaumont Costales LLC; Ari Scharg, J. Eli Wade-Scott, Yaman Salahi, and Michael Ovca of Edelson PC; Philip L. Fraietta of Bursor & Fisher, P.A; and Kevin Tucker of East End Trial Group as Class Counsel for the Multistate Injunction Settlement Classes and Settlement Payment Classes; (6) scheduling a Final Approval Hearing in this matter; and (7) providing such other and further relief as the Court deems reasonable and just.[5]

---

[5] Plaintiffs will submit a proposed Preliminary Approval Order for the Court's convenience and to propose dates for the deadlines contemplated in the Settlement.

Respectfully Submitted,

ROBERT FISCHER, STEPHANIE LUKIS, ALESSANDRA FISSINGER-FIGUEROA, ERIC CARVALHO, JOSE CAMACHO, RHONDA COTTA, ROGELIO RAMIREZ, JAKE WEBB, JAMES ANDERSON, THERESE BACKOWSKI, JUSTIN ROGALSKY, NATEEMA LEWIS, and NICHOLAS FIORITTO

Dated: August 30, 2023                    /s/ Michael Ovca

Roberto Luis Costales
rlc@beaumontcostales.com
William H. Beaumont
whb@beaumontcostales.com
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, IL 60605
Tel: 773.831.8000

Benjamin Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Ari Scharg
ascharg@edelson.com
Michael W. Ovca
movca@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North Lasalle Street, 14th Floor
Chicago, IL 60654
Tel: 312.589.6370

Yaman Salahi
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.638.9903

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
1300 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: 646.837.7150

Kevin Tucker (*pro hac vice*)
ktucker@eastendtrialgroup.com
Kevin Abramowicz (*pro hac vice*)
kabramowicz@eastendtrialgroup.com
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: 412.877.5220

*Attorneys for Plaintiffs*