**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT FISCHER, STEPHANIE LUKIS, ALESSANDRA FISSINGER-FIGUEROA, ERIC CARVALHO, JOSE CAMACHO, RHONDA COTTA, ROGELIO RAMIREZ, JAKE WEBB, JAMES ANDERSON, THERESE BACKOWSKI, JUSTIN ROGALSKY, NATEEMA LEWIS, and NICHOLAS FIORITTO, individually and on behalf of all others similarly situated, | Case No. 19-cv-04892 |
| *Plaintiffs*, | Hon. Manish S. Shah |
| v. | |
| INSTANT CHECKMATE LLC, TRUTHFINDER LLC, INTELIUS LLC, THE CONTROL GROUP MEDIA COMPANY, LLC, and PEOPLECONNECT, INC., | |
| *Defendants*. | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Robert Fischer, Stephanie Lukis, Alessandra Fissinger-Figueroa, Eric Carvalho,

Jose Camacho, Rhonda Cotta, Rogelio Ramirez, Jake Webb, James Anderson, Therese

Backowski, Justin Rogalsky, Nateema Lewis, and Nicholas Fioritto (collectively, "Plaintiffs")

bring this class action on their own behalf and also on behalf of all others similarly situated

("Class members"). Class members had (and continue to have) their identities used by the

Defendants in their advertisements without Class members' written consent, in violation of

Alabama, California, Indiana, Illinois, Ohio, Nevada, and South Dakota law.

1

## THE PARTIES

1.     Plaintiffs Robert Fischer, Stephanie Lukis, Alessandra Fissinger-Figueroa, and Eric Carvalho are residents of Illinois.

2.     Plaintiff Jose Camacho is a resident of Alabama.

3.     Plaintiffs Rhonda Cotta, Rogelio Ramirez, and Jake Webb are residents of California.

4.     Plaintiff James Anderson is a resident of Indiana.

5.     Plaintiffs Therese Backowski and Justin Rogalsky are residents of Ohio.

6.     Plaintiff Nateema Lewis is a resident of South Dakota.

7.     Plaintiff Nicholas Fioritto is a resident of Nevada.

8.     Defendant Instant Checkmate LLC ("Instant Checkmate") owns and operates the website www.instantcheckmate.com. Instant Checkmate is a California-based, for-profit corporation organized under the laws of the State of Delaware with its principal place of business located at 375 Camino De La Reina, Suite 400, San Diego, CA 92108.

9.     Defendant The Control Group Media Company, LLC ("TCG") is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 375 Camino De La Reina, Suite 400, San Diego, CA 92108.

10.     Defendant Intelius LLC ("Intelius") is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 375 Camino De La Reina, Suite 400, San Diego, CA 92108. Defendant Intelius owns and operates the websites Intelius.com and USSearch.com

11.     Defendant TruthFinder, LLC ("TruthFinder") is a corporation existing under the laws of the State of Delaware with its principal place of business located at 375 Camino De La

Reina, Suite 400, San Diego, CA 92108. Defendant TruthFinder owns and operates the website TruthFinder.com.

12.     Defendant PeopleConnect, Inc., ("PeopleConnect") is a corporation existing under the laws of the State of Delaware with its principal place of business located at 1687 114th Ave SE, Ste. 200, Bellevue, WA, 98004.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d)(1)(B).

14.     Venue is proper in the Northern District of Illinois because Defendants are committing the acts alleged herein in the Northern District and a substantial part of the acts and omissions giving rise to the claims asserted herein have occurred in the Northern District.

## COMMON FACTUAL ALLEGATIONS

15.     Defendants own and operate, or operated during the relevant time period, websites that sell "background reports" on people to the general public. These reports contain information such as full name, contact information, and individuals' address information.

16.     Defendants sell these reports on four at-issue websites: www.InstantCheckmate.com, www.Intelius.com, www.Truthfinder.com, and www.USSearch.com (the "Websites").

17.     Each of the Websites pulls data from the same data provider(s) and stores the information that it receives in an SEO Directory, that maintains some the information that the data provider sends in response to a search even if not displayed in search results.

18.     The Websites all operate substantially similarly. Anyone can search for an individual, after which a free preview result is returned displaying information about the

searched-for individual, or navigate to profiles of individuals in the SEO Directory. Once the result is clicked, the user is eventually taken to a marketing page that invites the user to sign up for a subscription to the Website. Each Website's workflow is reflected below.

**The Advertisements on www.InstantCheckmate.com.**

19. Upon visiting www.InstantCheckmate.com, anyone is free to enter the first and last name of a particular individual via a search bar on the homepage.

20. After entering this information, the user is provided with a listing of search results. The search results are based on the information provided by the public user which is sent to the InstantCheckmate's data provider which returns information, some of which is displayed in the search results, and some of which is also maintained in the SEO Directory.

21. These search results provide a limited, free preview of Instant Checkmate's "background reports." As shown in the images below, this free preview ("Instant Checkmate Marketing Page") includes the searched individual's name (including middle initials), age, current city and state of residence, the searched individual's relatives, and other identifying information. *See* Figures 1 and 2.



**(Figure 1.)**



**(Figure 2.)**

22.     As shown in the above images, Instant Checkmate's Marketing Page provides enough information to identify an individual.

23.     The purpose behind Instant Checkmate's Marketing Page is singular: to entice users to purchase Instant Checkmate's services. These services include "background reports" and "histories" relating to individuals, including those in its SEO Directory.

24.     Instant Checkmate uses the Instant Checkmate Marketing Page to advertise its monthly subscription services whereby a user can access and retrieve "background reports" and "histories" on any individual, including those in its SEO Directory.

25.     In order for a user to view a person's "background report" or other background "histories" generated by Instant Checkmate, a user needs to purchase Instant Checkmate's services. Clicking on "view report" or "open report" in the above image, leads users to a pay screen which presents them with an option to pay for Instant Checkmate's monthly subscription services.

26.     Instant Checkmate's monthly subscription allows users to obtain background reports using their services on an unlimited number of individuals per month.

27.     Defendants compile the content they sell on their Websites. For example, according to one Defendant: "Instant Checkmate continually searches for new data and adds it to [its] reports the minute it becomes available." This data is reflected SEO Directory.

**The Advertisements on www.Intelius.com.**

28.     PeopleConnect owns and operates Intelius.com, a website that sells detailed profile reports about individuals and "access to the best information available online." The

6

reports are compiled in part from databases and public record repositories and are stored in the SEO Directory.

29.     Intelius reports must be purchased through Intelius and may include high value information including, *inter alia*, the individual's address, birth date, marriage records, and criminal history.

30.     When a consumer visits Intelius.com and searches for an individual by using his or her first and last name, Intelius displays a list of individuals found within the SEO Directory that have the same name, alongside certain uniquely identifying information such as each individual's current age, location, and names of their immediate family members ("Intelius Marketing Page"). *See* Figure 3.



**(Figure 3.)**

31.     As shown above, Intelius's free preview provides enough information to identify a specific individual.

32.     The purpose behind Intelius's free preview is singular: to entice users to purchase Intelius's services. These services include "Criminal Records" and "Unlimited Reports" relating to individuals on the SEO Directory.

33.     Intelius uses these free previews to advertise its monthly subscription services whereby a user can access and retrieve reports on any individual in the SEO Directory. *See* Figure 4.



**(Figure 4.)**

34.     In order for a user to view a person's reports or other background histories generated by the Defendants, a user needs to purchase the Defendants' services. With respect to Intelius, as shown above, clicking on "Open Report" in Figure 2, leads users to a pay screen which presents them with an option to pay for Intelius's monthly subscription services.

35.     Intelius's most popular monthly subscription costs $24.86 per month to access and search anyone on the SEO Directory. Intelius's monthly subscription allows users to obtain background reports using its services on an unlimited number of individuals per month.

### The Advertisements on www.TruthFinder.com.

36.     Upon visiting www.TruthFinder.com, anyone is free to enter the first and last name of a particular individual via a search bar on the homepage.

37.     When a consumer visits Truthfinder.com and searches for an individual by using their first and last name, Truthfinder.com displays a list of the individuals found within the SEO Directory that have the same name, alongside certain uniquely identifying information such as each individual's current age, location, and names of their immediate family members (the "TruthFinder Marketing Page"). *See* Figure 5.



**(Figure 5.)**

38.     Once a consumer selects an individual (by clicking "Open Report") from the TruthFinder Marketing Page, TruthFinder displays a checkout page with an offer to purchase a subscription to the Website: a 5-day trial costing $1.00 with access to unlimited reports, with a monthly subscription costing $29.89 per month thereafter. *See* Figure 6.



**(Figure 6.)**

39.     As the above screenshots make clear, TruthFinder is not offering for sale only the information on the searched individual. Instead, TruthFinder is offering for sale a monthly subscription service that grants the purchaser unlimited access to background reports on anybody in the SEO Directory. The searched-for individual's report is a small part of the large SEO Directory with reports on millions of people.

The Advertisements on www.USSearch.com

40.     US Search is a website that sells comprehensive background reports "about almost anyone." The reports are compiled in part from databases and public record repositories.

41.     US Search reports must be purchased from its website and may include high value information including, *inter alia*, the individual's address, birth date, marriage records, and criminal history.

42.     When a consumer visits USSearch.com and searches from an individual by using his or her first and last name. US Search displays a list of the individuals found within its records that have the same name, alongside certain uniquely identifying information such as each individual's current age, location, and names of their immediate family members (the "US Search Marketing Page"). *See* Figure 7.



<u>**(Figure 7.)**</u>

43.     Once a consumer selects an individual (by clicking "Get This Report") from the

US Search Marketing Page, US Search displays a checkout page with an offer to purchase a report

costing $19.86 per month, for one month of unlimited reports. *See* Figure 8.



<u>**(Figure 8.)**</u>

44.     As Figure 8 makes clear, US Search is not offering for sale only the report on the

searched individual. Instead, US Search is offering for sale a monthly subscription service that

grants the purchaser unlimited access to background reports on anybody in the database. The

search for individual's report is a small part of a large database with reports on millions of people.

## DEFENDANTS FAIL TO OBTAIN CONSENT
## TO USE INDIVIDUALS' IDENTITIES

45.     As detailed above, Defendants use Class members' identities to advertise their

for-profit services. Neither Plaintiffs nor Class members provided Defendants with written

consent to use their identities in Defendants' advertisements. Thus, Defendants violated multiple

states' right of publicity laws, including 765 ILCS 1075/1, *et seq*.; Ala. Code § 6-5-770, *et seq*.;

Cal. Civ. Code § 3344; Ind. Code § 32-36-1 *et seq*.; Ohio Rev. Code § 2741.01, *et seq*.; Nev. Rev.

Stat. § 597.790; and S.D. Codified Laws § 21-64 *et seq*.

46.     Defendants purposefully subject themselves to jurisdiction in this Court by

knowingly searching and obtaining records and identifying information on Illinois residents and

using Illinoisans' identities to sell its products. Additionally, Defendants directly sell their

services to consumers in Illinois.

## THE PLAINTIFFS' EXPERIENCES

### Plaintiff James Anderson

47.     Plaintiff James Anderson discovered that Defendants use his name, age, city of

domicile, and the identity of his relatives in advertisements in connection with the Websites, with

identifying information about him stored in the SEO Directory. The advertisements using this

information were the same or substantially similar to those shown in the above screenshots

related to the Websites.

48.     Plaintiff Anderson believes that it is reasonable for others to identify him because

Defendants' advertisements include accurate details about him.

49.     Plaintiff Anderson never provided Defendants with written consent to use any

attribute of his identity in any advertisement or for any commercial purposes in connection with

the Websites.

50.     Plaintiff Anderson is not and has never been Defendants' customer. He has no relationship with Defendants whatsoever.

51.     Plaintiff Anderson has not been compensated by Defendants in any way for their use of his identity. Plaintiff Anderson does not want Defendants to use his identity for any commercial advertising purpose.

**Plaintiff Therese Backowski**

52.     Plaintiff Therese Backowski discovered that Defendants use her name, age, city of domicile, and the identity of her relatives in advertisements in connection with the Websites, with identifying information about her stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

53.     Plaintiff Backowski believes that it is reasonable for others to identify her because Defendants' advertisements include accurate details about her.

54.     Plaintiff Backowski never provided Defendants with written consent to use any attribute of her identity in any advertisement or for any commercial purposes in connection with the Websites.

55.     Plaintiff Backowski is not and has never been Defendants' customer. She has no relationship with Defendants whatsoever.

56.     Plaintiff Backowski has not been compensated by Defendants in any way for their use of her identity. Plaintiff Backowski does not want Defendants to use her identity for any commercial advertising purpose.

**Plaintiff Eric Carvalho**

57.     Plaintiff Eric Carvalho discovered that Defendants use his name, age, city of domicile, and the identity of his relatives in advertisements in connection with the Websites, with identifying information about him stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

58.     Plaintiff Carvalho believes that it is reasonable for others to identify him because Defendants' advertisements include accurate details about him.

59.     Plaintiff Carvalho never provided Defendants with written consent to use any attribute of his identity in any advertisement or for any commercial purposes in connection with the Websites.

60.     Plaintiff Carvalho is not and has never been Defendants' customer. He has no relationship with Defendants whatsoever.

61.     Plaintiff Carvalho has not been compensated by Defendants in any way for their use of his identity. Plaintiff Carvalho does not want Defendants to use his identity for any commercial advertising purpose.

**Plaintiff Jose Camacho**

62.     Plaintiff Jose Camacho discovered that Defendants use his name, age, city of domicile, and the identity of his relatives in advertisements in connection with the Websites, with identifying information about him stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

63.     Plaintiff Camacho believes that it is reasonable for others to identify him because Defendants' advertisements include accurate details about him.

64.     Plaintiff Camacho never provided Defendants with written consent to use any attribute of his identity in any advertisement or for any commercial purposes in connection with the Websites.

65.     Plaintiff Camacho is not and has never been Defendants' customer. He has no relationship with Defendants whatsoever.

66.     Plaintiff Camacho has not been compensated by Defendants in any way for their use of his identity. Plaintiff Camacho does not want Defendants to use his identity for any commercial advertising purpose.

**Plaintiff Rhonda Cotta**

67.     Plaintiff Rhonda Cotta discovered that Defendants use her name, age, city of domicile, and the identity of her relatives in advertisements in connection with the Websites, with identifying information about her stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

68.     Plaintiff Cotta believes that it is reasonable for others to identify her because Defendants' advertisements include accurate details about her.

69.     Plaintiff Cotta never provided Defendants with written consent to use any attribute of her identity in any advertisement or for any commercial purposes in connection with the Websites.

70.     Plaintiff Cotta is not and has never been Defendants' customer. She has no relationship with Defendants whatsoever.

71.     Plaintiff Cotta has not been compensated by Defendants in any way for their use of her identity. Plaintiff Cotta does not want Defendants to use her identity for any commercial advertising purpose.

**Plaintiff Nicholas Fioritto**

72.     Plaintiff Nicholas Fioritto discovered that Defendants use his name, age, city of domicile, and the identity of his relatives in advertisements in connection with the Websites, with identifying information about him stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

73.     Plaintiff Fioritto believes that it is reasonable for others to identify him because Defendants' advertisements include accurate details about him.

74.     Plaintiff Fioritto never provided Defendants with written consent to use any attribute of his identity in any advertisement or for any commercial purposes in connection with the Websites.

75.     Plaintiff Fioritto is not and has never been Defendants' customer. He has no relationship with Defendants whatsoever.

76.     Plaintiff Fioritto has not been compensated by Defendants in any way for their use of his identity. Plaintiff Fioritto does not want Defendants to use his identity for any commercial advertising purpose.

**Plaintiff Robert Fischer**

77.     Plaintiff Robert Fischer discovered that Defendants use his name, age, city of domicile, and the identity of his relatives in advertisements in connection with the Websites, with identifying information about him stored in the SEO Directory. The advertisements using this

information were the same or substantially similar to those shown in the above screenshots related to the Websites.

78.     Plaintiff Fischer believes that it is reasonable for others to identify him because Defendants' advertisements include accurate details about him.

79.     Plaintiff Fischer never provided Defendants with written consent to use any attribute of his identity in any advertisement or for any commercial purposes in connection with the Websites.

80.     Plaintiff Fischer is not and has never been Defendants' customer. He has no relationship with Defendants whatsoever.

81.     Plaintiff Fischer has not been compensated by Defendants in any way for their use of his identity. Plaintiff Fischer does not want Defendants to use his identity for any commercial advertising purpose.

**Plaintiff Alessandra Fissinger-Figueroa**

82.     Plaintiff Alessandra Fissinger-Figueroa discovered that Defendants use her name, age, city of domicile, and the identity of her relatives in advertisements in connection with the Websites, with identifying information about her stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

83.     Plaintiff Fissinger-Figueroa believes that it is reasonable for others to identify her because Defendants' advertisements include accurate details about her.

84.     Plaintiff Fissinger-Figueroa never provided Defendants with written consent to use any attribute of her identity in any advertisement or for any commercial purposes in connection with the Websites.

17

85.     Plaintiff Fissinger-Figueroa is not and has never been Defendants' customer. She has no relationship with Defendants whatsoever.

86.     Plaintiff Fissinger-Figueroa has not been compensated by Defendants in any way for their use of her identity. Plaintiff Fissinger-Figueroa does not want Defendants to use her identity for any commercial advertising purpose.

**Plaintiff Nateema Lewis**

87.     Plaintiff Nateema Lewis discovered that Defendants use her name, age, city of domicile, and the identity of her relatives in advertisements in connection with the Websites, with identifying information about her stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

88.     Plaintiff Lewis believes that it is reasonable for others to identify her because Defendants' advertisements include accurate details about her.

89.     Plaintiff Lewis never provided Defendants with written consent to use any attribute of her identity in any advertisement or for any commercial purposes in connection with the Websites.

90.     Plaintiff Lewis is not and has never been Defendants' customer. She has no relationship with Defendants whatsoever.

91.     Plaintiff Lewis has not been compensated by Defendants in any way for their use of her identity. Plaintiff Lewis does not want Defendants to use her identity for any commercial advertising purpose.

**Plaintiff Stephanie Lukis**

92.     Plaintiff Stephanie Lukis discovered that Defendants use her name, age, city of domicile, and the identity of her relatives in advertisements in connection with the Websites, with identifying information about her stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

93.     Plaintiff Lukis believes that it is reasonable for others to identify her because Defendants' advertisements include accurate details about her.

94.     Plaintiff Lukis never provided Defendants with written consent to use any attribute of her identity in any advertisement or for any commercial purposes in connection with the Websites.

95.     Plaintiff Lukis is not and has never been Defendants' customer. She has no relationship with Defendants whatsoever.

96.     Plaintiff Lukis has not been compensated by Defendants in any way for their use of her identity. Plaintiff Lukis does not want Defendants to use her identity for any commercial advertising purpose.

**Plaintiff Rogelio Ramirez**

97.     Plaintiff Rogelio Ramirez discovered that Defendants use his name, age, city of domicile, and the identity of his relatives in advertisements in connection with the Websites, with identifying information about him stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

98.     Plaintiff Ramirez believes that it is reasonable for others to identify him because Defendants' advertisements include accurate details about him.

99.     Plaintiff Ramirez never provided Defendants with written consent to use any attribute of his identity in any advertisement or for any commercial purposes in connection with the Websites.

100.     Plaintiff Ramirez is not and has never been Defendants' customer. He has no relationship with Defendants whatsoever.

101.     Plaintiff Ramirez her has not been compensated by Defendants in any way for their use of his identity. Plaintiff Ramirez does not want Defendants to use his identity for any commercial advertising purpose.

**Plaintiff Justin Rogalsky**

102.     Plaintiff Justin Rogalsky discovered that Defendants use his name, age, city of domicile, and the identity of his relatives in advertisements in connection with the Websites, with identifying information about him stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

103.     Plaintiff Rogalsky believes that it is reasonable for others to identify him because Defendants' advertisements include accurate details about him.

104.     Plaintiff Rogalsky never provided Defendants with written consent to use any attribute of his identity in any advertisement or for any commercial purposes in connection with the Websites.

105.     Plaintiff Rogalsky is not and has never been Defendants' customer. He has no relationship with Defendants whatsoever.

106.     Plaintiff Rogalsky has not been compensated by Defendants in any way for their use of his identity. Plaintiff Rogalsky does not want Defendants to use his identity for any commercial advertising purpose.

**Plaintiff Jake Webb**

107.     Plaintiff Jake Webb discovered that Defendants use his name, age, city of domicile, and the identity of his relatives in advertisements in connection with the Websites, with identifying information about him stored in the SEO Directory. The advertisements using this information were the same or substantially similar to those shown in the above screenshots related to the Websites.

108.     Plaintiff Webb believes that it is reasonable for others to identify him because Defendants' advertisements include accurate details about him.

109.     Plaintiff Webb never provided Defendants with written consent to use any attribute of his identity in any advertisement or for any commercial purposes in connection with the Websites.

110.     Plaintiff Webb is not and has never been Defendants' customer. He has no relationship with Defendants whatsoever.

111.     Plaintiff Webb has not been compensated by Defendants in any way for their use of his identity. Plaintiff Webb does not want Defendants to use his identity for any commercial advertising purposes.

## CLASS ACTION ALLEGATIONS

112.     Plaintiffs bring this action on behalf of themselves and the classes defined as:

**The Damages Classes**

a.  **Alabama Damages Class:** all individuals in the SEO Directory who were

either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or US Search on or after August 11, 2019, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an Alabama address per the Defendants' records. Plaintiff Jose Camacho represents the Alabama Damages Class.

b. **California Damages Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or US Search on or after August 11, 2019, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed a California address per the Defendants' records. Plaintiff Jake Webb represents the California Damages Class.

c. **Illinois Damages Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or US Search on or after June 21, 2018, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation or for whom a report was purchased after a follow-up e-mail was sent, that displayed an Illinois address per the Defendants' records. Plaintiff Eric Carvalho represents the Illinois Damages Class.

d. **Indiana Damages Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate,

Truthfinder, Intelius, or US Search on or after December 6, 2020, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an Indiana address per the Defendants' records. Plaintiff James Anderson represents the Indiana Damages Class.

e. **Nevada Damages Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or US Search on or after December 6, 2018, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed a Nevada address per the Defendants' records. Plaintiff Nicholas Fioritto represents the Nevada Damages Class.

f. **Ohio Damages Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or US Search on or after January 29, 2017, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an Ohio address per the Defendants' records. Plaintiff Justin Rogalsky represents the Ohio Damages Class.

g. **South Dakota Damages Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or US Search on or after December 6, 2019, through the date of Preliminary Approval, and for whom a report was purchased

through the SEO Directory as a result of the search or navigation that displayed an South Dakota address per the Defendants' records. Plaintiff Nateema Lewis represents the South Dakota Damages Class.

**The Injunction Classes**

a. **Alabama Injunction Class:** all Alabama residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. Plaintiff Jose Camacho represents the Alabama Injunction Class.

b. **California Injunction Class:** all California residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. Plaintiffs Rhonda Cotta, Rogelio Ramirez, and Jake Webb represent the California Injunction Class.

c. **Illinois Injunction Class:** all Illinois residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. Plaintiffs Robert Fischer, Stephanie Lukis, Alessandra Fissinger-Figueroa, and Eric Carvalho represent the Illinois Injunction Class.

d. **Indiana Injunction Class:** all Indiana residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. Plaintiff James Anderson represents the Indiana Injunction Class.

e. **Nevada Injunction Class:** all Nevada residents for whom Instant

Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. Plaintiff Nicholas Fioritto represent the Nevada Injunction Class.

f. **Ohio Injunction Class:** all Ohio residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. Plaintiffs Therese Backowski and Justin Rogalsky represent the Ohio Injunction Class.

g. **South Dakota Injunction Class:** all South Dakota residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. Plaintiff Nateema Lewis represents the South Dakota Injunction Class.

113. Excluded from these Classes are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from any of the Damages Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

114.    The persons in these Classes are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the Parties and the Court.

115.    There are common questions of law and fact common to the claims of Plaintiffs and the putative classes, and, with respect to the Damages Classes, those questions predominate over any questions that may affect individual members of the classes. Common questions for the classes include, but are not necessarily limited to the following:

    a.   Whether Defendants used Class members' identities;

    b.   Whether Defendants used Class members' identities for a commercial purpose;

    c.   Whether Defendants had Class members' consent to use their identities in their advertisements;

    d.   Whether the conduct described herein constitutes a violation of 765 ILCS 1075/1, *et seq*.; Ala. Code § 6-5-770, *et seq*.; Cal. Civ. Code § 3344; Ind. Code § 32-36-1 *et seq*.; Ohio Rev. Code § 2741.01, *et seq*.; Nev. Rev. Stat. § 597.790; and S. D. Codified Laws § 21-64 *et seq*.; and

    e.   Whether Plaintiffs and members of the Injunctive Classes are entitled to injunctive relief.

116.    The claims of the named Plaintiffs are typical of the respective Classes they propose to represent. Plaintiffs will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendants have no defenses unique to any Plaintiff.

117.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Judicial economy will be served by maintaining this lawsuit as a class action because it avoids the burden which would otherwise be placed upon the judicial system by the filing of numerous similar suits. A class action is also superior because the damages suffered by individual Damages Class members are relatively small and because the burden upon such individual litigants may make it difficult and impractical for them to pursue their claims against Defendants.

118.     There are no obstacles to effective and efficient management of this lawsuit as a class action by this Court.

119.     With respect to the Injunction Classes, the Defendants have acted and/or refused to act on grounds that apply generally to the Injunction Classes, so that final injunctive relief is appropriate regarding the Injunctive Classes as a whole. Specifically, Defendants' Websites and the SEO Directory function identically with respect to all Injunction Class members. Likewise, Defendants universally fail to obtain written consent to use the identities of the Injunction Class members in connection with the Websites. Based on this common course of conduct, injunctive relief may be entered across the Injunctive Classes as a whole.

120.     References to Plaintiffs shall be deemed to include the named Plaintiffs and each member of the classes, unless otherwise indicated.

**<u>FIRST CAUSE OF ACTION</u>**
**Violation of Ala. Code § 6-5-772, *et seq*.**
**(On behalf of Plaintiff Jose Camacho and the Alabama Damages Class and Alabama Injunction Class)**
(Damages and Injunctive Relief)

121.     Plaintiff Camacho incorporates the foregoing allegations as if fully set forth herein.

122.     The Alabama Right of Publicity Act prohibits using a person's name, image, or likeness for the purpose of advertising or promoting products, merchandise, goods or services without consent. *See* Ala. Code § 6-5-772.

123.     Defendants sold and/or sell subscription-based access to Websites containing detailed reports about people, with information sourced from Defendants' SEO Directory.

124.     As described above, to promote those reports, Defendants used and/or use Plaintiff Camacho's and the identities of members of the Alabama Damages Class and Alabama Injunction Class on the Websites' various marketing pages, which display the individuals found within the SEO Directory that match the searched name, alongside uniquely identifying information such as each person's current age, location, and names of their immediate family members. This information serves to identify the individual and demonstrate that there are detailed reports in their SEO Directory for the person they searched for.

125.     The Websites' marketing pages have a commercial purpose in that they promote Defendants' Websites and encourage potential customers to purchase paid subscriptions to access reports in the SEO Directory through the Websites.

126.     Plaintiff Camacho and members of the Alabama Damages Class and Alabama Injunction Class never provided Defendants with their consent to use their identities in advertisements for Defendants' paid subscriptions to the Website.

127.     Defendants deprived Plaintiff Camacho and members of the Alabama Damages Class and Alabama Injunction Class of control over whether and how their names can be used for commercial purposes.

128.     By using their identities in advertisements to sell their services, Defendants derived economic value from Plaintiff Camacho and the Alabama Damages Class and Alabama

Injunction Class members' identities and, in turn, deprived Plaintiff Camacho and the Alabama Damages Class and Alabama Injunction Class members of such value. Defendants did not compensate Plaintiff Camacho and Alabama Damages Class and Alabama Injunction Class members for their use of their identities. This conduct resulted in injury to Plaintiff Camacho and the Alabama Damages Class and Alabama Injunction Class members.

129.    On behalf of the Alabama Damages Class, Plaintiff Camacho seeks the maximum amount of statutory damages available—$5,000 per violation—pursuant to the Alabama Right of Publicity Act for each instance in which Plaintiff Camacho and Alabama Damages Class members' identities were searched for on the Websites, and where such search resulted in a subscription to any of the Websites. Ala. Code §§ 6-5-772(a), 6-5-774(1)(a).

130.    On behalf of the Alabama Injunction Class, Plaintiff Camacho seeks a permanent injunction barring Defendants from using Plaintiff Camacho and the Alabama Injunction Class members' identities in connection with any offer for a subscription purchase on the Websites.

**SECOND CAUSE OF ACTION**
**Violation of Cal. Civ. Code § 3344**
**(On behalf of Plaintiffs Jake Webb, Rhonda Cotta, and Rogelio Ramirez for the California Injunction Class and on behalf of Plaintiff Jake Webb for the California Damages Class)**
(Damages and Injunctive Relief)

131.    Plaintiffs Webb, Cotta, and Ramirez incorporate the foregoing allegations as if fully set forth herein.

132.    The California Right of Publicity Statute prohibits and provides damages for the knowing misappropriation of an individual's name, voice, signature, photograph, or likeness in advertising or soliciting without the individual's prior consent. *See* Cal. Civ. Code § 3344(a).

133.    Defendants sold and/or sell subscription-based access to Websites containing detailed reports about people, with information sourced from Defendants' SEO Directory.

134.    As described above, to promote those reports, Defendants used and/or use the identities of Plaintiffs Cotta, Webb, and Ramirez and identities of members of the California Damages Class and California Injunction Class on the Websites' various marketing pages, which display the individuals found within the SEO Directory that match the searched name, alongside uniquely identifying information such as each person's current age, location, and names of their immediate family members. This information served and/or serves to identify the individual and demonstrate that there are detailed reports in their SEO Directory for the person they searched for.

135.    The Websites' marketing pages have a commercial purpose in that they promote Defendants' Websites and encourage potential customers to purchase paid subscriptions to access reports in the SEO Directory through the Websites.

136.    Plaintiffs Webb, Cotta, and Ramirez and members of the California Damages Class and California Injunction Class never provided Defendants with their consent to use their identities in advertisements for Defendants' paid subscriptions to the Website.

137.    Defendants deprived Plaintiffs Webb, Cotta, and Ramirez and members of the California Damages Class and California Injunction Class of control over whether and how their names can be used for commercial purposes.

138.    By using their identities in advertisements to sell their services, Defendants derived economic value from Plaintiffs Webb, Cotta, and Ramirez and the California Damages Class and California Injunction Class members' identities and, in turn, deprived Plaintiffs Webb, Cotta, and Ramirez and the California Damages Class and California Injunction Class members of such value. Defendants did not compensate Plaintiffs Webb, Cotta, and Ramirez and California Damages Class and California Injunction Class members for their use of their

identities. This conduct resulted in injury to Plaintiffs Webb, Cotta, and Ramirez and the California Damages Class and California Injunction Class members.

139.    On behalf of the California Damages Class, Plaintiff Webb seeks the maximum amount of statutory damages available—$750 per violation—pursuant to Cal. Civ. Code § 3344(a) for each instance in which Plaintiff Webb and California Damages Class members' identities were searched for on the Websites, and where such search resulted in a subscription to any of the Websites.

140.    On behalf of the California Injunction Class, Plaintiffs Webb, Cotta, and Ramirez seek a permanent injunction barring Defendants from using Plaintiffs Webb, Cotta, and Ramirez and the California Injunction Class members' identities in connection with any offer for a subscription purchase on the Websites.

**THIRD CAUSE OF ACTION**
**Violation of Ind. Code § 32-36-1, *et seq*.**
**(On behalf of Plaintiff James Anderson and the Indiana Damages Class and the Indiana Injunction Class)**
(Damages and Injunctive Relief)

141.    Plaintiff Anderson incorporates the foregoing allegations as if fully set forth herein.

142.    Indiana law prohibits the use an aspect of a person's right of publicity for a commercial purpose without having obtained previous written consent. *See* Ind. Code § 32-36-1.

143.    Defendants sold and/or sell subscription-based access to Websites containing detailed reports about people, with information sourced from Defendants' SEO Directory.

144.    As described above, to promote those reports, Defendants used and/or use Plaintiff Anderson's and identities of members of the Indiana Damages Class and Indiana Injunction Class on the Websites' various marketing pages, which display the individuals found

within the SEO Directory that match the searched name, alongside uniquely identifying information such as each person's current age, location, and names of their immediate family members. This information served and/or serves to identify the individual and demonstrate that there are detailed reports in their SEO Directory for the person they searched for.

145. The Websites' marketing pages have a commercial purpose in that they promote Defendants' Websites and encourage potential customers to purchase paid subscriptions to access reports in the SEO Directory through the Websites.

146. Plaintiff Anderson and members of the Indiana Damages Class and Indiana Injunction Class never provided Defendants with their consent to use their identities in advertisements for Defendants' paid subscriptions to the Website.

147. Defendants deprived Plaintiff Anderson and members of the Indiana Damages Class and Indiana Injunction Class of control over whether and how their names can be used for commercial purposes.

148. By using their identities in advertisements to sell their services, Defendants derived economic value from Plaintiff Anderson and the Indiana Damages Class and Indiana Injunction Class members' identities and, in turn, deprived Plaintiff Anderson and the Indiana Damages Class and Indiana Injunction Class members of such value. Defendants did not compensate Plaintiff Anderson and Indiana Damages Class and Indiana Injunction Class members for their use of their identities. This conduct resulted in injury to Plaintiff Anderson and the Indiana Damages Class and Indiana Injunction Class members.

149. On behalf of the Indiana Damages Class, Plaintiff Anderson seeks the maximum amount of statutory damages available—$1,000 per violation—pursuant to Ind. Code § 32-36-1-10 for each instance in which Plaintiff Anderson and Indiana Damages Class members' identities

were searched for on the Websites, and where such search resulted in a subscription to any of the Websites. Ind. Code § 32-36-1-10.

150.    On behalf of the Indiana Injunction Class, Plaintiff Anderson seeks a permanent injunction barring Defendants from using Plaintiff Anderson and the Indiana Injunction Class members' identities in connection with any offer for a subscription purchase on the Websites.

**FOURTH CAUSE OF ACTION**
**Violation of the Illinois Right of Publicity Act 765 ILCS 1075/1, *et seq.***
**(On behalf of Robert Fischer, Stephanie Lukis, Alessandra Fissinger-Figueroa, and Eric Carvalho for the Illinois Injunction Class and on behalf of Plaintiff Eric Carvalho for the Illinois Damages Class)**
(Damages and Injunctive Relief)

151.    Plaintiffs Fischer, Lukis, Fissinger-Figueroa and Carvalho incorporate by reference the foregoing allegations as if set forth fully herein.

152.    The Illinois Right of Publicity Act prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent. *See* 765 ILCS 1075/1, *et seq*.

153.    Defendants sold and/or sell subscription-based access to Websites containing detailed reports about people, with information sourced from Defendants' SEO Directory.

154.    As described above, to promote those reports, Defendants used and/or use the identities of Plaintiffs Fischer, Lukis, Fissinger-Figueroa, and Carvalho, and the identities of members of the Illinois Damages Class and Illinois Injunction Class on the Websites' various marketing pages, which display the individuals found within the SEO Directory that match the searched name, alongside uniquely identifying information such as each person's current age, location, and names of their immediate family members. This information served and/or serves to identify the individual and demonstrate that there are detailed reports in their SEO Directory for the person they searched for.

155.     The Websites' marketing pages have a commercial purpose in that they promote Defendants' Websites and encourage potential customers to purchase paid subscriptions to access reports in the SEO Directory through the Websites.

156.     Plaintiffs Fischer, Lukis, Fissinger-Figueroa and Carvalho and members of the Illinois Damages Class and Illinois Injunction Class never provided Defendants with their consent to use their identities in advertisements for Defendants' paid subscriptions to the Website.

157.     Defendants deprived Plaintiffs Fischer, Lukis, Fissinger-Figueroa and Carvalho and members of the Illinois Damages Class and Illinois Injunction Class of control over whether and how their names can be used for commercial purposes.

158.     On behalf of the Illinois Damages Class, Plaintiff Carvalho seeks the maximum amount of statutory damages available—$1,000 per violation—pursuant to the Illinois Right of Publicity Act for each instance in which Plaintiffs Fischer, Lukis, Fissinger-Figueroa and Carvalho and Illinois Damages Class members' identities were searched for on the Websites, and where such search resulted in a subscription to any of the Websites.

159.     On behalf of the Illinois Injunction Class, Plaintiffs Fischer, Lukis, Fissinger-Figueroa, and Carvalho seek a permanent injunction barring Defendants from using Plaintiff Anderson and the Illinois Injunction Class members' identities in connection with any offer for a subscription purchase on the Websites.

**FIFTH CAUSE OF ACTION**
**Violation of Ohio Rev. Code § 2741.01, *et seq*.**
**(On behalf of Plaintiff Justin Rogalsky and Therese Backowski for the Ohio Injunction Class and on behalf of Plaintiff Justin Rogalsky for the Ohio Damages Class)**
(Damages and Injunctive Relief)

160.    Plaintiffs Rogalsky and Backowski incorporate the foregoing allegations as if fully set forth herein.

161.    Ohio Revised Code Sec. 2741.01, *et seq*., prohibits using an individual's name for advertising or soliciting the purchase of products or services without written consent.

162.    Defendants sold and/or sell subscription-based access to Websites containing detailed reports about people, with information sourced from Defendants' SEO Directory.

163.    As described above, to promote those reports, Defendants used and/or use the identities of Plaintiffs Rogalsky, Backowski, and identities of members of the Ohio Damages Class and Ohio Injunction Class on the Websites' various marketing pages, which display the individuals found within the SEO Directory that match the searched name, alongside uniquely identifying information such as each person's current age, location, and names of their immediate family members. This information served and/or serves to identify the individual and demonstrate that there are detailed reports in their SEO Directory for the person they searched for.

164.    The Websites' marketing pages have a commercial purpose in that they promote Defendants' Websites and encourage potential customers to purchase paid subscriptions to access reports in the SEO Directory through the Websites.

165.    Plaintiffs Rogalsky, Backowski, and members of the Ohio Damages Class and Ohio Injunction Class never provided Defendants with their consent to use their identities in advertisements for Defendants' paid subscriptions to the Website.

166.    Defendants deprived Plaintiffs Rogalsky and Backowski, and members of the Ohio Damages Class and Ohio Injunction Class of control over whether and how their names can be used for commercial purposes.

35

167.     By using their identities in advertisements to sell their services, Defendants derived economic value from the identities of Plaintiffs Rogalsky and Backowski and the Ohio Damages Class and Ohio Injunction Class members and, in turn, deprived Plaintiffs Rogalsky and Backowski and the Ohio Damages Class and Ohio Injunction Class members of such value. Defendants did not compensate Plaintiffs Rogalsky and Backowski and Ohio Damages Class and Ohio Injunction Class members for their use of their identities. This conduct resulted in injury to Plaintiffs Rogalsky and Backowski and the Ohio Damages Class and Ohio Injunction Class members.

168.     On behalf of the Ohio Damages Class, Plaintiffs Rogalsky seeks the maximum amount of statutory damages available—$5,000 per violation—pursuant to Ohio Rev. Code § 2741.07 for each instance in which Plaintiff Rogalsky and Ohio Damages Class members' identities were searched for on the Websites, and where such search resulted in a subscription to any of the Websites.

169.     On behalf of the Ohio Injunction Class, Plaintiffs Rogalsky and Backowski seek a permanent injunction barring Defendants from using the identities of Plaintiffs Rogalsky and Backowski and the identities of the Ohio Injunction Class members in connection with any offer for a subscription purchase on the Websites.

### SIXTH CAUSE OF ACTION
**Violation of the Nev. Rev. Stat. § 597.790**
**(On behalf of Plaintiff Nicholas Fioritto and the Nevada Damages Class and the Nevada Injunction Class)**
(Damages and Injunctive Relief)

170.     Plaintiff Fioritto incorporates the foregoing allegations as if fully set forth herein.

171.     Nevada law prohibits the commercial use of another person's identity or likeness without consent. Nev. Rev. Stat. § 597.790.

172.     Defendants sold and/or sell subscription-based access to Websites containing detailed reports about people, with information sourced from Defendants' SEO Directory.

173.     As described above, to promote those reports, Defendants used and/or use Plaintiff Fioritto's and identities of members of the Nevada Damages Class and Nevada Injunction Class on the Websites' various marketing pages, which display the individuals found within the SEO Directory that match the searched name, alongside uniquely identifying information such as each person's current age, location, and names of their immediate family members. This information served and/or serves to identify the individual and demonstrate that there are detailed reports in their SEO Directory for the person they searched for.

174.     The Websites' marketing pages have a commercial purpose in that they promote Defendants' Websites and encourage potential customers to purchase paid subscriptions to access reports in the SEO Directory through the Websites.

175.     Plaintiff Fioritto and members of the Nevada Damages Class and Nevada Injunction Class never provided Defendants with their consent to use their identities in advertisements for Defendants' paid subscriptions to the Website.

176.     Defendants deprived Plaintiff Fioritto and members of the Nevada Damages Class and Nevada Injunction Class of control over whether and how their names can be used for commercial purposes.

177.     By using their identities in advertisements to sell their services, Defendants derived economic value from Plaintiff Fioritto and the Nevada Damages Class and Nevada Injunction Class members' identities and, in turn, deprived Plaintiff Fioritto and the Nevada Damages Class and Nevada Injunction Class members of such value. Defendants did not compensate Plaintiff Fioritto and Nevada Damages Class and Nevada Injunction Class members

for their use of their identities. This conduct resulted in injury to Plaintiff Fioritto and the Nevada

Damages Class and Nevada Injunction Class members.

178.    On behalf of the Nevada Damages Class, Plaintiff Fioritto seeks the maximum

amount of statutory damages available—$750 per violation—pursuant to Nev. Rev. Stat. §

597.790 for each instance in which Plaintiff Fioritto and Nevada Damages Class members'

identities were searched for on the Websites, and where such search resulted in a subscription to

any of the Websites.

179.    On behalf of the Nevada Injunction Class, Plaintiff Fioritto seeks a permanent

injunction barring Defendants from using Plaintiff Fioritto and the Nevada Injunction Class

members' identities in connection with any offer for a subscription purchase on the Websites.

**SEVENTH CAUSE OF ACTION**
**Violation of S.D. Codified Laws § 21-64 *et seq*.**
**(On behalf of Plaintiff Nateema Lewis and the South Dakota Damages Class the**
**South Dakota Injunction Class)**
(Damages and Injunctive Relief)

180.    Plaintiff Lewis incorporates the foregoing allegations as if fully set forth herein.

181.    South Dakota law prohibits the use of a person's name, image or likeness without

express written consent. S.D. Codified Laws § 21-64 *et seq*.

182.    Defendants sold and/or sell subscription-based access to Websites containing

detailed reports about people, with information sourced from Defendants' SEO Directory.

183.    As described above, to promote those reports, Defendants used and/or use

Plaintiff Lewis and the identities of members of the South Dakota Damages Class and South

Dakota Injunction Class on the Websites' various marketing pages, which display the individuals

found within the SEO Directory that match the searched name, alongside uniquely identifying

information such as each person's current age, location, and names of their immediate family

38

members. This information served and/or serves to identify the individual and demonstrate that there are detailed reports in their SEO Directory for the person they searched for.

184.     The Websites' marketing pages have a commercial purpose in that they promote Defendants' Websites and encourage potential customers to purchase paid subscriptions to access reports in the SEO Directory through the Websites.

185.     Plaintiff Lewis and members of the South Dakota Damages Class and South Dakota Injunction Class never provided Defendants with their consent to use their identities in advertisements for Defendants' paid subscriptions to the Website.

186.     Defendants deprived Plaintiff Lewis and members of the South Dakota Damages Class and South Dakota Injunction Class of control over whether and how their names can be used for commercial purposes.

187.     By using their identities in advertisements to sell their services, Defendants derived economic value from Plaintiff Lewis and the South Dakota Damages Class and South Dakota Injunction Class members' identities and, in turn, deprived Plaintiff Lewis and the South Dakota Damages Class and South Dakota Injunction Class members of such value. Defendants did not compensate Plaintiff Lewis and South Dakota Damages Class and South Dakota Injunction Class members for their use of their identities. This conduct resulted in injury to Plaintiff Lewis and the South Dakota Damages Class and South Dakota Injunction Class members.

188.     On behalf of the South Dakota Damages Class, Plaintiff Lewis seeks the maximum amount of statutory damages available—$1,000 per violation—pursuant to S.D. Codified Laws § 21-64-5 for each instance in which Plaintiff Lewis and South Dakota Damages

Case: 1:19-cv-04892 Document #: 273 Filed: 09/08/23 Page 40 of 42 PageID #:3417

Class members' identities were searched for on the Websites, and where such search resulted in a subscription to any of the Websites.

189.    On behalf of the South Dakota Injunction Class, Plaintiff Lewis seeks a permanent injunction barring Defendants from using Plaintiff Lewis and the South Dakota Injunction Class members' identities in connection with any offer for a subscription purchase on the Websites.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that the Court enter an Order:

A.    Certifying the classes as defined above, appointing Plaintiffs Robert Fischer, Stephanie Lukis, Alessandra Fissinger-Figueroa, Eric Carvalho, Jose Camacho, Jake Webb, James Anderson, Justin Rogalsky, Nateema Lewis, and Nicholas Fioritto as class representatives as defined above, and appointing their counsel as class counsel;

B.    Declaring that Defendants' actions described herein constitute a violation of 765 ILCS 1075/1, *et seq.*; Ala. Code § 6-5-770, *et seq.*; Cal. Civ. Code § 3344; Ind. Code § 32-36-1 *et seq.*; Ohio Rev. Code § 2741.01, *et seq.*; Nev. Rev. Stat. § 597.790; and S. D. Codified Laws § 21-64 *et seq*.

C.    Awarding injunctive and other equitable relief as necessary to protect the interest of the class, including, *inter alia*, prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D.    Awarding the greater of actual damages, including the profits derived from the unauthorized use of same, or statutory damages in accordance with each states' right of publicity law per violation of the members of the class;

E.    Awarding punitive damages where applicable;

F.    Awarding Plaintiffs and Class members their reasonable litigation expenses and attorney's fees;

G.    Awarding Plaintiffs and Class members pre- and post-judgment interest; and

H.    Granting such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues for which a jury trial is allowed.

Respectfully Submitted,

Dated: August 30, 2023         /s/ DRAFT _____

Roberto Luis Costales
rlc@beaumontcostales.com
William H. Beaumont
whb@beaumontcostales.com
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, IL 60605
Tel: 773.831.8000

Benjamin Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Ari Scharg
ascharg@edelson.com
Michael W. Ovca
movca@edelson.com
EDELSON PC
350 North Lasalle Street, 14th Floor
Chicago, IL 60654
Tel: 312.589.6370

Yaman Salahi
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.638.9903

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
1300 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

Kevin Tucker
ktucker@eastendtrialgroup.com
Kevin Abramowicz
kabramowicz@eastendtrialgroup.com
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: 412.877.5220

*Attorneys for Plaintiffs*