**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT FISCHER, STEPHANIE LUKIS, ALESSANDRA FISSINGER-FIGUEROA, ERIC CARVALHO, JOSE CAMACHO, RHONDA COTTA, ROGELIO RAMIREZ, JAKE WEBB, JAMES ANDERSON, THERESE BACKOWSKI, JUSTIN ROGALSKY, NATEEMA LEWIS, and NICHOLAS FIORITTO, individually and on behalf of all others similarly situated, | |
| | Case No. 19-cv-4892 |
| *Plaintiffs*, | Hon. Manish S. Shah |
| v. | |
| INSTANT CHECKMATE LLC, TRUTHFINDER LLC, INTELIUS LLC, THE CONTROL GROUP MEDIA COMPANY, LLC, and PEOPLECONNECT, INC., | |
| *Defendants*. | |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM OF LAW IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.      **INTRODUCTION**..................................................................................1

II.     **BACKGROUND**..................................................................................3

     A.    **The Relevant Right of Publicity Statutes**............................3

     B.    **Plaintiffs' Allegations**............................................................4

     C.    **Litigation, Negotiation, and Settlement**..............................5

III.    **TERMS OF THE SETTLEMENT AGREEMENT**........................11

     A.    **Class Definitions**..................................................................11

     B.    **Monetary Relief.**..................................................................13

     C.    **Prospective Relief.**................................................................14

     D.    **Payment of Settlement Notice and Administrative Costs**................14

     E.    **Payment of Attorneys' Fees, Costs, and Incentive Awards**............15

     F.    **Release of Liability**..............................................................15

IV.    **THE CLASS NOTICE FULLY SATISFIED DUE PROCESS**......16

V.     **THE SETTLEMENT WARRANTS FINAL APPROVAL**............18

     A.    **Plaintiffs and Class Counsel Adequately Represented the Class.**..................19

     B.    **The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations**..................21

     C.    **The Settlement Treats Class Members Equally**..................23

     D.    **The Relief Secured for the Settlement Class Is Adequate and Warrants Final Approval**..................24

          1.    **The Settlement provides exceptional relief**..................25

          2.    **The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval**..................27

ii

3.     **The method of distributing relief to the Settlement Classes is effective and supports final approval** ....................................................................30

4.     **The terms of the requested attorneys' fees are reasonable** .................31

E.     **The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement** .............................................................................32

1.     **The Settlement Classes' reaction favors approval** ...............................33

2.     **Experienced counsel's belief that the Settlement is beneficial to the Settlement Classes weighs in favor of final approval** ...........................34

3.     **The Settlement raises no red flags** .........................................................35

VI.     **CONCLUSION** ...............................................................................................36

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)...........................................................................................16

*Frank v. Gaos*,
    139 S. Ct. 1041 (2019).....................................................................................27

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999).........................................................................................23

**United States Circuit Court of Appeals Cases**

*Camacho v. PeopleConnect, Inc.*,
    No. 22-55735 (9th Cir.) .....................................................................................7

*Dancel v. Groupon, Inc.*,
    949 F.3d 999 (7th Cir. 2019) ...........................................................................29

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ...........................................................................35

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019)............................................................................29

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ...........................................................................32

*In re Google Referrer Header Privacy Litig.*,
    869 F.3d 737 (9th Cir. 2017) .....................................................................26, 27

*In re Instant Checkmate LLC*,
    No. 22-8005 (7th Cir. May 13, 2022) ................................................................6

*In re NCAA Student-Athlete Concussion Injury Litig.*,
    332 F.R.D. 202 (N.D. Ill. 2019)........................................................................19

*Knapke v. PeopleConnect, Inc.*,
    38 F.4th 824 (9th Cir. June 29, 2022) ...............................................................7

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) .........................................................................29

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ........................................................ 18

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ........................................................ 18

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ........................................................19

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*,
    309 F.3d 978 (7th Cir. 2002) ........................................................18

*United States v. Dish Network L.L.C.*,
    954 F.3d 970 (7th Cir. 2020) ........................................................ 29

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ...................................................... *passim*

**<u>United States District Court Cases</u>**

*Adkins v. Facebook, Inc.*,
    No. 18-cv-05982-WHA (N.D. Cal.) ............................................... 27

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ...........................21

*Am. Int'l Grp., Inc., v. ACE INA Holdings, Inc.*,
    No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)...........................33

*Backowski v. PeopleConnect, Inc.*,
    No. 21-cv-00115 (W.D. Wash.)................................................... *passim*

*Butler v. Whitepages*,
    No. 19-cv-04871 (N.D. Ill.) .................................................... 25, 26

*Camacho v. PeopleConnect, Inc.*,
    No. 22-cv-00209 (S.D. Cal.)..................................................... *passim*

*Camacho v. The Control Group Media Company, LLC*,
    No. 21-cv-01954 (S.D. Cal.)..................................................... *passim*

*Camacho v. The Control Group Media Company, LLC*,
    No. 21-cv-01957 (S.D. Cal.)..................................................... *passim*

*Chambers v. Together Credit Union*,
    No. 19-CV-00842-SPM, 2021 WL 1948453 (S.D. Ill. May 14, 2021) ........................ 20

*Charvat v. Valente*,
No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ..................................22, 30

*Crumpton v. Octapharma Plasma, Inc.*,
No. 19-cv-08402 (N.D. Ill.) ............................................................................................31

*Fischer v. Instant Checkmate LLC*,
No. 19 C 4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ................................... *passim*

*Fissinger-Figueroa v. PeopleConnect, Inc.*,
No. 22-cv-04184 (N.D. Ill.) ....................................................................................... 4, 7, 9

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (N.D. Cal. 2013) ..................................................................... 25, 26

*Goldsmith v. Tech. Sols. Co.*,
No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ........................................ 27

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ....................................................................... 25, 30

*In re Google LLC Street View Elec. Commc'ns Litig.*,
611 F. Supp. 3d 872 (N.D. Cal. 2020) ............................................................................ 27

*Krause v. Rocketreach*,
No. 21-cv-01938 (N.D. Ill.) ................................................................................25, 26, 33

*La Fronza v. Instant Checkmate*,
No. 2021-cv-03025 (N.D. Ill.) ......................................................................................... 7

*La Fronza v. PeopleConnect*,
No. 2021-cv-03027 (N.D. Ill.) ......................................................................................... 7

*La Fronza v. PeopleConnect, Inc., et al.*,
No. 2021-cv-00280 (N.D. Ill.) ......................................................................................... 7

*La Fronza v. Truthfinder*,
No. 2021-cv-03026 (N.D. Ill.) ......................................................................................... 7

*Lukis v. Whitepages Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ..............................................................................28

*McDaniel v. Qwest Commc'ns Corp.*,
No. 05 C 1008, 2011 WL 13257336 (N.D. Ill. Aug. 29, 2011) ........................................33

*Ramirez v. The Control Group Media Company, LLC*,
   No. 22-cv-01128 (S.D. Cal.) ....................................................... 4, 7, 9

*Ramos v. ZoomInfo Techs., LLC*,
   No. 21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021)...........................................28

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ...........................................34

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................... *passim*

*Sessa v. Ancestry.com Operations Inc.*,
   No. 2:20-cv-02292, 2021 WL 4245359 (D. Nev. Sept. 16, 2021)...................................28

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ...............................19, 21, 23

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 C 8461, 2018 WL 4659274 (N.D. Ill. Sept. 28, 2018)...........................................20

*Thome v. NOVAtime Tech., Inc.*,
   No. 19-cv-6256 (N.D. Ill. Mar. 8, 2021) ...........................................................34

*T.K. Through Leshore v. Bytedance Tech. Co.*,
   No. 19-CV-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022)................................ *passim*

*Young v. Rolling in the Dough, Inc.*,
   No. 1:17-CV-07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ...............................22, 30

## State Court Cases

*Kusinski v. ADP, LLC*,
   2017-CH-12364 (Cir. Ct. Cook Cnty., Ill.)........................................................34

*Prelipceanu v. Jumio Corp.*,
   2018-CH-15883 (Cir. Ct. Cook Cnty., Ill.)........................................................34

*Sekura v. L.A. Tan Enters., Inc.*,
   2015-CH-16694 (Cir. Ct. Cook Cnty., Ill.)........................................................33

## Miscellaneous Authority

4 NEWBERG ON CLASS ACTIONS § 13:53 (6th ed.) ........................................................30

28 U.S.C. § 1292..........................................................................................5

vii

765 ILCS 1075 .................................................................................................3, 4

Ala. Code § 6-5-770 .............................................................................................3

Ala. Code § 6-5-771 .............................................................................................3

Ala. Code § 6-5-772 .............................................................................................3

Ala. Code § 6-5-774 .............................................................................................3

Cal. Civ. Code § 3344 .......................................................................................3, 4

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf .................16

Fed. R. Civ. P. 23 ..................................................................................... *passim*

Fed. Trade Comm'n, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns (Sept. 2019) ...........................................................................33

Ind. Code § 32-36-1 .........................................................................................3, 4

Nev. Rev. Stat. § 597.770 .....................................................................................3

Nev. Rev. Stat. § 597.790 .....................................................................................3

Nev. Rev. Stat. § 597.810 .....................................................................................4

Ohio Rev. Code § 2731.01 ....................................................................................3

Ohio Rev. Code § 2741.01 ....................................................................................3

Ohio Rev. Code § 2741.07 ....................................................................................4

S.D. Codified Laws § 21-64-1 ...........................................................................3, 4

## I.    INTRODUCTION

Defendants are operators of "people search" websites that provide biographic information about individuals, including their names and where they live. Plaintiffs filed their cases alleging that Defendants used their names and other identifying information to solicit subscription purchases on Defendants' websites without Plaintiffs' consent in violation of multiple states' right of publicity laws. After years of litigation in courts around the country, as well as months of negotiations facilitated by a respected third-party neutral, Plaintiffs reached a class-wide settlement that would resolve all litigation regarding the Websites. Plaintiffs filed a consolidated complaint before this Court to effectuate the proposed resolution and sought preliminary approval of the Class Action Settlement Agreement, which the Court granted.[1] As explained below, the Settlement provides significant financial and non-financial relief to Settlement Payment Class Members and Multistate Injunction Settlement Class Members (collectively, the "Settlement Classes"). The comprehensive direct notice, Class Counsel's supplemental notice program, and reminder notices reached more than 95% of the Settlement Payment Classes and achieved an excellent claims rate of over 15%. Now that the notice process is finished, not a single objection was received, and only two people sought to opt out. Plaintiffs now respectfully request that the Court grant final approval to this exceptional Settlement.

Foremost, the Settlement's financial relief represents the largest overall settlement involving right of publicity claims to date. The Settlement creates seven non-reversionary State-Specific Settlement Funds totaling $10,102,897 corresponding with the Settlement Payment Class for each state—Alabama, California, Illinois, Indiana, Nevada, Ohio, and South Dakota.

---

[1]    Capitalized terms used in this motion are defined in the Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement"), attached as Exhibit 1.

Unsurprisingly, given the comprehensive notice and outstanding relief available, the Settlement has seen an excellent participation rate: overall, there have been 12,880 Approved Claims. These are claims that were actually submitted by Settlement Payment Class Members who are entitled to payment—for a claims rate of 15.44% across the Settlement Payment Classes. This is a marked increase from the aggregate 2.59% claims rate achieved before Class Counsel sought to issue supplemental notice. (Dkt. 274.) Based on this claims rate, Settlement Payment Class Members can expect to receive approximate settlement payment amounts as follows: Alabama, $953.26; California, $148.18; Illinois, $745.01; Indiana, $197.20; Nevada, $180.23; Ohio, $524.88; and South Dakota, $215.73. Underscoring the Settlement Classes' positive response is the fact that there were *no* objections to the Settlement, and only two individuals opted out of their respective Settlement Payment Classes.

The Settlement provides significant non-monetary benefits, as well. For individuals whose identities are in Defendants' SEO Directory, but whose display did not result in a subscription purchase, Defendants will stop displaying these individuals' names on any page on their websites that includes a subscription offer to Defendants' products or services. This puts a stop to the underlying conduct that led to the lawsuits. Critically, Multistate Injunction Settlement Class Members who are not Settlement Payment Class Members will receive these benefits without releasing Defendants from monetary damages claims relating to any alleged use of their identities.

For these reasons, and as detailed below, each of the relevant Rule 23 factors to weigh when considering granting final approval to a class settlement support final approval here. Thus, Plaintiffs respectfully request that the Court grant final approval to the Settlement and allow relief to be distributed to the Settlement Classes.

## II.     BACKGROUND

Though Plaintiffs have detailed this case's background in their preliminary approval motion and motion for attorneys' fees, (dkts. 268, 278), it is set forth in brief below for ease of reference.

### A.     The Relevant Right of Publicity Statutes.

Alabama, California, Illinois, Indiana, Nevada, Ohio, and South Dakota have each passed a statutory scheme effectively codifying common law restrictions on the use of a person's right to control their identity. Specifically, these statutes prohibit the use of an individual's identity for a commercial purpose without first obtaining their prior consent. *See* Ala. Code § 6-5-770, *et seq.* (the "ARPA"); Cal. Civ. Code § 3344, *et seq.* (the "CRPS"); 765 ILCS 1075/1, *et seq.* (the "IRPA"); Ind. Code § 32-36-1, *et seq.* (the "InRPA"); Nev. Rev. Stat. § 597.790 (the "NRPS"); Ohio Rev. Code § 2731.01, *et seq.* (the "ORPA"); S.D. Codified Laws § 21-64, *et seq.* (the "SDRPS"). An "identity" includes attributes or indicia that serve to identify an individual to a reasonable person, and can include a name, photograph, likeness, or voice. Ala. Code § 6-5-771(1); Cal. Civ. Code § 3344(a); 765 ILCS 1075/5; Ind. Code Ann. § 32-36-1-6; Nev. Rev. Stat. Ann. § 597.790(1); Ohio Rev. Code Ann. §§ 2741.01(A), (C); S.D. Codified Laws § 21-64-1(2). An identity is used in commerce when it is used in or on advertisements or to promote a good or service. Ala. Code § 6-5-772(a); Cal. Civ. Code § 3344(a); 765 ILCS 1075/5; Ind. Code Ann. § 32-36-1-2; Nev. Rev. Stat. Ann. § 597.770(1); Ohio Rev. Code Ann. § 2741.01(B); S.D. Codified Laws § 21-64-1(1). Each statute includes a private right of action that allows individuals whose identities were used without their permission to recover statutory damages in particular amounts; actual out-of-pocket damages are not required to recover these statutory damages. Ala. Code §§ 6-5-772(a), 6-5-774(1)(a) (providing $5,000 in statutory damages); Cal.

Civ. Code § 3344(a) (providing for $750 in statutory damages); 765 ILCS 1075/40 (providing for $1,000 in statutory damages); Ind. Code Ann. § 32-36-1-10(1)(a) (providing for $1,000 in statutory damages); Nev. Rev. Stat. Ann. § 597.810(1)(b)(1) (providing for $750 in statutory damages); Ohio Rev. Code Ann. § 2741.07(A)(1)(b) (providing for $2,500 in statutory damages); S.D. Codified Laws § 21-64-5(2) (providing for $1,000 in statutory damages).

### B. Plaintiffs' Allegations.

Beginning with this case in 2019, Plaintiffs began filing lawsuits around the country on behalf of state-specific classes asserting violations of particular states' right of publicity laws. *Fissinger-Figueroa v. PeopleConnect, Inc.*, No. 22-cv-04184 (N.D. Ill.) (asserting IRPA claims on behalf of Illinois class); *Ramirez v. The Control Group Media Co., LLC*, No. 22-cv-01128 (S.D. Cal.) (asserting CRPS claims on behalf of California class); *Camacho v. PeopleConnect, Inc.*, No. 22-cv-00209 (S.D. Cal.) (asserting CRPS claims on behalf of California class and ARPA claims on behalf of Alabama class); *Backowski v. PeopleConnect, Inc.*, No. 21-cv-00115 (W.D. Wash.) (asserting ORPA claims on behalf of Ohio class); *Camacho v. The Control Group Media Co., LLC*, No. 21-cv-01957 (S.D. Cal.) (asserting CRPS claims on behalf of California class and ARPA claims on behalf of Alabama class); *Camacho v. The Control Group Media Co., LLC*, No. 21-cv-01954 (S.D. Cal.) (asserting CRPS claims on behalf of California class and ARPA claims on behalf of Alabama class); (Dkt. 1-1 (asserting IRPA claims on behalf of Illinois class)).

The same basic facts underlie all of the alleged violations. Defendants operate several "people search" websites at www.instantcheckmate.com, www.truthfinder.com, www.intelius.com, and www.ussearch.com. (Second Amended Complaint, dkt. 273 ("SAC"), ¶ 15.) When a user performs a search, Defendants' Websites return a list of matched results that

include specific identifying information (such as full name, locations they have lived, and relatives) about the searched person. (*Id.*) Information from these preliminary search results is then saved in SEO Directories, which Defendants maintain, and which can be searched by users of Defendants' Websites. (*Id.* ¶ 17.) These matched results act as "free preview" pages that encourage users to obtain more information on the searched-for individual by purchasing "premium" memberships that allow paying users to obtain information beyond what is provided in the free previews. (*Id.* ¶ 18.) Plaintiffs allege that the use of their and others' identities to induce purchases for subscriptions for full access on the Websites without first obtaining their consent violates their respective state's right of publicity law. (*See generally* SAC.) Defendants have denied these allegations.

### C. Litigation, Negotiation, and Settlement.

After Plaintiffs Fischer and Lukis filed their complaint against Defendant Instant Checkmate LLC in the Circuit Court of Cook County, Illinois, Instant Checkmate LLC ("Instant Checkmate") removed the case to this Court and moved to dismiss the action. Following briefing, the Court (then through Judge Feinerman) denied Instant Checkmate's motion and allowed Plaintiffs' claims to proceed. (Dkt. 36.) Instant Checkmate then moved for (i) reconsideration of the Court's denial of the motion to dismiss, (dkt. 43); (ii) leave to appeal pursuant to 28 U.S.C. § 1292(b), (dkts. 44–45); and (iii) summary judgment, (dkts. 39–41). After additional briefing, the Court denied these motions in their entirety. (Dkts. 88–89.)

The Parties also conducted significant discovery. Fischer and Lukis issued written discovery, to which Instant Checkmate responded with thousands of pages of documents. (Declaration of Phillip L. Fraietta in Support of the Pls.' Mot. for Prelim. App., dkt. 268-2 ("Prelim. App. Decl."), ¶ 4.) Instant Checkmate issued its own written discovery to Fischer and

Lukis, which they also answered. (*Id.*) As written discovery progressed, Class Counsel took multiple depositions of key personnel in connection with the operation of the at-issue website, the data that Instant Checkmate maintained, and the display of individuals' information. (*Id.*) From this discovery, Plaintiffs were able to obtain key information such as the size of the directory that Instant Checkmate maintained, and the profile views and purchase metrics that it tracked. (*Id.*)

With discovery complete in *Fischer*, Fischer and Lukis moved for class certification, which Instant Checkmate opposed. The Court ultimately certified two classes. (Dkt. 193 at 31-32.) Instant Checkmate sought interlocutory review of the class certification order under Rule 23(f), which Fischer and Lukis opposed; the Seventh Circuit denied Instant Checkmate's petition. *In re Instant Checkmate LLC*, No. 22-8005, dkt. 9 (7th Cir. May 13, 2022). Class Counsel and Instant Checkmate thereafter litigated the appropriate method of class notice. (Dkts. 203, 208.) In ruling on this dispute, the Court adopted Class Counsel's plan as to the Rule 23(b)(3) class, sustained Instant Checkmate's objections for the requirement of individual notice as to the Rule 23(b)(2) class, and appointed Simpluris as notice administrator. (Dkt. 214.) Instant Checkmate later moved to decertify the "SEO Directory Class" in *Fischer*, citing supposed factual and legal developments since the class was certified; this motion remained pending when the settlement was reached. (Dkts. 243-246.)

Interspersed with the litigation and discovery efforts in *Fischer* described above, other Plaintiffs—also represented by Class Counsel—began filing and litigating their respective cases elsewhere in the country in a multi-front effort.[2] (Prelim. App. Decl. ¶ 5.) Class Counsel briefed

---

[2]    As explained in the Motion for Leave to Amend Complaint, the operative complaint consolidates the following cases into a single action before this Court which has overseen the

and defeated Defendants' motions to dismiss, strike class allegations, and to compel arbitration. *See, e.g.*, *Camacho*, 22-cv-00209, dkt. 24 (S.D. Cal. July 18, 2022) (denying Defendants' motion to dismiss); *Camacho*, 21-cv-01954, dkt. 32 (S.D. Cal. July 18, 2022) (same); *Camacho*, 21-cv-01957, dkt. 31 (S.D. Cal. July 18, 2022) (same). In so doing, Class Counsel obtained decisions from multiple courts that rejected Defendants' arguments that Class Counsel's searching for Plaintiffs on the Websites automatically bound them to arbitration the dispute, or that Plaintiffs' pleadings were barred by Section 230 of the Communication Decency Act, the First Amendment, the Dormant Commerce Clause, or multiple exceptions to the applicability of each of the right of publicity laws. Class Counsel also obtained a favorable ruling in *Knapke*, 38 F.4th 824, rejecting the type of arbitration arguments that Defendants made here and clearing the path for subsequent rulings in the Additional Litigation. With these victories in hand, Class Counsel began discovery into arbitrability in the Additional Litigation where the question had yet to be resolved. *See Backowski*, dkt. 38 (W.D. Wash. July 11, 2022) (ordering arbitration related discovery). And where motions on the pleadings had been resolved in Plaintiffs' favor, Class Counsel prepared to litigate the pending interlocutory appeals. *See Camacho*, No. 21-cv-01954, *appeal docketed,* No. 22-55735 (9th Cir. Aug. 3, 2022).

---

first-filed suit (*Fischer*) since its inception, (dkt. 266): *Fissinger-Figueroa*, No. 22-cv-04184 (N.D. Ill.); *Backowski*, No. 21-cv-00115 (W.D. Wash.); *Camacho*, No. 22-cv-00209 (S.D. Cal.); *Camacho*, No. 21-cv-01957 (S.D. Cal.); *Camacho*, No. 21-cv-01954 (S.D. Cal.); and *Ramirez*, No. 22-cv-01128 (S.D. Cal.) (collectively, the "Additional Litigation"). These cases encapsulated the claims involving the Websites that were litigated in motions to dismiss in *La Fronza v. Instant Checkmate*, No. 21-cv-03025 (N.D. Ill.); *La Fronza v. Truthfinder*, No. 21-cv-03026 (N.D. Ill.); *La Fronza v. PeopleConnect*, No. 21-cv-03027 (N.D. Ill.); and *La Fronza v. PeopleConnect, Inc., et al.*, No. 21-cv-00280 (N.D. Ill.)—all cases that were dismissed in light of the ongoing Additional Litigation. All of these cases also build on the outcome that Class Counsel achieved in *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824 (9th Cir. 2022), in which the Ninth Circuit rejected the defendant's arguments on the applicability of an arbitration clause, which would have equal relevance to this case.

After obtaining certification of two classes in *Fischer*, Fischer, Lukis, and Instant Checkmate began exploring the possibility of settling the *Fischer* Action in 2022. (Prelim. App. Decl. ¶ 6.) To facilitate these discussions, they agreed to seek the assistance of a third-party neutral, the Hon. Sidney Schenkier (ret.) of JAMS Chicago. (*Id.*) After exchanging mediation briefs setting forth their respective positions, the Parties attended a full-day, in-person mediation on October 27, 2022. (*Id.*) Despite multiple rounds of back-and-forth negotiations and productive discussions, the mediation was ultimately unsuccessful. (*Id.*) Nevertheless, Fischer, Lukis, and Instant Checkmate agreed to attend a follow-up mediation with Judge Schenkier on December 6, 2022. (*Id.* ¶ 7.) That mediation also failed to result in a resolution. (*Id.*) The Parties once more agreed to continue their settlement discussions in the months following the second mediation, which continued with the assistance of Judge Schenkier through multiple teleconferences. (*Id.*)

These original settlement discussions centered on the *Fischer* Action, and as part of those efforts, Class Counsel examined Instant Checkmate's finances, which demonstrated that obtaining complete relief for the certified class (which included virtually every Illinois resident) would not be viable at trial or in a settlement. (*Id.* ¶ 8.) Facing this limitation, Class Counsel turned to negotiating a resolution that would provide significant relief to the individuals whose profiles had resulted in a purchase, while simultaneously avoiding an outcome that would preclude recovery and preserving the rights of every individual who will benefit from the injunctive relief to sue for monetary damages. (*Id.*)

To that end—and understanding that Instant Checkmate's sibling companies Truthfinder and Intelius and former owner of some of the Websites, PeopleConnect, Inc., were also facing suits in the Additional Litigation and interested in a potential resolution—the scope of the settlement negotiations changed. (*Id.* ¶ 9.) After Defendants provided information about the size

of the potential settlement classes in other states (focused on individuals whose identities had resulted in a purchase), Plaintiffs' counsel issued non-contingent settlement proposals for states with viable right of publicity claims, including Alabama, California, Illinois, Indiana, Nevada, Ohio, and South Dakota. (*Id.* ¶ 10.) Each of the demands represented static percentages of the statutory damages available under each state's right of publicity law. (*Id.*) Defendants were free to reject or accept any of these proposals on an individual basis. (*Id.*) The Parties then engaged in weeks of additional back-and-forth negotiations attempting to agree on the appropriate percentages of damages, and the resulting size of the State-Specific Settlement Funds. (*Id.*) The Parties concluded their negotiations and ultimately reached a binding term sheet containing the Settlement's material points that would resolve all litigation regarding the Websites pending against Defendants. (*Id.*)

The Parties spent the next few months finalizing the full written settlement agreement detailing the Settlement's terms. (*Id.* ¶ 11.) This included an agreement to seek modification of the SEO Directory Class in the *Fischer* Action to align with the Illinois Injunction Settlement Class. (*Id.*) Plaintiffs then promptly moved for preliminary approval of the Settlement.[3] (Dkt. 268.) Class Counsel simultaneously filed an amended complaint that brought all litigation against Defendants related to the Websites before this Court, allowing the approval proceedings to efficiently proceed before one Court overseeing the longest-pending action. (Dkt. 273.) The Court granted leave to file the Second Amended Complaint and granted preliminary approval to

---

[3]     All courts in which Additional Litigation was pending have been apprised of the Settlement. *Fissinger-Figueroa*, No. 22-cv-04184, dkt. 32 (N.D. Ill. Sept. 14, 2023); *Backowski*, No. 21-cv-00115, dkt. 50 (W.D. Wash. Sep. 15, 2023), *Camacho*, No. 21-cv-01954, dkt. 46 (S.D. Cal. Sept. 14, 2023) (also including *Camacho*, No. 22-cv-00209 (S.D. Cal.) and *Camacho*, No. 21-cv-01957 (S.D. Cal.), which were consolidated therein); *Ramirez*, No. 22-cv-01128, dkt. 34 (S.D. Cal. Sept. 14, 2023).

the Settlement on September 8, 2023. (Dkts. 271, 272.)

Following preliminary approval, Class Counsel has worked to fulfill the terms of the Preliminary Approval Order and then some: Class Counsel has monitored the reach of and response to the Notice campaign and considered how to increase engagement. (Declaration of Michael W. Ovca ("Ovca Decl."), attached as Exhibit 2, ¶ 3.) This included requesting the Administrator skip trace the email addresses associated with Settlement Payment Class Members in the Class List to determine whether there were additional or updated email addresses to which Notice could be sent. (*Id.*) After consulting with the Settlement Administrator and notifying Defendants, the Settlement Administrator carried out this process, which resulted in Notice reaching more than 40,000 new email addresses associated with the Settlement Payment Class Members. (*Id.*) When those notice efforts resulted in a 2.59% aggregate claims rate, Class Counsel filed a Motion to Modify Dates in the Preliminary Approval Order, (dkt. 274), in which they proposed sending additional Notice to the Settlement Payment Classes via U.S. Mail and extending the deadlines to file claims or object or opt out of the Settlement. Class Counsel committed to reducing its fee request to account for any notice costs that exceeded the original cost estimate for Notice so that the Settlement Payment Classes would not need to pay for it. (*Id.*) After the Court granted the motion, Class Counsel ensured this was carried out, maximizing the success of the Notice campaign and driving up claims rates more than fivefold. (Ovca Decl. ¶ 4.) As a result of these efforts, each of the Settlement Payment Classes saw exceptional claims rates. Most recently, Class Counsel filed Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards on November 17, 2023, and ensured that it was posted on the Settlement Website. (Dkt. 278.) In response to this Notice campaign, and after having an opportunity to review the requests for Plaintiffs' incentive awards and Class Counsel's fees, neither the

Administrator nor Class Counsel received any objections, and only received two requests to opt out of the Settlement. (Ovca Decl. ¶ 5.)

## III.    TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth fully in the Class Action Settlement Agreement and are briefly summarized here.

### A.    Class Definitions.

At preliminary approval the Court certified the following Multistate Inunction Classes:

**Alabama Injunction Settlement Class:** all Alabama residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (Dkt. 272 ¶ 3.)

**California Injunction Settlement Class:** all California residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.*)

**Illinois Injunction Settlement Class:** all Illinois residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.*)

**Indiana Injunction Settlement Class:** all Indiana residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.*)

**Nevada Injunction Settlement Class:** all Nevada residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.*)

**Ohio Injunction Settlement Class:** all Ohio residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.*)

**South Dakota Injunction Settlement Class:** all South Dakota residents for whom Instant Checkmate can generate a name, age, and one or more location(s) and relative(s) in either the SEO Directory or the Search Results of Defendants' Websites. (*Id.*)

Excluded from each respective Multistate Injunction Settlement Class are: (1) any Judge

or Magistrate presiding over this Action and members of their families, and (2) Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest. (*Id.*)

The Court also certified the following Settlement Payment Classes at preliminary approval:

**Alabama Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after August 11, 2019, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an Alabama address per the Defendants' records. (*Id.* ¶ 6.)

**California Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after August 11, 2019, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed a California address per the Defendants' records. (*Id.*)

**Illinois Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or US Search on or after June 21, 2018, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation or for whom a report was purchased after a follow-up e-mail was sent, that displayed an Illinois address per the Defendants' records. (*Id.*)

**Indiana Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after December 6, 2020, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an Indiana address per the Defendants' records. (*Id.*)

**Nevada Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after December 6, 2018, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed a Nevada address per the Defendants' records. (*Id.*)

12

**Ohio Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after January 29, 2017, through the date of preliminary approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an Ohio address per the Defendants' records. (*Id.*)

**South Dakota Settlement Payment Class:** all individuals in the SEO Directory who were either searched for or otherwise navigated to on Instant Checkmate, Truthfinder, Intelius, or U.S. Search on or after December 6, 2019, through the date of Preliminary Approval, and for whom a report was purchased through the SEO Directory as a result of the search or navigation that displayed an South Dakota address per the Defendants' records. (*Id.*)

Excluded from each respective Settlement Payment Class are: (1) any Judge or Magistrate presiding over this Action and members of their families, (2) Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, (3) persons who properly execute and file a timely request for exclusion from any respective Settlement Payment Class, and (4) the legal representatives, successors, or assigns of any such excluded persons. (*Id.*)

### B. Monetary Relief.

Pursuant to the Settlement, Defendants have established non-reversionary State-Specific Settlement Funds for each of the Settlement Payment Classes in the following amounts: Alabama, $877,500; California, $1,003,556; Illinois, $6,245,148; Indiana, $106,695; Nevada, $119,205; Ohio, $1,727,888; and South Dakota, $22,905. (Settlement §§ 1.7, 1.13, 1.31, 1.36, 1.43, 1.51, 1.66.) Settlement Class Payment Members who submitted an Approved Claim will be entitled to a *pro rata* portion of their respective State-Specific Settlement Fund after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive award, if approved by the Court. (*Id.* § 2.1(a).) There are 588 Alabama, 4,052 California, 5,372 Illinois, 328 Indiana, 394 Nevada, 2,084 Ohio, and 62 South Dakota Settlement Payment Class Members

who submitted Approved Claims. (Declaration of Jacob Kamenir of Simpluris, Inc. ("Kamenir Decl."), attached as Exhibit 3, ¶ 16.)

Any uncashed checks or electronic payments unable to be processed within 180 days of issuance shall revert to their respective State-Specific Settlement Funds, to be distributed *pro rata* to claiming Settlement Payment Class Members from that State-Specific Settlement Fund, if practicable, or in a manner otherwise directed by the Court upon application made by Class Counsel. (Settlement § 2.1(e).) No portion of any State-Specific Settlement Fund will revert to Defendants should the settlement be approved. (*Id.* §§ 1.7, 1.13, 1.31, 1.36, 1.43, 1.51, 1.66.)

### C. Prospective Relief.

Defendants agree not to display the name of any Settlement Payment Class or Multistate Injunction Settlement Class Member whose address, according to Defendants' SEO Directory, remains in Alabama, California, Illinois, Indiana, Nevada, Ohio, or South Dakota on any page of the Instant Checkmate, Intelius, Truthfinder, and U.S. Search websites that includes a subscription offer to Defendants' products or services. (*Id.* § 2.3(a).) Defendants will implement this change within thirty (30) days of the entry of a Final Approval Order. (*Id.* § 2.3(b).)

### D. Payment of Settlement Notice and Administrative Costs.

All Notice and Settlement Administration shall be paid from the respective State-Specific Settlement Funds on a proportional basis. (*Id.* §§ 1.7, 1.13, 1.31, 1.36, 1.43, 1.51, 1.66.) This includes all expenses incurred by the Settlement Administrator in, or relating to, administering the Settlement, providing Notice to the Settlement Payment Classes, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing settlement payments, and any other related expenses. (*Id.*) Expenses incurred equally by each of the Settlement Classes shall be paid equally from the State-Specific Settlement Funds, but expenses incurred by one

particular fund will be paid from that fund alone. (*Id.* § 1.57.) Class Counsel reduced its fee request by any amount over the original Notice costs estimated in the Settlement ($250,000). (Dkt. 274.) The Parties agree that no notice needs to be disseminated to the Multistate Injunction Settlement Classes in light of the significant costs to do so. (Settlement § 4.3; *see also* dkt. 214 (ordering that notice to the certified Rule 23(b)(2) class need not be provided).) The Court did not order that notice be provided to the Multistate Injunction Settlement Class. (Dkt. 272.)

### E. Payment of Attorneys' Fees, Costs, and Incentive Awards.

Defendants have agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. (Settlement § 8.1.) Proposed Class Counsel has agreed to limit its request for fees to 35% of each of the respective State-Specific Settlement Funds, with no consideration from Defendants. Defendants may also challenge the amount requested. (*Id.*) Defendants have also agreed to pay Plaintiffs incentive awards in the following amounts, subject to Court approval, from their respective State-Specific Settlement Fund in recognition of their efforts as Class Representatives: Alabama, $5,000; California, $750; Illinois, $10,000 each to the Illinois Injunction Settlement Class Representatives Fischer and Lukis, and $1,000 to each of the Illinois Injunction Settlement Class Representative Fissinger-Figueroa and the Illinois Settlement Payment Class Representative Carvalho; Indiana, $1,000; Nevada, $750; Ohio, $2,500; South Dakota, $1,000. (*Id.* § 8.3.) Plaintiffs filed their Motion for Attorneys' Fees, Expenses, and Incentive Awards on November 17, 2023, and posted it to the Settlement Website. (Dkt. 278.)

### F. Release of Liability.

In exchange for the relief described above, each Settlement Payment Class Member will release Defendants and certain related entities from all claims arising from or related to the

alleged use of a person's name, age, contact information, former residence locations, list of possible relatives, likeness, photograph, image, or other identifying information to advertise, promote, or in connection with an offer for sale of any products or services on Defendants' websites. (Settlement § 3.1.) Members of the Multistate Injunction Settlement Classes who are not members of the Settlement Payment Classes (i.e., individuals who are not eligible to receive a payment under the Settlement) are not releasing any claims against Defendants. (*Id.* § 1.56.)

## IV.   THE CLASS NOTICE FULLY SATISFIED DUE PROCESS

Before granting final approval to the Settlement, the Court must consider whether the Settlement Payment Class Members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011).[4] The "best notice practicable" does not necessarily require receipt of actual notice by all Settlement Payment Class Members to comport with both Rule 23 and the requirements of due process. In general, a notice plan that reaches at least 70% of class members is considered reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The Notice program here greatly exceeded this benchmark.

Defendants provided the Settlement Administrator a class list for purposes of providing direct notice. This list contained the contact information that Defendants had in their possession, including names and associated email and U.S. Mail addresses. (*See* Kamenir Decl. ¶¶ 4–5.)

---

[4]     The Court did not order that notice be sent to the Multistate Injunction Settlement Classes (dkt. 272), agreeing with the Parties on this point.

Altogether, after performing skip tracing to identify contact information for Settlement Payment Class Members that Defendants did not have, removing duplicate records, and checking addresses against the National Change of Address Database, the Settlement Administrator had records for 83,445 Settlement Payment Class Members. (*Id.*) On September 8, 2023, the Settlement Administrator sent CAFA Notice to the required recipients. (*Id.* ¶ 6.) On September 29, 2023, the Settlement Administrator delivered the Court-approved notice to at least one email address associated with 59,846 Settlement Payment Class Members for whom at least one valid email address was available. (*Id.* ¶ 11.) On October 11, 2023, the Settlement Administrator delivered the postcard Notice with a detachable, postage prepaid Claim Form to 22,112 Settlement Payment Class Members for whom the email notice "bounced-back" or for whom an email address was not available. (*Id.* ¶ 12.) The Settlement Administrator sent reminder email notices in three waves, on November 2, 2023, December 15, 2023, and December 22, 2023, to all email addresses associated with Settlement Payment Class Members who had not yet submitted a Claim Form reminding them of the upcoming deadlines and including a link to the digital Claim Form. (*Id.* ¶ 11.) This resulted in the delivery of tens of thousands of additional notice emails. (*Id.*) In parallel with these reminder notices, Class Counsel requested more time for the Notice program so that the Settlement Administrator could perform additional address lookups and send U.S. Mail notice to the Settlement Payment Class Members who had yet to submit Claim Forms. (Dkt. 274.) The Court granted this motion, and the Settlement Administrator was able to deliver postcard Notice to an additional 76,207 addresses on November 29, 2023. (Kamenir Decl. ¶ 12.) This supplemental Notice program was massively successful, increasing the aggregate claims rate from 2.59%, (dkt. 274), to more than 15%, (Kamenir Decl. ¶ 16).

Through these efforts, the Settlement Administrator was able to send direct notice to 79,882 Settlement Payment Class Members out of 83,445. This represents a notice reach of 95.73% across the entirety of the Settlement Payment Classes. (*Id.* ¶ 13.) Each of these summary notices directed class members to the Settlement Website, https://www.PeopleConnectRightofPublicity.com, which has been and continues to be available 24/7 and features the "long form" notice and important court filings (including Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards), important deadlines, and answers to frequently asked questions. (Exhibits B-I to Kamenir Decl.; Settlement § 4.2(d).)

Overall, the Notice program was highly successful, as direct Notice reached more than 95% of the Settlement Payment Classes, those notices were supplemented with multiple rounds of reminder notices, and the Parties ultimately achieved exceptional participation rates. This greatly exceeds what is required for due process.

## V. THE SETTLEMENT WARRANTS FINAL APPROVAL

When analyzing class action settlements, "the law quite rightly requires more than a judicial rubber stamp[.]" *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). The Seventh Circuit has accordingly recognized "the district judge as a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (internal quotations omitted).

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) requires that a court consider whether (1) the class

representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

The Advisory Committee for the 2018 amendments to Rule 23 further acknowledges that "each circuit has developed its own vocabulary for expressing these concerns[,]" and the Court should therefore also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (internal quotations omitted); *accord Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). District courts in this Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019).

The following discussion of the factors set out in Rule 23(e)(2) and their corresponding Seventh Circuit analogues demonstrates that the Settlement is fair, reasonable, adequate, and deserving of final approval.

### A.    Plaintiffs and Class Counsel Adequately Represented the Class.

The first Rule 23(e)(2) factor, whether the class representative and class counsel have

adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This consideration is generally satisfied where the named Plaintiffs participated in the case diligently, and Class Counsel fought vigorously in the litigation. *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2018 WL 4659274, at *4 (N.D. Ill. Sept. 28, 2018); *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on the legal merits and through discovery"). As part of evaluating this factor, Courts examine whether the Plaintiffs and Class Counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *See Snyder*, 2018 WL 4659274 at *4. This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted). This factor is satisfied here.

Plaintiffs' and Class Counsel's knowledge, negotiating positions, participation, and conduct have not changed since this Court granted preliminary approval, which made an analogous finding of adequacy. (Dkt. 272.) Plaintiffs' interests have remained aligned with the Settlement Classes through the Notice process—including working to maximize the Notice's reach and the Settlement Classes' participation—and in preparation for final approval. Without Plaintiffs shouldering the burden to represent their respective Settlement Classes and taking on the attendant responsibilities as lead Plaintiffs, the relief secured for the Settlement Classes would not have been possible. Given their efforts and aligned interests with the Settlement

Classes, there can be no doubt that Plaintiffs have only acted in the Settlement Classes' best interest and has adequately represented them.

Likewise, Class Counsel "fought hard throughout" the *Fischer* Action and Additional Litigation, briefing and defeating multiple dispositive motions, conducting discovery, obtaining class certification in *Fischer*, "and pursued mediation when it appeared to be an advisable and feasible alternative" to continuation litigation. *Snyder*, 2019 WL 2103379, at *4. Prior to settling, the Parties exchanged formal and informal discovery, as well as multiple mediation briefs, providing Class Counsel with "an adequate information base" on which to negotiate before Judge Gilbert and in subsequent discussions. *T.K. through Leshore v. Bytedance Tech. Co.*, No. 19-cv-7915, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022); *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (noting standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the merits of this case"). Prior to settling, the Parties exchanged formal and informal discovery, and multiple mediation briefs, all of which provided Class Counsel with "an adequate information base" on which to negotiate. *T.K.*, 2022 WL 888943, at *11. The Settlement unequivocally meets the Rule 23(e)(2)(C) requirement,

## B. The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations.

The second factor in Rule 23(e)(2) requires the court to consider whether the proposed settlement is the result of arm's-length negotiations. *See Wong*, 773 F.3d at 864. The record here demonstrates nothing but good-faith, non-collusive bargaining between the Parties.

"Unlike many class action settlements in which settlement negotiations begin before discovery even takes place, this case was contested through an adversarial and contentious

process." *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019). The Parties litigated before this Court and others for years, defeating one motion to dismiss after another. *See Camacho*, 22-cv-00209, dkt. 24 (denying Defendants' motion to dismiss); *Camacho*, 21-cv-01954, dkt. 32 (same); *Camacho*, 21-cv-01957, dkt. 31 (same), *Fischer*, dkt. 36 (N.D. Ill. Apr. 16, 2020) (same). Discovery followed, and after that a class certification motion in *Fischer* that Defendants vigorously contested. Only after the Court issued its certification order and the Seventh Circuit rejected Instant Checkmate's appeal did the Parties discuss the potential to resolve all litigation involving the Websites. Even still, Instant Checkmate moved to decertify the class in the middle of settlement negotiations, (dkt. 243), a motion that was pending at the time the settlement-in-principle was ultimately reached.

What's more, "[t]he best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K.*, 2022 WL 888943, at *11 (internal quotations omitted). Judge Schenkier's assistance here both during and after the full-day mediation was instrumental in bringing this case to a negotiated resolution. *See, e.g., Charvat*, 2019 WL 5576932, at *5 (finding arm's-length negotiation factor met where "[t]he parties attended a full day of mediation that, after initially failing to result in a settlement, finally jumpstarted negotiations between the parties"); *Young v. Rolling in the Dough, Inc.*, No. 17-cv-07825, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (recognizing class settlement "clearly" the product of arm's-length negotiation where agreement reached only after a contested motion, extensive discovery, and an unsuccessful settlement conference before a magistrate judge).

That these negotiations were non-collusive is further confirmed by the Settlement itself: each State-Specific Settlement Fund is non-reversionary, provides significant cash payments to Settlement Payment Class Members with Approved Claims, and contains no provisions that

might suggest fraud or collusion, such as a "clear sailing" or "kicker" clause regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (finding settlement negotiated at arm's length where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"). Relatedly, the release is not overbroad. Only the Settlement Payment Class Members (who are eligible to submit a Claim Form to receive a payment) are releasing their claims regarding the Websites; individuals who are only in the Multistate Injunction Settlement Classes will get injunctive relief under the Settlement but are not giving up their right to otherwise sue Defendants. For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion.

## C.    The Settlement Treats Class Members Equally.

Next, Rule 23(e)(2) requires the proposed settlement treat class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). That's precisely what the Settlement provides here. Each claiming Settlement Class Member will receive a *pro rata* share of their respective State-Specific Settlement Fund. *T.K.*, 2022 WL 888943, at *15 ("Generally, a settlement that provides for *pro rata* shares to each class member will meet this standard."); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 840–41 (1999) (describing *pro rata* distribution of fund as a "straightforward model[] of equitable treatment"). The prospective relief to each of the Multistate Injunction Settlement Classes is also the same: Defendants will not display the name of any individual who has an address, according to Defendants' database, in Alabama, California, Illinois, Indiana, Nevada, Ohio, or South Dakota on any page of Defendants' Websites that includes a subscription offer. (Settlement § 2.3.) Correspondingly, the release that

23

each respective Settlement Payment Class Member is providing, and the claims that each respective Multistate Injunction Settlement Class Member is retaining, are identical. (*Id.* § 3.)

And while Plaintiffs have sought an incentive award for themselves that, if approved, would lead them to receive marginally more of their State-Specific Settlement Funds than other Class Members is not problematic. "Equitably relative to each other" does not mean "equally to each other," and absent unusual circumstances, a modest service award to a class representative does not render a proposed settlement unfair, unreasonable, or inadequate. *See T.K.*, 2022 WL 888943, at *15–16 (finding $2,500 service awards did not render treatment of class members inequitable, noting that "[b]ecause class representatives do more work and take more risks than the average class member, service awards to named class members will generally not raise a red flag") (quotations omitted). The proposed Settlement treats all Class Members equitably relative to each other and thus supports final approval here.

**D.      The Relief Secured for the Settlement Class Is Adequate and Warrants Final Approval.**

The final and most important factor under Rule 23(e)(2) scrutinizes whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 identifies several sub-factors for the Court to consider, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any side agreements made in connection with the settlement.[5] *Id.* This analysis necessarily encompasses two of the Seventh Circuit's factors: "(1) the strength of the case for plaintiffs on

---

[5]      Besides the Settlement itself, there are no side agreements between the Parties made in connection with the Settlement to report. Thus, Fed. R. Civ. P. 23(e)(2)(C)(iv) is not a relevant consideration here.

the merits, balanced against the extent of settlement offer; [and] (2) the complexity, length, and expense of further litigation[.]" *Wong*, 773 F.3d at 863. Because the first Seventh Circuit factor "[is the] most important factor relevant to the fairness of a class action settlement[,]" it is critically important for a settlement to meet this standard. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (internal quotations omitted).

### 1. The Settlement provides exceptional relief.

Compared to its predecessors, this Settlement's overall dollar amount—$10,102,897—is the largest yet reached and the ratio of class size, and associated per-person amount, to fund size also compares favorably. The Settlement also includes valuable injunctive relief that all Multistate Settlement Class Members will automatically receive.

To illustrate, *Krause v. Rocketreach* created a settlement fund for its IRPA claimants amounting to $1,596,300 fund for 26,605 IRPA class members, or $60 per person. *Krause*, No. 21-cv-01938, dkts. 94, 97 (N.D. Ill., Aug. 21, 2023 and Sept. 12, 2023). *Butler v. Whitepages* created an IRPA settlement fund amounting to $1,208,440 settlement of 30,211 IRPA class members, or $40 per person. *Butler*, No. 19-cv-04871, dkts. 272, 277 (N.D. Ill., Sept. 7, 2022 and Sept. 29, 2022). In the instant Settlement, by contrast, the Illinois Settlement Fund is multiples higher—$6,245,148 covering 25,284 class members, or $247 per person—and accounts for the *Fischer* litigation's advanced posture, which included certified classes for IRPA claimants. The Settlement also creates a $1,727,888 fund for 15,359 Ohio Settlement Payment Class Members, or $113 per class member, which is in line with *Butler's* creation of a $2,864,200 fund for 27,802 Ohio class members, or $103 per class member. The California Settlement Fund, which amounts to funding based on $34 per class member, far outstrips previous California right of publicity settlements. *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d

25

939, 943–44 (N.D. Cal. 2013), *aff'd sub nom Fraley v. Batman*, 638 Fed. App'x 594, 597 (9th Cir. 2016) (approving settlement fund that resulted in $15 to each claiming class member due to low claims rate, but would have resulted in only cy pres relief had every class member submitted a claim). And while courts have not yet considered class-wide right of publicity settlements with "people search" providers like Defendants under Alabama, Indiana, Nevada, or South Dakota law, the per-person amounts for those states in the Settlement here are based on a higher percentage of statutory damages (here, 4.5%) than in the first IRPA and ORPA settlement in *Butler*, No. 19-cv-04871, dkts. 272-1, 277 (N.D. Ill., Sept. 7, 2022 and Sept. 29, 2022) (per-person damages for purposes of calculating funds was 4% of statutory damages under the respective laws).

Given the high dollar amounts associated with each State-Specific Settlement Fund, it is no surprise that claiming Settlement Payment Class Members' take-home payments will exceed those in past settlements, notwithstanding comparable claims rates. Here, Settlement Payment Class Members with Approved Claims can expect the following amounts, after accounting for the deductions of attorneys' fees and expenses, incentive awards, and Settlement Administration Expenses: Alabama, $953.26; California, $148.18; Illinois, $745.01; Indiana, $197.20; Nevada, $180.23; Ohio, $524.88; and South Dakota, $215.73. *Cf. Butler*, No. 19-cv-04871, dkts. 272, 277 (N.D. Ill., Sept. 7, 2022 and Sept. 29, 2022) (final award of $95 to each IRPA claimant and $380 to each ORPA claimant); *Krause*, No. 21-cv-01938, dkts. 94, 97 (N.D. Ill., Aug. 21, 2023 and Sept. 12, 2023) (final award of approximately $300 to each IRPA claimant).

The amount of monetary relief secured in this Settlement represents a new high water mark for statutory privacy cases. This far surpasses those cases that typically settle for pennies on the dollar, or no monetary relief at all. *See, e.g., In re Google Referrer Header Privacy Litig.*,

869 F.3d 737, 740 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 139 S. Ct. 1041 (2019) (approving cy pres-only fund without any payments to class members); *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only cy pres relief for violations of the Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal., May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs).

The prospective relief secured in the Settlement is equally important. The Multistate Injunction Settlement Classes are entitled to injunctive relief aimed at remedying the underlying unlawful conduct. Specifically, Defendants must stop using Multistate Injunction Settlement Classes Members' names in connection with any offer to purchase a subscription or service on the Websites. (Settlement § 2.3.) Critically, members of the Multistate Injunction Settlement Classes who are not Settlement Payment Class Members—that is, they were not searched in a way that led to a subscription purchase and are not eligible for a monetary payment under the Settlement—are excluded from the release. (*Id.* § 1.56.) Thus, they will automatically receive these injunctive benefits from the Settlement while retaining any claims they may have against Defendants. Altogether, the exceptional results obtained through the Settlement support final approval.

### 2. The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval.

"As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). In evaluating the adequacy of the relief provided

to the class, courts compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. The Settlement here meets both the 23(e)(2)(C) requirements and the relevant Seventh Circuit considerations because it provides immediate relief while avoiding potentially years of risky litigation and appeals. *See Schulte*, 805 F. Supp. 2d at 586 ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). The risk that Plaintiffs and the putative classes would ultimately obtain no relief whatsoever was not insignificant.

While the Court denied Defendants' motion to dismiss, Defendants could re-raise some or all of their arguments at summary judgment or on appeal. And while the Court granted class certification once, at the time the Settlement was reached, Instant Checkmate had a pending motion to decertify the class. (Dkt. 243.) Additionally, the volume of cases pending throughout the country alleging similar right of publicity claims based on "free preview" advertising makes appellate review of this type of case almost inevitable. *See, e.g., Backowski*, No. 21-cv-00115 (W.D. Wash.); *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020), *reconsideration denied*, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020); *Ramos v. ZoomInfo Techs., LLC*, No. 21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021); *Sessa v. Ancestry.com Operations Inc.*, No. 2:20-cv-02292, 2021 WL 4245359 (D. Nev. Sept. 16, 2021). A negative appellate decision on any of the potentially dispositive issues in this case (statutory exceptions, First Amendment, Communications Decency Act, or dormant commerce clause) could singlehandedly doom these cases were litigation to continue.

Likewise, continued litigation would force Plaintiffs outside the *Fischer* Action to seek class certification adversarially, a process not entirely free of risk. *See T.K.*, 2022 WL 888943, at

*13 (noting obstacle posed by adversarial class certification if litigation were to continue rather than settle). While the *Fischer* certification order certainly provides a roadmap to class certification with respect to the other Websites, Defendants would surely attempt to raise idiosyncratic differences between the Websites' functionality to try and distinguish the case. Indeed, the fact that the Court certified two classes, but declined to certify a third class of individuals appearing in search results illustrates that certification in the Additional Litigation would by no means be guaranteed. *Fischer v. Instant Checkmate*, No. 19C4892, 2022 WL 971479, at *3, *15 (N.D. Ill. Mar. 31, 2022); *Dancel v. Groupon, Inc*., No. 18 C 2027, 2019 WL 1013562, at *1 (N.D. Ill. Mar. 4, 2019), *aff'd*, 949 F.3d 999 (7th Cir. 2019) (denying motion to certify IRPA class because whether any given username was sufficient to identify an individual presented individual inquiries that defeated predominance).

Even if adversarial class certification were granted in the Additional Litigation, the possibility of an interlocutory appeal would still risk causing significant delay to any recovery. *Cf. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (affirming class certification on interlocutory appeal in BIPA case filed four years earlier). And assuming Plaintiffs would have succeeded at trial, Plaintiffs reasonably expects that Defendants would have argued for a reduction in damages based on due process in light of the significant potential statutory damages at issue. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million), *but see United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021) (statutory award of $280 million for violating various telemarketing statues over 65 million times did not violate due process).

As the foregoing makes clear, the risk that continued litigation "would provide [c]lass

[m]embers with either no in-court recovery or some recovery many years from now" is real. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. at 964; *Charvat*, 2019 WL 5576932, at *7 (recognizing that absent settlement "any relief to class members would still be far down the road and may ultimately be entirely denied." In contrast, "[a]pproving the proposed settlement agreement will end the case and cause benefits to flow in short order." *Id.*; *see also Young*, 2020 WL 969616, at *5 ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort.") (citation omitted). Thus, given the substantial risks, expense, and delay that would accompany further litigation, the Settlement offers substantial and immediate value relative to the strength of Plaintiffs' case. This crucial factor therefore strongly supports final approval.

### 3. The method of distributing relief to the Settlement Classes is effective and supports final approval.

The "effectiveness of [the]… method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (6th ed.); *T.K.*, 2022 WL 888943, at *14 (underscoring the importance that processes should not be "so complex that they discourage class members from pursuing valid claims"). The claims and distribution process here is straightforward.

"A requirement that potential claimants fill out a form in order to collect from the settlement fund seldom raises such concerns" regarding the method of distribution. *T.K.*, 2022 WL 888943, at *14 (quotations omitted). The Claim Form here was not "unduly burdensome, long, or complex." *Schulte*, 805 F. Supp. 2d at 591. "All information called for on the form is required of the claims administrator in order for it to process claims." *Id.* Furthermore, "[t]he

30

parties' use of a settlement website … suggests that the claims process was designed to encourage—not discourage—the filing of claims." *Id.* "For example, the ability to submit a claim online through the settlement website allow[s] Class Members to submit a claim without the need to pay for a stamp." *Id.* The Settlement also offers Class Members several easy options for receiving their payment, including Venmo, Zelle, or check. (Settlement § 1.15.)

Should the Settlement be approved, the Settlement Administrator will distribute Settlement Payments to each Settlement Class Member who submitted an Approved Claim for their *pro rata* portion of the Settlement Fund, after deducting Settlement Administration Expenses and any approved attorneys' fees, expenses, and incentive awards. *See Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402, dkt. 92 (N.D. Ill. Feb. 16, 2022) (approving settlement where settlement administrator processed claims under counsel's oversight and distributed *pro rata* shares to class members with valid claims). If, after 180 days of issuance, any electronic payments are unable to be processed or any checks go uncashed, those residual funds will revert to the Settlement Fund to be distributed *pro rata* to Settlement Class Members with Approved Claims if practicable, or in a manner as otherwise directed by the Court upon application made by any party. (Settlement § 2.1.) No amounts will revert to Defendants. Because of this, "it seems unlikely that the claims process is designed to limit the 'take rate' of Class Members." *Schulte*, 805 F. Supp. 2d at 591. *See also T.K.*, 2022 WL 888943, at *15 ("[B]ecause no possibility of reversion exists here, it creates little incentive for gamesmanship by Defendants or class counsel."). This sub-factor also favors final approval of the Settlement.

### 4. The terms of the requested attorneys' fees are reasonable.

The final relevant sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of

payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii).

Class Counsel separately petitioned the Court for an award of reasonable attorneys' fees after the Settlement Class received Notice and before the deadline to object. (Dkt. 278.) They also ensured that request was posted on the Settlement Website so that the Settlement Classes had access to it. The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) and Class Counsel's request for thirty-five percent (35%) of the non-reversionary net Settlement Fund is reasonable and predicated on the outstanding relief provided to the Settlement Class. (Settlement § 8.1.) To be sure, the percentage-of-the-fund method has been used to determine a reasonable fee award in virtually every class action settlement under a privacy statute in both federal and state courts in this District, and the requested percentage fee award is well in line with common fund fee awards in statutory privacy settlements in this District. (*See* dkt. 278 at 3; dkt. 278-2 (collecting cases).) A lodestar cross-check further confirms the reasonableness of the requested fees. *See, e.g.*, *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991). The 35% fee award amounts to a multiplier on the base lodestar of just 1.7, where multipliers of 2-4 are common. (*See* dkt. 278.)

While the Court will separately determine Class Counsel's actual fee award, that the Settlement contemplates an award in line with those commonly awarded in this District comports with Rule 23(e)(2)(C).

**E.      The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement.**

In addition to the requirements that overlap with those now explicitly required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, the Settlement Classes' overwhelmingly

positive reaction, the support of Class Counsel, and the lack of any red flags all favor approval.

### 1. The Settlement Classes' reaction favors approval.

Lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 cv 2898, 2012 WL 651727, at *6 (N.D. Ill. Feb. 28, 2012). Here, the Court-approved Settlement Administrator diligently implemented the Notice plan outlined in the Agreement, as well as the supplemental Notice program that Class Counsel proposed and that the Court Approved. The objection and exclusion deadlines have passed without a single person objecting to the Settlement, and only two people opting out. That not one person has objected to the Settlement is powerful evidence of the Settlement Classes' overall support for the Settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations omitted).

Similarly, the 15.44% claims rate across the Settlement Payment Classes, which accounts for only those Approved Claims associated with Settlement Payment Class Members, and not just the number of overall submissions, also indicates an overwhelmingly positive reaction. *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.,* cases weighted by the number of notice recipients) was 4%."). The rate at which the Settlement Payment Class Members participated in this Settlement exceeds or matches the participation rates in other privacy class action settlements. *See Krause*, 21-cv-01938, dkt. 94, at 1 (12% claims rate in IRPA class action); *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec.

1, 2016) (15% claims rate); *Kusinski v. ADP LLC*, 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) (12.7% claims rate); *Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6256, dkt. 90 (N.D. Ill. Mar. 8, 2021) (10% claims rate); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (5% claims rate). The strong response rate combined with a total lack of objections and only two opt outs thus strongly supports granting final approval to the Settlement.

### 2. Experienced counsel's belief that the Settlement is beneficial to the Settlement Classes weighs in favor of final approval.

The opinion of competent counsel also supports final approval of the Settlement. Where class counsel has "extensive experience in consumer class actions and complex litigation[,]" their "belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the settlement. *Schulte*, 805 F. Supp. 2d at 586; *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted") (internal quotations omitted).

Here, as discussed at length in Plaintiff's motion for preliminary approval, (dkt. 268), Class Counsel are competent to give their opinion on this Settlement. For the reasons discussed above and in light of the positive response to the Notice, Class Counsel continues to believe that the Settlement provides outstanding monetary and prospective relief to the Settlement Classes without the uncertainty and delay that years of litigation would bring. (Ovca Decl. ¶ 6.) Thus, Class Counsel's opinion is that the Settlement is in the best interest of the Settlement Classes. (*Id.*) For these reasons, the opinion of Class Counsel weighs in favor of final approval.

### 3. The Settlement raises no red flags.

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. The Seventh Circuit pointed out "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for" in *Eubank v. Pella Corp.*, 753 F.3d 718, 728 (7th Cir. 2014). Those signs included (i) a single class containing two adverse subgroups, (ii) a familial relationship between class counsel and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii) providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id.* at 721-28.

Here, none of those red flags are present. There are no adverse subgroups among the Settlement Classes. Further, none of the Class Representatives have any familial relationships with Class Counsel or any member of their respective law firms. The claims process here was simple and straightforward, with both digital and hardcopy options to submit Claim Forms. Any unawarded attorneys' fees will be distributed to the claiming Settlement Class Members, not revert to Defendant. (Settlement § 8.1.) No attorneys' fees will be paid to Class Counsel until after final approval of the Settlement, and there is no provision in the Settlement Agreement denying an incentive award to a named Plaintiff who does not support the Settlement. In short, the Settlement displays no warning signs that should give this Court pause. The Settlement should therefore be finally approved.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order finally approving the Parties' Settlement and ordering such other relief as this Court deems reasonable and just.[6]

Respectfully Submitted,

ROBERT FISCHER, STEPHANIE LUKIS, ALESSANDRA FISSINGER-FIGUEROA, ERIC CARVALHO, JOSE CAMACHO, RHONDA COTTA, ROGELIO RAMIREZ, JAKE WEBB, JAMES ANDERSON, THERESE BACKOWSKI, JUSTIN ROGALSKY, NATEEMA LEWIS, and NICHOLAS FIORITTO

Dated: January 24, 2024                    /s/ Michael Ovca

Roberto Luis Costales
rlc@beaumontcostales.com
William H. Beaumont
whb@beaumontcostales.com
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, IL 60605
Tel: 773.831.8000

Benjamin Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Ari Scharg
ascharg@edelson.com
Michael W. Ovca
movca@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC

---

[6] For the Court's convenience, Plaintiff will submit a proposed final approval order to the Court's designated email address prior to the February 15, 2024 final approval hearing.

350 North Lasalle Street, 14th Floor
Chicago, IL 60654
Tel: 312.589.6370

Yaman Salahi
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.638.9903

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
1300 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: 646.837.7150

Kevin Tucker (*pro hac vice*)
ktucker@eastendtrialgroup.com
Kevin Abramowicz (*pro hac vice*)
kabramowicz@eastendtrialgroup.com
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: 412.877.5220

*Attorneys for Plaintiffs*